UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

INTERNATIONAL STRATEGIES GROUP, LTD.,

    Plaintiff,

    v.

GREENBERG TRAURIG, LLP, A. JOHN
PAPPALARDO, AND ECKERT, SEAMANS,
CHERIN AND MELLOTT, LLC,

    Defendants.

Civil Action No. 04-12000 RWZ

## DEFENDANT ECKERT SEAMANS CHERIN & MELLOTT, LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS

Defendant Eckert Seamans Cherin & Mellott, LLC ("ESCM") submits this memorandum in support of its motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). The Complaint of plaintiff International Strategies Group ("ISG") shows on its face that any purported conduct of ESCM was not, as a matter of law, a legal cause of ISG's alleged damages. Additionally, the Complaint on its face shows that claims asserted against ESCM are barred by the applicable statutes of limitations. Accordingly, the Complaint should be dismissed as to defendant ESCM.

### I. INTRODUCTION

The Court is familiar with many of the facts underlying this lawsuit, as it is now the third suit brought by ISG in this Court relating to the same series of events. On March 22, 2002, ISG commenced an action against Corporation of The Bankhouse ("COB") and other defendants (not including any of the defendants in this litigation) at Civil Action No. 02-10532-RWZ. ISG received a default judgment when COB and the other defendants failed to respond to the

complaint and was awarded damages in excess of $10,000,000 pursuant to a judgment entered April 26, 2004. Complaint ¶ 48.

On April 30, 2004, ISG returned to this Court filing its second suit at 04CV-10863-RWZ against Stephen P. Heffernan. Heffernan was treasurer and chief financial officer of COB and SB Global Inc., two of the defendants in the earlier suit. ISG alleged that Heffernan breached fiduciary duties, made intentional and negligent misrepresentations, engaged in fraud and conspiracy, and committed a host of other wrongful conduct relating to the loss of certain investment funds which were the subject of the first suit against COB, SB Global and other defendants, and which are also the subject of the current action against the Greenberg Traurig law firm, attorney John Pappalardo ("Pappalardo"), and ESCM. In its Memorandum of Decision and Judgment dated July 30, 2004, (hereafter "Heffernan Memorandum") the Court granted Heffernan's motion to dismiss the complaint on the grounds that all of ISG's causes of action, plead in twelve separate counts, were barred by the statute of limitations. See Exhibit 1 hereto. Some of the Court's findings in the Heffernan suit are directly applicable to the present case, as will be discussed more fully *infra*.

Now ISG returns again for its third bite at the apple. In summary, ISG's Complaint here outlines the following alleged events with respect to ESCM. During certain times relevant to this dispute, ESCM and Pappalardo as an ESCM attorney provided legal services to COB, an investment management company located in Boston. Complaint ¶ 8. In April, 1998, ISG provided funds to COB in the amount of $4,000,000 for investment purposes (the "Investment"). Complaint ¶ 9. Other investors, who are not parties to this action, provided additional funds to COB for investment management such that by early November, 1998, ISG had a fund amount of $19,000,000. Complaint ¶ 12. In November, 1998, COB placed these funds, including ISG's

Investment, with an entity called the Swan Trust, of which a Henry Pearlberg was a trustee. Complaint ¶ 12. ISG alleges that it was not aware of the transfer of the Investment to the Swan Trust at the time it was made. *Id.*

In February, 1999, Pearlberg caused $16,700,000 of the funds placed in the Swan Trust to be transferred to a bank in the Turkish Republic of Cyprus, for the benefit of an independent broker, Joan Patrick, working with another investment entity, May Davis Group. Complaint ¶ 14. (Another portion of the $19,000,000 was placed in an account at Abn Amro Bank in Belgium.) Later in 1999, and no later than July 20, 1999, it came to the attention of COB and its legal counsel, Pappalardo at ESCM and attorney Steven Burr at Greenberg Traurig, that the funds placed by COB with the Swan Trust had been improperly transferred by Pearlberg and then depleted by various third person or entities. Pappalardo and Burr began representing COB and its principals in connection with an investigation to determine the persons responsible for the depletion of the funds, to investigate potential measures to recover the funds, and with respect to government investigations into the apparent theft of the funds. Complaint ¶ 18-19.

No later than August, 1999, ISG had been informed of the depletion of the investment funds. The Complaint alleges meetings and other communications in August, 1999 between Pappalardo and ISG, and between COB and ISG, wherein ISG was informed of the loss of the Investment, that COB had been the victim of fraud by Pearlberg and others, that COB was working with government authorities investigating these events, that COB was taking steps to try to recover the funds, and that COB requested "ISG's forbearance and cooperation in a joint recovery effort." Complaint ¶ 20-21. The Complaint outlines some of the activities taken by Pappalardo, while was at ESCM, and by Burr at Greenberg Traurig, in representing COB to recover the funds including communications with ISG concerning these efforts. Complaint ¶ 22-

3

23, 25-31, 38-39. The Complaint also provides at least some details of ISG's active involvement in that process. *Id.*

In March, 2001, Pappalardo left ESCM and joined Greenberg Traurig. Complaint ¶ 40. The Complaint makes further allegations about Pappalardo's activities and communications with ISG following his departure from ESCM. Complaint ¶ 42, 44-45. None of these allegations relate to activities of an ESCM attorney. By October, 2001, ISG had "lost confidence in Pappalardo and retained independent counsel in the United States to recover its Investment." Complaint ¶ 43. Ultimately, ISG decided to cease its cooperative efforts with COB to recover the Investment and brought its first suit in March, 2002 against COB, SB Global and some of their officers, pursuant to which ISG received a substantial default judgment. Complaint ¶ 47. After failing in its second suit against Heffernan, due to its delay and inaction in protecting its own interests, ISG has now brought this misguided suit against Greenberg Traurig, Pappalardo, and ESCM for the alleged reason that the "judgment [against COB *et al*] appears essentially worthless as, upon information and belief, all of the defendants in that case . . . have dissipated all their assets or otherwise put them out of reach of ISG." Complaint ¶ 48. (To ESCM's knowledge ISG never bought suit against Pearlberg or the persons and entities involved in the depletion of the bank accounts.)

ISG's purported claims against ESCM are for negligence (Count One), conversion (Count Four) and violation of M.G.L. ch. 93A (Count Six). The thrust of ISG's legal malpractice (negligence and 93A) claim against ESCM is that Pappalardo allegedly became ISG's attorney with respect to recovery of the Investment, that Pappalardo failed to file suit against the persons and entities involved in the depletion of the Investment and was otherwise negligent in his handling of the matter, that Pappalardo did not keep ISG adequately or

4

completely informed and advised, and that Pappalardo supposedly undertook a "joint representation" of ISG and COB "riddled with conflicts" with respect to his efforts to recover the Investment.

ISG claim for conversion against ESCM asserts that on May 29, 1998, the sum of $821,500 was transferred by COB to a Mellon Bank account held by ESCM. ISG claims that this amount came from its original $4,000,000 Investment placed with COB in April, 1998. Complaint ¶ 10-11.

## II. ALLEGATIONS AND FINDINGS RELATING TO THIS MOTION

### A. Facts alleged in ISG's Complaint that are relevant to this motion show that the Complaint as to ESCM should be dismissed.

Many of the allegations in ISG's Complaint contain erroneous and incomplete recitals of the relevant facts. We do not at this point charge ISG with intentional misstatements and assume that such errors and omissions are either inadvertent, are from confusion and lack of information or investigation, or are a result of a zealous attempt to plead the claims in the best possible light for ISG.[1] ESCM vigorously disputes, and would directly refute at trial, the erroneous factual allegations, misguided accusations, and incorrect legal conclusions of ISG. These include but are not limited to the erroneous assertions that Pappalardo was ISG's attorney, that ESCM or Pappalardo did not meet the requisite standard of care in their handling of certain matters for ESCM's client COB, and that ESCM "converted" monies owned by ISG. However, for purposes of this motion only, ESCM assumes *arguendo* the truth of the allegation that Pappalardo provided legal representation to ISG during the period of his association with ESCM.

---

[1] There is at least one significant exception. With regard to the conversion claim against ESCM, ISG was advised prior to filing this suit that ESCM did not keep or retain any portion of the approximate $821,500 transferred by COB to an ESCM account on May 29, 1998, and that ESCM was only acting as a transfer agent in returning investment funds to various investors of COB, pursuant to COB's direction. It is disturbing that, despite this information and without any contrary facts, ISG chose to make this inflammatory charge which also on the face of the Complaint is barred by the statute of limitations, as ISG should have understood.

ESCM also accepts, for purposes of this motion only, the following factual assertions of ISG, which are directly relevant to the legal grounds for this motion, discussed below, which show that the Complaint should be dismissed as to ESCM.

ESCM is a Pennsylvania limited liability company engaged in the practice of law. ESCM maintains an office in Boston, Massachusetts. Complaint ¶ 5. Defendant A. John Pappalardo is an attorney licensed to practice law in Massachusetts. Complaint ¶ 5. "[B]etween at least August 1, 1999 and March 11, 2001, Pappalardo was a shareholder" of ESCM.[2] Complaint ¶ 5.

In April, 1998, ISG entered into a Funds Management Agreement and Syndicate Agreement with COB pursuant to which ISG agreed to invest, and COB agreed to manage, funds in the amount of $4,000,000. Complaint ¶ 8-9. On May 29, 1998, $821,500 of ISG's investment funds were transferred by and at the direction of COB to a Mellon Bank account of ESCM. Complaint ¶ 11. ISG did not discover ESCM's receipt of such funds "until during the period that Pappalardo, while at Eckert Seamans, convinced ISG to give him a Power of Attorney and had presented ISG with the action plan." Complaint ¶ 62. On June 1, 2000, Pappalardo presented ISG with the action plan. Complaint ¶ 29. On July 10, 2000, Pappalardo sought and obtained a Power of Attorney from ISG in furtherance of the action plan. Complaint ¶ 31.

Effective March 12, 2001, Pappalardo joined defendant Greenberg Traurig LLP, where he is currently a co-managing shareholder. Complaint ¶ 5, 40. By late October 2001, ISG had lost confidence in Pappalardo and retained independent legal counsel in the United States to recover its investment funds. Complaint ¶ 43.

---

[2] Pappalardo actually was a member, not a shareholder, of ESCM and withdrew from ESCM on March 9, 2001. These minor differences are not material to this motion.

### B. Findings and conclusions of this Court in the *ISG v. Heffernan* suit that further support ESCM's motion to dismiss.

In its July 30, 2004 Memorandum of Decision in *International Strategies Group, Ltd. v. Stephen Heffernan*, Civil Action No. 04-10863-RWZ, the Court made the following findings of fact and conclusions of law, among others, that further support ESCM's motion to dismiss, as discussed in more detail *infra*.[3]

ISG's breach of fiduciary duty, misrepresentation and fraud claims against Heffernan were based, *inter alia*, on Heffernan's conduct in "representing to ISG that its funds would be recovered from Swan Trust and repaid to ISG when, in fact, the recovery by way of assignment was used for personal gain and not for the benefit of ISG or other investors; by using the power of attorney to stall ISG's own recovery efforts; by funneling assets to another corporate entity and then using them for the benefit of COB but not for ISG or other investors . . ." Heffernan Memorandum at 3.

"The parties agree that ISG knew in 1999 that its funds were no longer with COB". Heffernan Memorandum at 3

The statute of limitations with respect to ISG's claims against Heffernan "began to run in 1999, when ISG knew all the facts giving rise to its claim". Heffernan Memorandum at 3.

"ISG contends that Heffernan's failure to tell it 'the true state of affairs, time and time again, prevented the statute of limitations clock from running.' . . . However, ISG already knew the 'true state of affairs,' namely, that its funds had been depleted." Heffernan Memorandum at 3.

---

[3] On a motion to dismiss, the Court may consider official public records. *See Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001). The Court's decision in the Heffernan suit is an official public record.

## III. ARGUMENT

In considering a motion to dismiss under Fed.R.Civ.P. 12(b)(6), the court takes the allegations of the complaint as true and grants all reasonable inferences in favor of the plaintiff. *Clair Recreation Center, Inc. v. Flynn,* 897 F.2d 623, 625 (1st Cir. 1990). The court may grant the dismissal if it appears beyond doubt that the plaintiff can prove no set of facts to support his claim that would entitle him to relief against the defendant. *Id.* However, the court need not accept bald assertions, unsupportable factual or legal conclusions, or rhetoric of the plaintiff. *Doyle v. Hasbro, Inc.,* 103 F.3d 186, 190 (1st Cir. 1996). In considering a motion to dismiss under Rule 12(b)(6), the court determines whether the plaintiff has set forth factual allegations regarding each material element necessary to sustain recovery. *Id. See also Arruda v. Sears, Roebuck & Co.,* 310 F.3d 13 (1st Cir. 2002) (court cannot uphold a complaint that fails to establish an essential nexus between the underlying events and the theory of recovery). Additionally, a motion to dismiss based on a statute of limitations defense is entirely appropriate when the pleader's allegations leave no doubt that the asserted claim is time barred. *See generally,* 5B Wright & Miller, *Federal Practice and Procedure,* § 1357, pp. 714-721 (3rd Ed. 2004) and cases cited therein.

**A.    Count One and Count Six of the Complaint should be dismissed as to ESCM because any alleged legal malpractice or other purported misconduct of Pappalardo while at ESCM was not, as a matter of law, the proximate cause of ISG's alleged damages.**

It has long been settled law in Massachusetts that to recover for legal malpractice, a plaintiff must prove that: (1) the attorney failed to exercise reasonable care and skill in handling the matter for which he was retained; (2) that the plaintiff incurred a loss; and (3) that the attorney's negligence was the proximate cause of the loss. *McLellan v. Fuller,* 226 Mass. 374, 378, 115 N.E.2d 481 (1917); *Cholfin v. Gordon,* 1995 Mass. Super. LEXIS 100 (Mass. App.

1995). A plaintiff bears the burden of proving each of these elements. *McLellan*, 226 Mass. at 378. An attorney is not liable for every mistake that may occur in practice. To prevail on a legal malpractice claim, the plaintiff must show that the attorney's negligence was the proximate cause of the damage or loss he sustained. *Colucci v. Rosen, Goldberg, Slavet, Levenson & Wekstein, P.C.*, 25 Mass.App.Ct. 107, 111, 515 N.E.2d 891 (1987). *See also McCann v. Davis, Malm & D'Agostine*, 423 Mass. 558, 669 N.E.2d 1077 (1996).

The thrust of ISG's Complaint in Count One and Count Six against ESCM is that Pappalardo, while at ESCM, should have taken legal action on ISG's behalf against the persons or entities involved with the depletion of the Investment, or should have informed ISG of the need to take such action. However, as a matter of law, those alleged failures to act (and all other instances of Pappalardo's alleged malpractice while he was associated with ESCM) are not and cannot be the legal cause of ISG's loss because it is indisputable on the face of the Complaint that (1) Pappalardo left ESCM long before the statute of limitations expired on ISG's potential legal claims against others to recover the investment funds; (2) at the time Pappalardo left ESCM, ISG knew its Investment had been depleted and that no suit had yet been commenced against anyone; and (3) following Pappalardo's departure from ESCM, there was ample time to commence such an action, including a substantial period after ISG had hired "its own independent counsel".

Courts that have addressed this issue have consistently held that an attorney cannot be held liable for failing to file an action prior to the expiration of the statute of limitations if he ceased to represent the client and was replaced by other counsel before the statute ran on the client's action.

9

In *Steketee v. Lintz, Williams & Rothberg*, 38 Cal.3d 46, 694 P.2d 1153, 210 Cal. Rptr. 781 (1985), the California Supreme Court upheld summary judgment for defendant attorneys who had been retained to pursue a medical malpractice action based on a medical treatment plaintiff had undergone in September, 1976. The plaintiff hired defendant attorneys in January 1978. In January, 1979, without having commenced a suit on plaintiff's behalf, defendant attorneys terminated their relationship with plaintiff, who then retained new counsel. New counsel, believing that the statute of limitations had expired, filed a malpractice action against the original attorneys. Even though the issue of the running of the limitations period was complex and arguably unsettled in the law (as plaintiff was a minor when injured but an adult when he retained defendants), the Court concluded that the statute had not in fact run on plaintiff's medical malpractice claim and that defendants therefore could not be liable for legal malpractice in failing to file the action.

> "Accordingly, the statute of limitations did not run on plaintiff's cause of action until September of 1979. The attorney client relationship between defendants and plaintiff was terminated several months earlier in January of 1979. . . An attorney cannot be held liable for failure to file an action prior to the expiration of the statute of limitations if he ceased to represent the client and was replaced by other counsel before the statute ran on the client's action."

38 Cal.3d at 57, 694 P.2d at 1159.

This principle has been followed in numerous decisions of many different jurisdictions. It is also unassailably logical and sound. And it applies not only to a failure to file an action, but also applies to other alleged errors, such as providing erroneous or incomplete legal advice or other instances of alleged legal malpractice. *See e.g., Ritam Int'l Ltd. v. Pattishall, McAuliffe, Newbury, Hilliard & Geraldson*, 2000 U.S. Dist. LEXIS 21636 (S.D. Iowa) (where defendant withdrew from representing plaintiff and new counsel was retained, defendant would be awarded summary judgment because alleged negligence in providing erroneous advice on a statute of

limitations issue was not, as a matter of law, a substantial factor in harming plaintiff since new counsel could have identified the error and filed the claim); *Viehweg v. Mello*, 5 F.Supp.2d 752 (E.D. Mo. 1998), *aff'd* 198 F.3d 252 (8th Cir. 1999) (summary judgment awarded to defendant attorney where plaintiff had at least six months from attorney's withdrawal to retain new counsel and file suit) (Missouri law); *Faulkner v. Ensz*, 109 F.3d 474 (8th Cir. 1997) (affirming summary judgment for defendant attorney as plaintiff could not establish causation element of legal malpractice claim; transfer of plaintiff's file to new attorney ended causal relationship between defendant's actions and plaintiff's alleged injuries) (Missouri law); *Ruden v. Jenk*, 543 N.W.2d 605 (Iowa 1996) (attorney's negligence in failing to advise client of a potential claim is not a proximate cause of damage if a successor attorney is employed and advises client of potential claim before statute of limitations has expired); *Wall Street Associates v. Brodsky*, 257 A.D.2d 526, 527, 684 N.Y.S.2d 244 (N.Y. App. 1999) ("In order to establish proximate cause and actual damages elements, plaintiff must show that the Statute of Limitations on the underlying claim had run by the time it discharged defendants as its attorneys."); *Fraser v. Bovino*, 317 N.J.Super. 23, 721 A.2d 20 (N.J. App. 1998) (summary judgment on legal malpractice claim affirmed where attorney declined to further handle matter and returned files to client with several weeks left before last applicable statute of limitations expired on claim); *Seltrecht v. Bremer*, 214 Wis.2d 110, 571 N.W.2d 686 (Wis. 1997) (alleged negligent advice of first attorney was not a legal cause of plaintiff's damages where successor attorney recognized but failed to correct the mistake); *C&F Pollution Control v. Fidelity & Casualty Co.*, 222 A.D.2d 828, 830, 653 N.Y.S.2d 704 (N.Y. App. 1995) (denying legal malpractice claim because "plaintiff's second attorney could have timely commenced a lawsuit"); *Kaminsky v. Condell Memorial Hospital*, 816 F.Supp 484 (N.D. Ill. 1993)  (Illinois law required dismissal of legal malpractice action

where plaintiff's underlying claim could have been asserted by successor counsel); *Stuart v. Superior Court*, 14 Cal.App.4[th] 124, 18 Cal.Rptr.2d 142 (Cal. App. 1992) (directing entry of summary judgment for defendant attorney who was not attorney of record at the time the former client's case was dismissed due to failure to file proof of service of complaint within required time period); *Boyle v. Odette*, 168 Mich.App. 737, 745, 425 N.W.2d 472 (Mich. App. 1988) ("We agree with defendant [attorney] that he cannot be held liable for failing to file an . . . action prior to expiration of the period of limitations where he ceased to represent plaintiff and was replaced by other counsel before the statutory period ran on her underlying action."); *Knight v. Myers*, 12 Kan.App.2d 469, 748 P.2d 896 (Kan. App. 1988) (attorney who withdrew from representing defendants in an action could not be held liable for failing to file a counterclaim where successor counsel had several months to do so before statute of limitations expired); *Frazier v. Effman*, 501 So.2d 114, 115 (Fla. App. 1987) (affirming dismissal of legal malpractice claim against defendant attorney who was discharged by plaintiff, where new counsel was retained and statute of limitations on plaintiff's claim did not expire "for several months thereafter"); *Land v. Greenwood*, 133 Ill.App.3d 537, 540, 478 N.E.2d 1203 (Ill. App. 1985) ("Defendant's duty to plaintiff ceased upon his discharge. The cause of action was viable at the time of discharge. It therefore follows that plaintiff can prove no set of facts which connect defendant's conduct with any damage sustained by plaintiff." "[S]uccessor counsel had the duty to preserve his client's cause of action. It was viable when he received it; it was not when he got through with it."); *Harvey v. Mackay*, 109 Ill.App.3d 582, 440 N.E.2d 1022 (Ill. App. 1982) (an attorney's failure to file a lawsuit before statute of limitations expired is not malpractice where attorney withdrew from the representation before the statute expired). *See also Brown v. Silvern*, 45 P.3d 749, 752 (Colo. App. 2001) ("[W]e agree with the California Supreme Court that an

attorney cannot be held liable for failing to file an action prior to the expiration of the statute of limitations if he ceased to represent the client and was replaced by other counsel before the statute ran on the client's action").

Massachusetts follows this principle. In *Poly v. Moylan*, 423 Mass. 141, 667 N.E.2d (1996) plaintiff filed an action against a former attorney for negligence, breach of contract, misrepresentation and deceit, and violation of M.G.L. ch. 93A. The attorney was retained by plaintiff to commence an action for damages against plaintiff's former spouse and her new husband, a member of United State Air Force ("USAF"), who had taken plaintiff's children to Germany when the husband was reassigned by the USAF. The removal of the children was in violation of a custody order entered in favor of plaintiff and an injunction prohibiting their removal from their home in New Hampshire. The evidence at trial showed that the attorney commenced an action in federal court against the USAF and the former spouse and her husband, and that the federal action was dismissed as a result of negligent acts on the attorney's part. A second suit was filed in a Massachusetts state court, where the USAF was dismissed on statute of limitations grounds. The attorney failed to tell plaintiffs about the dismissals, refused to communicate with plaintiffs, conducted no discovery, and committed other acts of alleged negligence and failure to inform. While the state court action was pending, plaintiffs filed the legal malpractice action against the attorney, who moved for and was granted permission to withdraw. The claims against the former spouse and her husband were later dismissed by the state court.

After a verdict was returned for plaintiffs, the trial court entered judgment notwithstanding the verdict in favor of the attorney. The Massachusetts Supreme Judicial Court

affirmed. On the issue of the attorney's negligent handling of the actions against the former spouse and husband, the Court observed:

> [Attorney] withdrew with court approval from the action pending in the Superior Court on March 25, 1992. The claim was not dismissed against [the former spouse] until August, 1992, and was not dismissed against her husband until November 2, 1993. Therefore, when [attorney] withdrew from the case with court permission after notice to the plaintiff, there was still a viable case pending against [former spouse and husband] and it was still possible to proceed with discovery and investigation. There was no evidence of damage occurring to the plaintiff as a result of [attorney's] conduct in that action up to the time of his withdrawal.

423 Mass at 148, 667 N.E.2d at 256.

Applying this settled law to the facts as admitted in ISG's Complaint, it is clear as a matter of law that ESCM is not liable for any purported legal malpractice or other alleged wrongdoing of Pappalardo. ESCM's only potential liability to ISG is based on vicarious liability for the acts or omissions of Pappalardo during the period of his association with ESCM. It is admitted by ISG that Pappalardo left ESCM in early March, 2001 and joined Greenberg Traurig. Assuming *arguendo* that Pappalardo represented or otherwise owed a duty to ISG to protect it, as of March, 2001, there was a substantial amount of time for Pappalardo to file an action by ISG or others against Pearlberg, Joan Patrick, May Davis Group, the various banks, or anyone else who was involved in the unauthorized depletion/theft of the investment funds that had been placed in the Swan Trust. For example, claims based on tort (*e.g.*, negligence, fraud, misrepresentation, breach of fiduciary duty, or conversion) have a three year statute of limitations under Massachusetts law. *See* M.G.L. ch. 260, § 2A. Since the events that lead to the depletion/theft of the funds began with the February 5, 1999 transfer made by Pearlberg to the foreign banks, certainly there were tort claims available to ISG until at least February 5, 2002, nearly a year after Pappalardo's withdrawal from ESCM. And based on ISG's Complaint, it is fairly clear that

COB and its counsel did not discover the depletion of the investment funds until mid-1999, so legal action quite reasonably could have been brought even later than February 5, 2002.

We do not suggest that Pappalardo was required to file an action on ISG's behalf or to take any other action on ISG's behalf. Nor do we intimate that any lack of such action by Pappalardo fell below the applicable standard of care. But the point is that legal and other remedies could have been sought for COB and its investors (including ISG) after Pappalardo left ESCM in March, 2001. When Pappalardo left ESCM, the statute of limitations did not prevent him from filing an action by ISG against the persons involved in the depletion/theft of ISG's Investment. Moreover, after Pappalardo left ESCM in March, 2001, ISG was free and able to bring suit by other counsel against those who depleted the funds. These facts are apparent from the face of the Complaint. Thus, under the numerous authorities cited above, any failure to file a claim, failure to fully advise ISG, or other purported misconduct of Pappalardo occurring prior to March, 2001 while he was with ESCM was not the proximate cause of ISG's alleged loss.

The clear lack of causation is further reinforced by ISG's express admission that at least by October, 2001, it had "retained independent counsel in the United States to recover its Investment." Complaint ¶ 43. As such, even if Pappalardo is assumed, *arguendo,* to have been negligent or otherwise guilty of wrongdoing in handling this matter after leaving ESCM (which of course cannot be imputed to ESCM), that conduct is not, as a matter of law, the proximate cause of ISG's alleged loss because ISG had retained its own "independent counsel to recover its Investment" by October 2001. Viable tort and contract claims by ISG against the parties actually responsible for the depletion of the funds were still available to ISG at least until February, 2002, and for months, likely years, thereafter.[4]

---

[4] COB's placement of the funds in the Swan Trust was governed by a written agreement, as undoubtedly were the subsequent transfers to and from the foreign banks where the funds were depleted. (Indeed, ISG knows this because

Accordingly, ISG's legal malpractice claim against ESCM, whether couched in terms of negligence or violation of M.G.L. ch. 93A, fails as a matter of law because no conduct of ESCM or for which it may be responsible was a proximate cause of a loss of ISG. *See also Cholfin v. Gordon*, 1995 Mass. Super. LEXIS 100, 111 (Mass. App. 1996) (awarding summary judgment on 93A claim after finding defendant attorney entitled to summary judgment on legal malpractice claim, since "[p]rofessional malpractice, breach of contract and 93A claims are so 'inextricably intertwined that the failure of the one necessitates the failure of all.'"); *Massachusetts Farm Bureau Federation, Inc. v. Blue Cross of Massachusetts, Inc.*, 403 Mass. 722, 532 N.E.2d 660 (1989) (the unfair or deceptive act must be shown to have caused the loss). Therefore, ISG's claims against ESCM for malpractice or violation of M.G.L. 93A (Count One and Count Six) should be dismissed.

### B. ISG's conversion claim (Count Four) is barred by the statute of limitations.

ISG's conversion claim against ESCM (Count 4 of the Complaint) is particularly brazen, accusing ESCM of what most people equate to theft. Indeed, ISG's rhetoric is unrestrained, accusing ESCM of receiving funds "**stolen** from ISG" and that ESCM "upon information and belief, has converted such funds". Complaint ¶ 62, 63 (emphasis added). It is difficult for ESCM to remain silent as to the true facts in the face of such a baseless and callous attack on its professional reputation and integrity, especially when as noted above (*see* footnote 1 *supra*) ESCM provided ISG with information pre-suit that shows this claim is unfounded.[5] Nevertheless, for purposes of this motion only we will assume *arguendo* that the May 29, 1998

---

it received many of these documents in its earlier action against COB.) As such, COB and ISG and other investors likely had contract-based claims subject to a six year statute of limitations, M.G.L. ch. 260, § 2., which means that timely legal action could have been taken against Swan Trust, Pearlberg, or others as late as November, 2004 and perhaps even later.

[5] It is also troubling, to say the least, that ISG makes these strident and outrageous allegations "upon information and belief", without alleging or disclosing any information that could conceivably support a good faith belief that these false allegations are true.

transfer of funds from and at the direction of COB to ESCM's Mellon Bank account constitutes grounds for a claim of conversion against ESCM. That claim is barred by the statute of limitations.

All that is required for a cause of action for conversion to accrue is the wrongful exercise of ownership or control over the plaintiff's property. *MacCleave v. Merchant*, 15 Mass. L. Rep. 315, 2002 Mass. Super. LEXIS 392 (Mass. Super. Ct. 2002). A cause of action for conversion accrues on the happening of an event likely to put the plaintiff on notice. *Id.*, citing *Hendrickson v. Sears*, 365 Mass. 83, 89-90, 310 N.E.2d 131 (1974). A conversion action must be brought within three years after the cause of action accrues. M.G.L. ch. 260, 2A.

Although ISG's Complaint here was actually filed on September 15, 2004, ISG and ESCM have agreed that the Complaint should be deemed filed as of June 24, 2004 for statute of limitations purposes. The alleged event that gives rise to the conversion claim took place on May 29, 1998, more than six years before the deemed filing date of the Complaint. Moreover, ISG's Complaint and other admissions of ISG show that ISG had actual knowledge of the alleged conversion of its funds more than three years before filing its Complaint.

ISG states that "ISG did not discover [the May 29, 1998 transfer] until during the period that Pappalardo, **while at Eckert Seamans**, convinced ISG to give him a Power of Attorney and had presented ISG with the action plan." Complaint ¶ 62 (emphasis added). ISG alleges that Pappalardo left ESCM in March 2001, so the **last** possible date that ISG learned of the transfer while Pappalardo was at ESCM was in March 2001, <u>more than three years</u> before the deemed date of filing of its Complaint here. To be more accurate, the period in which Pappalardo "convinced ISG to give him a Power of Attorney" was in July, 2000, <u>nearly four years</u> before the Complaint here is deemed filed. Complaint ¶ 31. Further, we also know from the Court's

17

findings in the *ISG v. Hefferman* matter that it was admitted by ISG "that ISG knew in 1999 that its funds were no longer with COB". Heffernan Memorandum at 3. Thus ISG knew <u>almost five</u> <u>years</u> before filing its Complaint that its Investment given to COB had been transferred by COB to others.[6]

The conversion claim is barred by the stature of limitations. This baseless claim should be dismissed.

### C.  ISG's negligence claim is barred by the statute of limitations.

ESCM respectfully submits that the lack of proximate cause, as discussed in Section III.A above, ends this matter entirely as to ESCM with respect to any alleged errors, omissions, negligence or other purported misconduct of Pappalardo.  But to reinforce that such claim against ESCM should be dismissed as a matter of law, we further show that the legal malpractice claim is barred by the statute of limitations.

"Actions of contract or tort for malpractice, errors or mistake against attorneys shall be commenced only within three years next after the cause of action accrues." M.G.L ch. 260, § 4. Causes of action for attorney malpractice accrue when the injured party knows or should know that it has been injured. *Moriarity v. Kohlstrom*, 2002 Mass. Super. LEXIS 198 (2002), citing *Williams v. Ely*, 423 Mass. 467, 473, 668 N.E.2d 799 (1996). "The plaintiff need not know the

---

[6] ESCM anticipates that ISG might attempt to assert fraudulent concealment or breach of a duty of disclosure in its responding argument on the conversion claim, although no such assertion is made in the complaint nor is there any factual basis to make such a claim.  Accordingly, ESCM further notes that tolling of the statute of limitations on the basis of a claim of fraud or failure to disclose does not occur if the plaintiff has actual knowledge of facts giving rise to his cause of action. *Stark v. Advanced Magnetics, Inc.*, 50 Mass.App.Ct. 226, 736 N.E.2d 434 (2000), citing *Patsos v. First Albany Corp.*, 48 Mass.App.Ct. 266, 719 N.E.2d 882 (1999) and other cases. Since ISG admits that it knew of the transfer of the $821,000 by mid-2000, its actual knowledge precludes any belated excuse based on an alleged fraudulent concealment or failure to make disclosure.

full extent of the injury or know that the defendant was negligent for the cause of action to accrue." *Id.*

It is hypothetical, of course, to even contemplate that ISG was injured by conduct of Pappalardo while he was at ESCM, since there was plenty of time for Pappalardo, or ISG's own "independent counsel", to correct any alleged mistakes in Pappalardo's handling of the matter to that point. But assuming *arguendo* that ISG could show an actual loss somehow connected to Pappalardo's failure to commence litigation to recover the Investment during ESCM's watch, it is clear as a matter of law that ISG had actual knowledge of the relevant facts when Pappalardo departed ESCM.

ISG knew by 1999 that the Investment had been depleted. Heffernan Memorandum at 3; Complaint ¶ 18-21. ISG expressly states that in October, 1999, it was advised by Pappalardo that "he was taking steps 'to protect your [i.e., ISG's] interest, including preparing a civil fraud case on behalf of COB against US based parties involved in the alleged fraud." Complaint ¶ 26. According to ISG, a similar communication occurred in February, 2001, wherein Pappalardo told ISG that COB was "reviewing its legal options through outside counsel by way of civil suit against both individuals and institutions." Complaint ¶ 39. But ISG also knew as of March, 2001 when Pappalardo left ESCM that no civil litigation had yet been filed. Indeed, ISG does not allege in its Complaint that Pappalardo ever represented that he had in fact commenced a lawsuit when he did not and, as ISG knows, any such allegation would be patently false.

So, assuming the truth of ISG's allegation that the Pappalardo's failure to commence litigation on its behalf damaged ISG (although as a matter of law it did not, for the reasons discussed in Section III.A), ISG's claim for legal malpractice against ESCM accrued in or before

March, 2001. Its malpractice action, deemed filed June 24, 2004, is too late and is barred by the statute of limitations.

Thus, ISG's purported claim against ESCM for malpractice should be dismissed not only because as a matter of law the alleged malpractice or other alleged wrongdoing could not be the proximate cause of any alleged ISG losses, but also because the claim of legal malpractice against ESCM is barred by the statute of limitations as appears on the face of ISG's Complaint.

## IV. CONCLUSION

ESCM denies that Pappalardo represented ISG or had any other duty to protect ISG with respect to the alleged wrongful depletion of its investment funds by others. However, even assuming *arguendo* for purposes of this Motion only, that Pappalardo represented or owed a duty to ISG while he was with ESCM, the Complaint fails to state a claim against ESCM.

Based on the allegations in the Complaint, all claims by ISG against ESCM, other than the conversion claim, should be dismissed because there was ample time after Pappalardo left ESCM in March, 2001, for ISG, through Pappalardo or its independent legal counsel, to pursue claims against those who allegedly depleted the investment fund. Accordingly, the alleged conduct of Pappalardo while at ESCM could not as a matter of law be a proximate cause of ISG's alleged losses.

ISG's baseless conversion claim against ESCM should be dismissed because the allegations of the Complaint show that as a matter of law the conversion claim is barred by the applicable statute of limitations.

Finally, and alternatively, ISG's claim against ESCM for negligence and malpractice should be dismissed because that claim is barred by the statute of limitations. As noted above, that claim should also be dismissed because of lack of proximate cause.

We respectfully submit that the Complaint should be dismissed as to ESCM.

Respectfully submitted,

ECKERT SEAMANS CHERIN & MELLOTT, LLC

By: _Devorah Levine_

Devorah A. Levine (BBO #650813)
One International Place, 18th Floor
Boston, MA  02110-2602
617-342-6800
Attorneys for Defendant
Eckert Seamans Cherin & Mellott, LLC

Of Counsel:
William B. Mallin, General Counsel
Timothy S. Coon
Eckert Seamans Cherin & Mellott, LLC
600 Grant Street, 44th Floor
Pittsburgh, PA  15219
412-566-6000

Dated: November 11, 2004

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing **DEFENDANT ECKERT SEAMANS CHERIN & MELLOTT, LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS** was served upon the following counsel of record by United States mail, postage prepaid, this 11th day of November, 2004.

Jessica Block
Block & Roos, LLP
60 State Street
Suite 3800
Boston, MA 02109

Counsel for plaintiff

Paul B. Galvani
Ropes & Gray LLP
One International Place
Boston, MA 02110

Counsel for defendants Greenberg
Traurig, LLP and A. John Pappalardo

Devorah Levine

22