UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

INTERNATIONAL STRATEGIES GROUP, LTD.

Plaintiff,

v.

CIVIL ACTION NO.
04-12000 RWZ

GREENBERG TRAURIG, LLP, A. JOHN
PAPPALARDO, AND ECKERT, SEAMANS,
CHERIN AND MELLOTT, LLC,

Defendants.

## OPPOSITION OF INTERNATIONAL STRATEGIES GROUP, LTD. TO THE MOTION TO DISMISS OF GREENBERG TRAURIG, LLP AND A. JOHN PAPPALARDO

### Introduction

International Strategies Group, Ltd. ("ISG") submits this opposition to the motion to dismiss of defendant Greenberg Traurig, LLP ("GT") and A. John Pappalardo ("AJP"). For the purpose of this motion, GT and AJP acknowledge the existence of an attorney-client relationship between them and ISG. They also acknowledge, at least for the purpose of their motion, a continuing relationship between ISG and AJP from August 1999 through October 2001, which renders ISG's claims timely filed.

GT and AJP contend in their motion, however, that all of ISG's claims should be dismissed because they were not the proximate cause of ISG's harm.[1] To make this

---

[1] GT and AJP do not challenge here that ISG adequately pled elements of the claims, only that, as a matter of law, they cannot be the proximate cause of the harm because, they assert, there was time left to file legal claims against third parties. As will be described in this Opposition, in the context of this case, that issue is more complicated and cannot be decided upon a motion to dismiss. As also described in this Opposition, as well as the opposition to the motion to dismiss of Eckert Seamans Cherin & Mellott, LLC, which is incorporated herein by reference, AJP and GT were also the proximate cause of other harm, independent of any harm implicating statute of limitations on claims against third parties.

argument, they hypothesize that ISG still had time to file "potential legal claims" to recover its investment funds after it retained its own lawyer in October 2001. GT and AJP rely entirely on the reasoning in the opposition to the motion to dismiss of Eckert, Seamans, Cherin & Mellott, LLC ("ESCM"). (Hereinafter the opposition to the ESCM's motion to dismiss will be referred to as "the ESCM Opposition").

Like ESCM, AJP and GT ignore allegations of cause and harm occasioned by their conduct. ISG should be able to proceed with the complaint because the allegations adequately describe how AJP and GT, like ESCM, left ISG with a Pyrrhic victory against Corporation of the Bankhouse (COB), its principal and its successor and, further, that their conduct caused actions against certain third parties to be futile because AJP took no action to freeze assets early on, even though he and his colleagues advised COB that such procedures were necessary.

Beyond that, as described below, AJP, while at GT, refused to make his files available to ISG's new counsel, thus thwarting her factual investigation of "potential legal claims" available to ISG. The documents AJP withheld and that ISG needed to evaluate its claims against third parties, besides COB-related entities, were not produced by AJP until after August 11, 2003, the date of this Court's order in *International Strategies Group, Ltd. v. Corporation of the Bankhouse, et al*, Civil Action No. 02-10532-RWZ ("the COB Litigation") compelling AJP to produce. By that time more than four years elapsed since ISG discovered the loss of its $4 million after having been misled by COB.

2

Moreover, as GT and AJP were well aware, many claims that ISG had against parties other than the COB-related parties, were derivative of those held by COB.[2] To bring such actions, ISG would have to stand in COB's shoes. Thus ISG could not, immediately upon retained independent counsel in October 2001, instruct her to file claims against anyone who ever touched the funds. It was not until January 23, 2004, that ISG was able to obtain, as part of the preliminary relief in the COB Litigation, COB's rights in an assignment COB obtained from Henry Pearlberg ("Pearlberg") in 1999 ("the Pearlberg Assignment"). Pearlberg was the investor to whom COB transferred $19 million, including ISG's funds, without ISG's knowledge. Without rights to the Pearlberg Assignment, which ISG obtained only by court order ("the Court-ordered Assignment"), it could not sue the financial institutions based on theories of negligence with regard to their handling of investment funds after these left COB's hands. ISG was not in a position to file the potential legal claims to which GT and AJP allude until after January 2004.

Thus, GT and AJP are simply wrong in their contention that ISG had reasonable time within which to file potential legal claims after their representation ceased. As described below, their actions both before and after October 2001 have harmed ISG, preventing it from timely obtaining the relief it required even to initiate claims against third parties until beyond the ordinary limitations period on tort claims. Among other damages, the delay has caused ISG to defend, and potentially, lose motions to dismiss on statute of limitations grounds.

---

[2] The complaint alleges that James Pomeroy secured for himself, with ESCM's participation, an assignment of Pearlberg's rights in certain bank accounts. Surely then AJP knew that a comparable assignment was a prerequisite to ISG's ability to bring certain claims against the banks that handled the funds after they left COB's hands.

3

### The Allegations of the Complaint Relevant to ISG's Opposition to ESCM's Motion to Dismiss

In the ESCM Opposition, ISG has chronicled the conduct of AJP while he was at ESCM and after he transferred to GT, leading ISG to forbear for over two years from initiating suit against COB, its principals and its successor SBG. That conduct led to a hollow victory against COB, SBG and their principal, James F. Pomeroy, because, as alleged in the complaint, the judgment ISG eventually obtained after employing new counsel was uncollectible in that COB and SBG dissipated assets in the interim. In the ESCM Opposition, ISG also has demonstrated additional harm for which AJP was the proximate cause, including the failure to freeze assets of other involved third parties responsible for the loss of ISG's investment once it left COB's hands. Rather than duplicate the ESCM Opposition, ISG incorporates by reference in this memorandum the factual recitations and arguments set forth in the ESCM Opposition as these facts and arguments pertain as well to the conduct of GT and AJP.

Other allegations in the complaint, relevant to opposing the argument now advanced by GT and AJP that their behavior should be excused because ISG allegedly had time to file potential legal claims, include the following:

After October 2001, when ISG retained new counsel, ISG's new counsel and ISG representatives tried, without success, to obtain critical documents from AJP, which he had told ISG, in the course of his representation of the "team," that he had either collected, prepared or reviewed and were valuable. (Complaint, ¶44.) ISG and its counsel sought documentation from AJP by telephone, e-mail and by letters dated January 4, January 25, and March 8, 2002, respectively. (Id.) As of March 8, 2002,

however, AJP failed and refused to give to ISG the documents it needed to fully prepare its case and identify parties, known to AJP, but not to ISG, responsible for the dissipation of ISG's Investment. (Complaint, ¶45.) In addition, AJP also advised ISG that, in fact, contrary to previous representations (in 1999) that a civil fraud case was being investigated and prepared, he had not prepared any draft pleadings and no litigation had commenced. (Id.) In March, 2002, after ISG was unable to obtain from AJP voluntarily the documentation necessary to investigate other parties involved in the disappearance of its funds, AJP, in response to an inquiry by ISG regarding claims against third parties (the very claims he now asserts could have been timely filed), stated: "the statute of limitations will be an issue but creative thinking should be applied." (Id.)

On March 22, 2002, ISG, although unable to obtain all of the documents required to identify other parties, filed the COB Litigation against COB and James Pomeroy. It later amended the complaint to include SBG as a defendant. (Complaint, ¶47.) In the COB Litigation, ISG subpoenaed the documents it needed from AJP; he objected; ISG was forced to bring a motion to compel (incurring additional damages in the form of attorneys' fees and further delay); and the documents were not produced until after a court order entered on August 11, 2003, requiring their production (Complaint, ¶48.) ISG alleges in its complaint that only after receiving and reviewing thereafter the documents formerly withheld by AJP on the purported ground of privilege, was ISG able to appreciate the numerous conflicts of interest that precluded appropriate representation of ISG's interests; the substantial missed opportunities to initiate action against responsible parties and freeze assets; and the prejudice to ISG of delay, including statute of limitations problems admitted by AJP. (Complaint, ¶49.)

In addition to these allegations, the docket in the COB Litigation, to which the complaint refers, reveals that ISG did not obtain the Court-ordered Assignment enabling it to sue third parties until January 11, 2004.

ISG alleges that the damages occasioned by the breach of the duty of care of AJP and GT (as well as ESCM) led to damages, including, without limitation, (i) counsel fees incurred in defending motions to dismiss on statute of limitations grounds in actions filed against third parties upon ISG's retention of independent counsel, (ii) counsel fees incurred in obtaining necessary documentation from AJP in the COB Litigation, (iii) counsel fees incurred in initiating third party actions, which, if pursued by AJP on behalf of COB pursuant his and COB's fiduciary duties to ISG, would not have been incurred by ISG, and (iv) the loss by ISG of its ability to freeze assets and collect upon its judgment of $10,468,106 in the COB Litigation or to recover the full amount of its Investment. (Complaint, ¶52.)

ISG has submitted an affidavit of one of its principals, Philip G. Clark, to explain in greater detail the harm occasioned by GT and AJP in connection with the claims against third parties, which ISG did bring after it was in a position to do so. As Clark attests, ISG filed complaints in New York ("the New York actions") against Abn Amro and FMB (to which the instant complaint alludes). In those actions, ISG has asserted claims for negligence, fraud and aiding and abetting fraud. ISG has had to expend significant legal fees defending motions to dismiss, including on statute of limitations and standing grounds.

Abn Amro argues in the New York actions that the applicable statute of limitations is three years and, further, that "ISG's claimed ignorance of the alleged

6

negligence is of no legal significance because 'the statutory period of limitations begins to run from the time when liability for the wrong has arisen even through the injured party may be ignorant of the existence of the wrong or injury.'" Abn Amro further argues that "the purported knowledge of ISG is irrelevant to any possible claim of tolling" because it is "an assignee of a tort claim" and "'did not obtain [ ] an interest in [the] purported claim until well after the period of limitations ran." Abn Amro asserts, in respect to the aiding and abetting claim, that "Pearlberg (as well as Pomeroy through whom ISG obtained the Deed of Assignment) had knowledge of the alleged wrongdoing at or about the time it is claimed to have occurred." Abn Amro further contends that ISG lacks standing to bring claims against it. (Clark Aff., ¶8[3]).

No order has issued as of the date of this filing, but ISG has been informed that at least the negligence count may be dismissed. Even if ISG were to survive the motion to dismiss, it still is in danger of losing its right to proceed at another stage of the proceedings. ISG certainly had to expend legal fees that would not have been necessitated if AJP did what he promised, i.e., to file timely civil fraud and related claims against the responsible parties. (Clark Aff., ¶9.)

## ARGUMENT

In light of the mandate that "[i]t is incumbent upon the court to 'accept the complaint's allegations as true, indulging all reasonable inference in favor of [the plaintiff].'" Meltzer et al v. Grant, Epstein, Becker & Green, 193 F. Supp. 2d 373, 375 (D. Mass. 2002) (citations omitted), the motion to dismiss of GT and AJP should be denied. The motion should be denied, first, for the reasons set forth in the ESCM

---

[3] References are to the affidavit of Philip Clark, filed herewith

Opposition, to wit: (1) that the representations of AJP, which continued after his transfer to GT, induced forbearance on ISG's part, causing it to lose the opportunity to collect on its judgment against COB, Pomeroy and SBG, all of whom dissipated assets, including by making transfers of $350,000 to GT and ESCM during the period of AJP's representation of the "team"; and (2) that the failure of AJP, having taken on the representation of all investors, to initiate the necessary actions to preserve assets at the outset of the case, caused the lack of availability of other assets to satisfy ISG's judgment either against COB or third parties and further failed to prompt immediate settlements.

The motion of AJP and GT should be denied for the further reasons that:

(1) Many of the "potential legal claims" AJP and GT now claim ISG could have asserted, in fact, could not have been initiated within a reasonable time after ISG retained new counsel. ISG first had to obtain the Court-ordered Assignment of COB's and Pearlberg's tort claims against the financial institutions that participated in the transfer of funds. ISG was unable to obtain that relief until <u>January 2004.</u>

(2) By October 2001, it had been over three years since the original transfer of ISG's funds to COB in 1998. Thus any direct action (as opposed to actions derivative of COB's or Pearlberg's) ISG had available to it would be subject to disputes over when it discovered or reasonably could have discovered COB's misappropriation of its funds.

(3) AJP, while still at GT, continued to engage after October 2001 in conduct prejudicial to ISG by withholding documents ISG required to evaluate its claims. Accordingly to the allegations of the complaint, the plan devised in 2000 by AJP, COB and the Russian "recovery specialists" was to give ISG only minimal information to keep it quiet (Complaint, ¶30) and AJP did not share the specifics of his recovery efforts with

ISG, citing "confidentiality agreements 'integral to the matters involved" (Complaint, ¶26). It therefore can be reasonably inferred from the complaint that, by the time ISG retained new counsel, without the documentation that AJP had been amassing for the 26 months he had been purporting to represent the "team," and with a 26-month delay in its ability to obtain, through court order, acquisition of COB's rights (which included the Pearlberg Assignment), ISG did not, in fact, have reasonable time to initiate timely litigation against certain third parties.

For these reasons, GT and AJP should be equitably estopped from asserting that ISG had time to file claims against third parties. "Equitable estoppel," used more often to prevent parties from claiming the expiration of statute of limitations in actions against themselves, applies with equal force to the circumstances present here. "Equitable estoppel is a judicially-devised doctrine which precludes a party to a lawsuit, because of some improper conduct on that party's part, from asserting a claim or defense, regarding of its substantive validity, " FDIC v. Roldan Fonseca, 795 F. 2d 1102,1107 (1st Cir. 1986). The doctrine of equitable estoppel "will not apply if a reasonable time remains within the limitations period for filing the action once the circumstances inducing the delay have ceased." Pagliarini, et al. v. Iannaco, 440 Mass. 1032, 1032-3 (2003) (rescript). However, "the question whether the time remaining was reasonable (or not) may be one for the jury to decide where the facts are disputed or the matter rests largely on inference[.]" Id.

In the first place, in this case "the circumstances inducing the delay" in filing claims against third parties did not cease. AJP, while at GT, continued to withhold information necessary for new counsel's analysis of such claims despite repeated and

9

timely requests that AJP turn over the information voluntarily and despite a subsequent subpoena for production of critical information, to which AJP and the firm objected. Thus the conduct inducing the delay continued way beyond October 2001 and into August 2003 when the documents finally were produced pursuant to court order. ISG should be able to proceed to show that a lawyer new to the matter could not, without the required documentation, determine the existence of causes of action, which AJP and GT hid from ISG for over two years, within the required time frame.

As important, and even if this Court deems the refusal to turn over documents irrelevant, as GT and AJP well knew, "potential legal claims" against parties other than the COB-related entities were derivative of those belonging to COB and Pearlberg. Because ISG's negligence claims against the financial institutions, Abn Amro and FMB, were derivative, ISG did not, contrary to the contentions of GT and AJP, have a reasonable time within which to obtain the prerequisite relief to filing such claims against such institutions. It was not in a position to file such claims until after January 2004, when it received Court-ordered Assignment. Indeed Abn Amro argues as much in its motion to dismiss.

In determining when the statute of limitations began to run on the claims against Abn Amro and FMB, it is important to keep in mind that, because AJP and his law firms were acting as attorneys for the investors, ISG cannot assert their negligence or misconduct to toll the statute of limitations in defense to any statute of limitations argument advanced by Abn Amro, FMB or anyone else. The statute of limitations on the derivative third-party claims will begin to run not as of August, 1999, when ISG discovered COB's fraud, or even October 2001, when ISG retained new counsel, but

10

when COB and/or Pearlberg knew or should have known the investment funds had disappeared. As alleged in the complaint, COB transferred the funds in November 1998 and Pearlberg transferred funds in February 1999. By April 1999, Pearlberg executed the Pearlberg Assignment, granting COB his rights in certain bank accounts (Complaint, ¶12-15), thus the inference is that COB and Pearlberg knew the funds had disappeared by then or even earlier. Again, Abn Amro has argued as much in support of its motion to dismiss. But ISG could not have filed claims against Abn Amro by November 2001, three years from when COB transferred its funds; by April 2002, three years from when COB received the Pearlberg Assignment after discovering the $19 million had disappeared; or, for that matter, at any time prior to its procurement of the Court-ordered Assignment. ISG did not obtain that assignment until 2004. Defendants in the New York actions are arguing that by then it was too late.

It is at least a question of fact, in light of the obstacles to ISG's filing its potential legal claims against parties other than the insolvent COB-related entities and in light of the arguments advanced by Abn Amro, whether ISG had a reasonable time, after AJP's representation ceased, to file timely claims against Abn Amro, FMB or other third parties. ISG should have the opportunity to prove at trial that (i) the refusal of AJP and GT to produce in a timely manner documents critical to its investigation of claims against third parties, and (ii) the 26-month delay in ISG's initiating litigation against COB-related entities, induced by AJP while at ESCM and GT, caused delays in ISG obtaining the prerequisite Court-ordered Assignment and consequently caused Abn Amro and FMB to challenge the timeliness of the complaint in the New York actions. Cf. Khadem v. Fischer & Kagan et al., 215 A. D. 441, 626 N.Y. S. 500 (N.Y. App. Div.1995) (it is at

11

least a question of fact as to whether law firm's two-year delay in prosecuting plaintiff's case caused his injury). Even if ISG loses some, but not all, of its legal remedies, including dismissal of its negligence claims, the complaint against GT and AJP is actionable. 4 Mallen & Smith, Legal Malpractice, §30.19, The Plaintiff's Attorney – Delay in Prosecution, 505-6 (5th Ed. 2000). In other words, even if some of the claims against third parties should withstand a motion to dismiss, GT and AJP may still be liable for such damages associated with the expiration of the statute of limitations on other of the third party claims. These matters cannot be determined upon a motion to dismiss.

The allegations of the complaint, including all inferences, establish that many of ISG's causes of actions against third parties were derivative and that AJP's and GT's refusal to disclose documents hampered a timely investigation of claims against third parties. The allegations, including all inferences to be drawn in ISG's favor, also establish that there was not, under the circumstances, reasonable time to initiate such claims by independent counsel learning of the complex matrix of facts for the first time in October 2001. Further, the complaint alleges as damages that if AJP and GT had filed these derivative actions on COB's behalf pursuant to their fiduciary duty to do so (and their express promise to ISG), ISG would not have had to incur the legal fees of prosecuting the action itself. As alleged in the complaint, $350,000 in legal fees was paid to ESCM and GT by COB and SBG during the time AJP was purporting to represent all the investors, including ISG. ISG also has the right, either as a client or third-party beneficiary, to argue that those funds were misspent, leaving all of AJP's clients without the recovery he promised while at ESCM and GT.

## CONCLUSION.

For all of the foregoing reasons, the motion to dismiss of GT and AJP should be denied in its entirety. The complaint alleges a number of ways in which GT and AJP proximately caused harm to ISG.

INVESTMENT STRATEGIES GROUP, LTD

By its attorneys,

*/s/ Jessica Block*
Jessica Block
BBO#046110
Block & Roos, LLP
60 State Street, Suite 3800
Boston, Massachusetts 02109
(617) 223-1900

December 23, 2004

I, Jessica Block, Esquire, counsel for the plaintiff, do hereby certify that the within pleading was served by causing copies to be delivered, by messenger, to counsel for the other parties of record, this 23rd day of December, 2004.

*/s/ Jessica Block*
Jessica Block