UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

INTERNATIONAL STRATEGIES GROUP, LTD.

    Plaintiff,

v.

    CIVIL ACTION NO.
    04-12000 RWZ

GREENBERG TRAURIG, LLP, A. JOHN
PAPPALARDO, AND ECKERT, SEAMANS,
CHERIN AND MELLOTT, LLC,

    Defendants.

## AFFIDAVIT OF PHILIP G. CLARK

PHILIP G. CLARK, being duly sworn, deposes and states as follows:

1. I am a principal of International Strategies Group, Ltd. ("ISG") and submit this affidavit to support ISG's opposition to the motions to dismiss of defendant law firm Eckert, Seamans, Cherin and Mellott, LLC ("ESCM") and of defendants A. John Pappalardo ("AJP") and Greenberg Traurig LLP ("GT").

2. In addition to the allegations of the complaint, which I verify as true according to information and belief, I state the following in regard to my conversation with AJP.

3. ISG discovered, through investigatory proceedings in Belgium involving Abn Amro Bank ("Abn Amro"), that $821,500 of ISG's original $ 4 million investment with Corporation of the Bankhouse ("COB") had been deposited, without ISG's knowledge or consent, into ESCM's account at Mellon Bank, in Pittsburgh. (A copy of the document showing the transfer is attached as Exhibit A to this affidavit).

4. I raised this issue with AJP, whom I believed to be representing ISG and the other investors to recover funds that had disappeared after the funds left COB's hands. AJP advised me that ESCM had done nothing wrong and was adamant his view that the firm was not liable. I believed him at the time because he was ISG's attorney, we were relying on him and I had been impressed by his knowledge and expertise as described in the complaint filed in this action. AJP showed me a list of entities described as "COB creditors" to whom the firm made payments. The list was not made available to me on the grounds of "privilege."

5. AJP never advised me to seek separate counsel with regard to ESCM's liability for its receipt and disposition of our funds, either at the time we first discussed the matter or after he transitioned to GT.

6. AJP's transfer to GT was not significant as far as ISG understood. In fact, we knew that GT has been involved with the matter early on because Stephen Burr, AJP's partner at ESCM, had transferred to GT in August 1999 and ISG was shown a copy of the demand letter written by Burr, shortly after his transfer to GT, to May Davis Group and Swan Trust asserting that he had been instructed to take all actions necessary to recover the funds. In our view, there was a close relationship between the firms.

7. I also wish to clarify the status of actions filed against Abn Amro Bank (Abn Amro) and First Merchant's Bank (FMB). After ISG finally obtained documents from AJP in August 2003 by court order and obtained a court order, in January 2004, giving ISG COB's rights in an assignment of accounts COB obtained from Henry Pearlberg in 1999, we were able to advance claims against Abn Amro and FMB in New York. We commenced those claims as soon as practicable thereafter.

2

8. In those actions, ISG has asserted claims for negligence, fraud and for aiding and abetting fraud. ISG has had to expend significant legal fees defending motions to dismiss, including on statute of limitations grounds. Abn Amro argues that the applicable statute of limitations is three years and, further, that "ISG's claimed ignorance of the alleged negligence is of no legal significance because 'the statutory period of limitations begins to run from the time when liability for the wrong has arisen even though the injured party may be ignorant of the existence of the wrong or injury.'" Abn Amro further argues that "the purported knowledge of ISG is irrelevant to any possible claim of tolling" because it is "an assignee of a tort claim" and '"did not obtain [ ] an interest in [the] purported claim until well after the period of limitations ran." Abn Amro asserts, in respect to the aiding and abetting claim, that "Pearlberg (as well as Pomeroy through whom ISG obtained the Deed of Assignment) had knowledge of the alleged wrongdoing at or about the time it is claimed to have occurred." Abn Amro further contends that ISG lacks standing to bring claims against it.

9. No order has issued as of the date of this filing, but we have been informed that at least the negligence count may be dismissed. Even if we survive the motion to dismiss, we still are in danger of losing our right to proceed at another stage of the proceeding and we certainly have had to expend legal fees that would not have been necessitated if AJP did what he promised, i.e., to file timely civil fraud and related claims against the responsible parties.

SIGNED UNDER PAINS AND PENALTIES OF PERJURY

_____
Philip G. Clark

CERTIFICATE OF SERVICE
I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail (by hand) on 12/23/04

3

**ABN·AMRO Bank**
BELGIUM

*Société BankHouse*

**Account Name:** Corporation of the BankHouse, Inc.
**Account Nr (US$):** 720-5404020-65

| Nr. | Date | Category | From / To | Memo | Amount | Balance |
|---|---|---|---|---|---|---|
| | | Opening Balance | | | 0.00 | 0.00 |
| 1/001 | 05/29/98 | Transfer in | COB Syndicate 165 | Internal transfer | 4,000,000.00 | 4,000,000.00 |
| 1/001 | 05/29/98 | Transfer out | Mellon Bank N.A. Pittsburgh, PA Eckert, Semans, Cherin & Mellot | Instructions JFP-SH | 821,500.00 | 3,178,500.00 |
| 1/001 | 05/29/98 | Transfer out | Fleet Bank of Mass, Boston, Ma Corporation of the BankHouse | Instructions JFP-SH | 328,500.00 | 2,850,000.00 |
| 1/001 | 05/29/98 | Payment | ABN-AMRO | Bank Charges Re:72005295203 | 184.03 | 2,849,815.9 |
| 1/001 | 05/29/98 | Payment | ABN-AMRO | Bank Charges Re:72005295202 | 271.76 | 2,849,544.2 |
| | | | | **Grand Total** | **12-Jun-98** | **2,849,544.2** |

EXHIBIT A