UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

INTERNATIONAL STRATEGIES GROUP, LTD.,

      Plaintiff,                                Civil Action No. 04-12000 RWZ

      v.

GREENBERG TRAURIG, LLP, A. JOHN
PAPPALARDO, AND ECKERT, SEAMANS,
CHERIN AND MELLOTT, LLC,

      Defendants.

## DEFENDANT ECKERT SEAMANS CHERIN & MELLOTT, LLC'S
## REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS

### Introduction

      ISG does not dispute that ESCM has accurately stated that it is settled law that an attorney is not liable for failure to file an action prior to the expiration of the statute of limitations if he ceased to represent the client and was replaced by other counsel before the statute ran on the client's action. In other words, if a plaintiff still has his cause of action against the defendant at the time his attorney ceases to represent him, then as a matter of law any purported negligence of the attorney is not the proximate cause of the plaintiff's alleged loss.

      ISG cites no case law rejecting this principle. Nor does ISG contend that any claims it had against the persons and entities involved in the depletion of its funds were time-barred as of March, 2001, when Pappalardo withdrew from ESCM. Nor does ISG contend that any ESCM attorney (other than Pappalardo <u>before</u> March, 2001) engaged in conduct that harmed ISG. Moreover, ISG concedes the obvious fact that it knew as of March, 2001 that no legal action had been filed against parties involved in the depletion of its Investment. ISG also admits that it knew by July, 2000 that ESCM had received funds from COB that ISG contends came from the

{K0295237.1}                          - 1 -

Investment, which are the sole facts supporting ISG's conversion claim against ESCM. Thus,

based on ISG's own allegations in the Complaint, it is apparent as a matter of law that (1) the

negligence and M.G.L. c. 93A claims fail because ESCM's conduct was not the proximate cause

of ISG's purported loss and (2) the negligence and conversion claims are barred by the

applicable statutes of limitations.

### ISG's argument concerning an attorney's potential liability for "uncollectible" judgments is not plead and is not applicable under the facts here.

ESCM's potential liability to ISG, if any, is vicarious liability for the alleged acts or

omissions of Pappalardo during the period he was a member of ESCM. ISG has not cited any

Massachusetts authority, and we believe there is none, to support the proposition that actions of

an attorney performed <u>after</u> he disassociated himself from his prior law firm are imputable back

to the former law firm.[1]

ISG does not dispute that timely legal action against the persons, banks or other entities

involved in the depletion of its Investment could have been initiated in or after March, 2001,

when Pappalardo withdrew as a member of ESCM. ISG also admits that it was continuously

represented by other legal counsel after Pappalardo's withdrawal from ESCM -- by Pappalardo

and Greenberg Traurig as of March 12, 2001 and by ISG's own "independent legal counsel" at

least by October, 2001. In its opening brief, ESCM has cited numerous authorities from many

jurisdictions for the settled principle that, as a matter of law, an attorney cannot be held liable for

---

[1] We reiterate that in our view none of the defendants in this matter acted in a manner that fell below the applicable standards of care, nor do we concede (except for purpose of this motion only) that any defendant represented ISG. We are further constrained to note that ISG's opposition to ESCM's motion is potentially misleading as to some of the allegations in the Complaint. For example, its opposition states that in August, 1999 "ESCM and Pappalardo" advised COB to take "immediate legal action" and "prepare motions" to seize assets of third parties. *ISG Opposition at 7, 13.* However, ISG's Complaint (¶ 22 and 23) alleges this "advice" to COB was in a letter from attorney Burr at the Greenberg Traurig firm. In a similar vein, ISG discusses alleged communications between Pappalardo and ISG <u>after</u> he left ESCM without any mention that they did not come from an ESCM attorney. *ISG Opposition at 9.*

failing to file an action prior to expiration of the period of limitations where he ceased to represent the plaintiff and was replaced by other counsel before the statutory period ran on the underlying action. Massachusetts law is in accord. *See ESCM Opening Brief at 9-14.* ISG has not cited a single case disputing this principle. Starting from this settled principle, we examine ISG's sole argument why it should not be applied here.

ISG acknowledges "[if] the potential defendants in the underlying actions available to ISG were all large and solvent companies such as General Motors or IBM from whom ISG could recover judgment, <u>then ESCM might be correct that no harm resulted 'but for' it negligence and conflicts of interest because ISG was in the same position after [ESCM's] representation terminated as before the representation commenced."</u> *ISG Opposition at 12 (emphasis added).* ISG argues, however, that ESCM could still be liable if the "delay in ISG's initiation of any claims, induced by ESCM, caused ISG to end up with an uncollectible judgment." *Id.*

But ISG has not alleged in its Complaint that all judgments it could obtain against parties responsible for the depletion of its Investment would be uncollectible. In fact, ISG cannot make that allegation. In support of its opposition to the motion to dismiss, ISG submitted an affidavit from Phillip Clark, a "principal" of ISG. In that affidavit, ISG discloses for the first time that ISG has commenced suit against Abn Amro Bank (Abn Amro) and First Merchants' Bank (FMB), two of the entities involved in depletion of ISG's Investment.[2] ISG has not alleged in its Complaint, or argued in its opposition, that any judgment it might obtain against Abn Amro or FMB would be "uncollectible". Indeed, ISG's argument through the Clark Affidavit is that ISG may be at risk of losing its case against Abn Amro and FMB because those defendants are raising statute of limitations defenses, although ISG further concedes that no adverse ruling has

---

[2] ISG filed its complaint against the banks on May 27, 2004 in the Supreme Court of the State of New York, County of New York. It seeks in excess of $16 million in damages.

{K0295237.1}                                          - 3 -

been entered against it as of the present time. So the issue of loss of remedy due to potential "uncollectibility" of a judgment is not present in this case.

ISG has conceded that after Pappalardo left ESCM a timely action against the defendant banks could have been commenced including by its own "independent counsel." If ISG can sustain its claims against the banks, ISG has financially viable defendants from whom it may yet obtain a judgment upon which it can collect.[3] At the least, ISG has not alleged to the contrary in the Complaint. Paraphrasing the court in *Land v. Greenwood*, 133 Ill.App.3d 537, 540, 478 N.E.2d 1203, (Ill. App. 1985), ESCM's duty to ISG ceased upon the termination of its representation of ISG in March, 2001. ISG's cause of action was viable at the time. It therefore follows that ISG can prove no set of facts which connect ESCM's conduct with any alleged damage sustained by ISG. Successor counsel had the duty to preserve ISG's cause of action.[4]

In a footnote, ISG also contends that its "ability to sue the third parties, such as Pearlberg, Patrick, FMB, May Davis Group, Abn Amro and others" was "more complicated" because its rights against the third parties were "derivative of COB's". *ISG Opposition at 11, n. 10.* We note, however, that federal and state procedural rules allow a plaintiff to join another party who refuses to participate in the suit and whose rights or obligations may be implicated. So if ISG had timely decided to file suit against these "third parties", it could have joined COB as an involuntary plaintiff if COB refused to initiate the suit. *See, e.g.* Fed.R.Civ.P. 19(a) (permitting joinder of party as an involuntary plaintiff where needed for just adjudication); *see also* New York C.P.L.R. 1001(a) ("When a person who should join as a plaintiff refuses to do so he may be

---

[3] Abn Amro is reported to be the ninth largest bank in Europe with offices in 60 countries. Its 2003 annual report states it had 560 billion euros in assets and had operating revenues of over 18 billion euros.

[4] For example in the banks' motions seeking to dismiss ISG's action, they argue that the statute of limitations expired at the earliest in February, 2002 and as late as July, 2002, a year or more after Pappalardo left ESCM and between 5 and 10 months after ISG had retained its "own independent counsel". This is based on the statute applicable to tort claims. For some unknown reason, ISG has not plead contract claims against the banks (even though it has assignments of contract rights), which would afford a longer statute of limitations.

made a defendant.") Equally importantly, ISG could have joined some or all of these third

parties in its suit against COB which was commenced in this Court in March, 2002. The failure

of ISG's successor counsel to timely file suit against the "third parties" or to use available

procedural devices to overcome any "complication" in suing such parties is not conduct that can

be attributed to ESCM.

Lastly, ISG appears to argue in its Opposition that it should be allowed to seek

compensation from ESCM as a result of its successful suit against COB and some of its

principals because the judgment, according to ISG, is uncollectible. A plain reading of the

allegations in the Complaint, including reasonable inferences therefrom, shows that ISG knew by

at least August, 1999 that it had potential claims against COB and that this knowledge came

from disclosures made to it by Pappalardo and COB. Such a plain reading also shows that ISG,

knowing of its potential claims against COB, decided that its course of action should be to

cooperate with COB in efforts (through business negotiations and the "Action Plan" or through

litigation) to seek recovery of its Investment from the third parties. ISG's Complaint does <u>not</u>

allege that ESCM or Pappalardo were engaged or ever agreed to advise or represent ISG with

respect to any claims ISG might have had against COB or its officers. Nor could they.

As reflected in the Complaint, ISG knew from the beginning that COB was a client of

Pappalardo and ESCM, and that Pappalardo contacted ISG on behalf of the client COB.

Whatever alleged attorney client relationship developed by implication between ISG and

Pappalardo in connection with the cooperative effort by ISG and COB to recover the depleted

investment, it is bizarre, to say the least, to suggest that Pappalardo was required to betray his

express and traditional client COB by bringing suit on behalf of ISG against COB or advising

ISG to do so.[5]  Plainly, ISG knew at all times that it had claims against COB and that it was free to bring suit on those claims whenever it chose.[6]  Moreover, there is no allegation or reason to believe that an earlier suit would have produced a judgment more "collectible" than the judgment ISG obtained.  Thus, ESCM's conduct, as a matter of law, was not the proximate cause of the alleged uncollectibility of the COB judgment.

### Because it is undisputed that ESCM did not represent ISG after March 11, 2001, the "continuous representation" doctrine does not apply to toll the statute of limitations on the legal malpractice claim.

With respect to ESCM's alternative argument that ISG's legal malpractice claim against ESCM is barred by the statute of limitations, ISG's opposition relies solely on the argument that the statute of limitations was tolled under the "continuous representation doctrine".  ISG is mistaken.  The continuous representation doctrine cannot be applied to ESCM, because ESCM did not represent ISG at any point of time after Pappalardo's withdrawal from ESCM, which ISG alleges was on March 12, 2001.  In other words, that doctrine which sometimes tolls the statute of limitation to the termination of the representation does not apply here because ESCM's alleged representation of ISG terminated as of March 12, 2001.

ISG does not allege that any ESCM attorney represented ISG or even communicated with ISG after Pappalardo's withdrawal.  ISG alleges in its Complaint that as of March 12, 2001, Pappalardo was a member of Greenberg Traurig which allegedly represented ISG, until ISG retained "independent counsel" which was at least by October, 2001.  *See Complaint ¶ 12, 43.* The defect in ISG's argument is that ISG confusingly blends Pappalardo with ESCM after he left ESCM.  But ESCM is a separate legal entity from Pappalardo, and to the extent Pappalardo

---

[5] Indeed, if ISG is correct in its allegation that it formed an attorney client relationship with Pappalardo, then if litigation developed between ISG and COB it is doubtful that Pappalardo could represent COB.

[6] ISG is not a minor but a sophisticated international investment company.

continued to represent ISG after he left ESCM, that activity cannot be a basis to toll the statute of limitations with respect to ISG's claim against ESCM. After he left, ESCM had no control over Pappalardo and no involvement in this subject matter. Similarly, at that point ESCM had no relationship with ISG and no right or duty to interfere with Pappalardo's alleged representation of ISG.

None of the Massachusetts cases cited in ISG's brief address the circumstances here. In *Murphy v. Smith*, 411 Mass. 133, 579 N.E.2d 165 (1991), the malpractice suit was brought against a sole practitioner who continued to represent the client on the same matter after the negligent act took place. In *Hodas v. Sherburne, Powers and Needham*, 938 F.Supp. 58 (D. Mass. 1996) and *Rosen Construction Ventures, Inc. v. Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.*, 364 F.3d 399 (1st Cir 2004), the malpractice actions were against the same attorneys who remained at the same firm during the entire time the attorneys and the firm represented the plaintiff. None of these cases dealt with a situation of a malpractice claim against a law firm whose representation of the client ceased when the attorney withdrew, and where the alleged "continuing representation" was by the attorney after his withdrawal while a member of a different law firm. However, one of the cases ISG relies on in its opposition tackled this very issue.

In *Crouse v. Brobeck, Phleger & Harrison*, 67 Cal.App.4th 1509, 80 Cal. Rptr. 2d 94 (Cal. App. 4th Dist. 1998), the court addressed the issue of whether the continuous representation doctrine tolled a malpractice claim against the Brobeck law firm where the Brobeck attorney who handled the case for the plaintiff-client had left the Brobeck firm to join another firm and continued to represent the plaintiff on the same matter. Similar to the facts is our case, it was undisputed that the Brobeck firm performed no legal services for the plaintiff after April, 1990

when the allegedly negligent attorney departed, and that the applicable statute of limitations barred the malpractice action against the Brobeck firm unless the statute was tolled by the continuing representation doctrine.[7] The court concluded that the continuing representation of the plaintiff by the former Brobeck attorney while at his successor firm did not toll the statute of limitations as to the claim against the Brobeck firm.

Several cogent reasons were given by the Court for this logical conclusion. First, a statute of limitations defense is personal to the defendant and cannot be waived without his consent by the conduct or agreements with others with whom he was co-obligated. Second, it is a standard principle of partnership law that a former partner cannot bind his former partners after his withdrawal from the partnership. Third, while the continuing representation doctrine is intended to benefit the client's interest by preserving undisturbed the relationship with the attorney, an objective of preserving the relationship "is to give the negligent attorney an opportunity to correct or mitigate his error by continuing to represent the client and avoiding the necessity for an immediate lawsuit." 67 Cal.App.4[th] at 1535-1540, 80 Cal. Rptr. 2d at 108-112. All of these reasons are applicable to ISG's claim against ESCM, and show that the continuing representation doctrine is not applicable to ESCM here.

A statute of limitations defense is a fundamental policy in the law. One of the principles underlying the purposes of a statute of limitations is that it would be "unjust to fail to put the adversary on notice to defend within a specified period of time and that the right to be free of stale claims in time comes to prevail over the right to prosecute them." *Railroad Telegraphers v. Railway Express Agency*, 321 U.S. 342, 349 (1944); *Swasey v. Barron*, 703 N.E.2d 1208 (Mass.App. 1999) (statutes of limitations promote repose by giving security and stability to

---

[7] Unlike most jurisdictions where the continuing representation doctrine is a court-created principle, in California it is codified as a provision in the statute of limitations. *See Crouse*, 67 Cal. App.4[th] at 1535, 80 Cal. Rptr. 2d at 109.

human affairs). ESCM's right to assert a statute of limitations defense cannot be waived or modified by the conduct of others without its consent. ISG has not cited a single case where a third party can waive or toll statute of limitations defense by an attorney to a former client's malpractice claims without the attorney's consent. Also, like California, it is long-settled in Massachusetts law that a termination of a partnership relationship ends the authority of one partner to bind his former partners and operates as a revocation of all power to create new contracts. *See generally Bowman v. Blodgett*, 43 Mass. 308, 1841 Mass. LEXIS 18 (1841); *Locke v. Fahey*, 288 Mass. 341, 193 N.E. 26 (1934). Similarly, after the partnership ends, the partnership cannot supervise the departing attorney about future representation of a client or require reports from him. Under ISG's theory here, a law firm could be potentially liable to a former client for the acts of a former partner, member or associate attorney for years, even decades, after the statute of limitations expired as long as the former attorney continued to represent the firm's former client, and even if the firm (like ESCM here) had no knowledge of, participation in, or control over the continued representation. The continuing representation doctrine in Massachusetts, and elsewhere, was not intended to create this absurd result.

Additionally, like the Brobeck firm in *Crouse*, it is undisputed that ESCM did not provide any legal representation to ISG after Pappalardo withdrew.[8]   After Pappalardo left, ESCM was not in a position to counsel or advise ISG, or COB, with respect to the loss of the Investment and what actions should or should not be taken. ESCM did not represent them with respect to this matter after Pappalardo's withdrawal. Other attorneys did. ESCM had no right, opportunity or duty to correct any alleged deficiencies or mistakes in Pappalardo's representation of ISG. Thus

---

[8] ISG has not even alleged that ESCM provided legal service to COB concerning this matter after Pappalardo withdrew in March, 2001.

the continuing representation doctrine does not toll the legal malpractice claims against ESCM asserted in Count One of the Complaint.

### Because ISG had knowledge of alleged harm from ESCM's purported negligence, under controlling Massachusetts law the "continuing representation" doctrine is inapplicable.

The "continuous representation" doctrine does not apply if the plaintiff has knowledge that he has been harmed by his attorney's conduct. The Massachusetts Supreme Court made this clear in *Lyons v. Nutt*, 436 Mass. 244, 763 N.E.2d 1065 (2002). In that case, the Court addressed two aspects of Massachusetts law on legal malpractice actions that are directly relevant to ESCM's motion to dismiss. First, the Court explained the well-settled principle that "[a] client need not know that his lawyer was negligent for the cause of action to accrue. He need only know that he 'sustained appreciable harm as a result of the lawyer's conduct'" 436 Mass. at 248-49, quoting *Williams v. Ely*, 423 Mass. at 473. Second, rejecting the plaintiff's attempt to rely on the doctrine of "continuous representation" to toll the statute of limitations, the Court held that "[t]he doctrine has no application, however, where the client actually knows that he suffered appreciable harm as a result of his attorney's conduct." 436 Mass. at 250.

As discussed in ESCM's opening Brief, it is difficult to perceive how ISG was harmed by alleged malpractice of ESCM when it is undisputed that ISG had the ability to pursue claims against the "third parties" or others at the time ESCM's representation ended in March, 2001. This point is reinforced by ISG's belated admission that it has pending suits against Abn Amro and FMB. ISG was well aware that as of March, 2001, no legal action had been commenced against anyone. Assuming the lack of commencement of a suit by Pappalardo to be at least part of the alleged harm to ISG (*see e.g. Complaint ¶ 52, 66*), ISG was aware of the "harm" more than three years before the present action was filed. Nor does it make any difference that ISG might be claiming additional "harm" here. In a legal malpractice action, "[t]he plaintiff need not

know the extent of his injury or know that the defendant was negligent for the cause of action to accrue." *Williams v. Ely*, 423 Mass. 467, 473, 668 N.E.2d 799 (1996). "Thus, [plaintiffs] need not suffer actual harm before the action accrues, but merely be on notice that they are in harm's way." *Infantino v. Murphy*, 14 Mass. L. Rep. 681, 2002 Mass. Super LEXIS 203 (Mass. Sup. 2002); *Cantu v. St. Paul Cos.*, 401 Mass. 53, 57, 514 N.E.2d 666 (1987) (finding legal malpractice action accrued when doctor first learned his attorneys failed to notify his excess insurance carrier of a potential claim, not at a later date when he replaced his attorneys and hired different ones). Since ISG was aware of at least some of its "harm" from the alleged malpractice in or before March, 2001, the continuous representation doctrine is inapplicable. *Lyons, supra.*

**Because ISG had knowledge of the alleged conversion of a portion of its Investment, under controlling Massachusetts law the "continuing representation" doctrine is inapplicable.**

With respect to ESCM's alleged "conversion" of a portion of ISG's Investment, ISG has admitted that by July, 2000, it was actually aware of the transfer of the $821,500 by COB to an ESCM account, which is the transaction that forms the basis of the conversion claim. "ISG learned during the time that ESCM had procured the Power of Attorney in July, 2000 that ESCM had received $821,500 of its investment." *ISG Opposition p.8; ISG Complaint ¶ 31, 62.* ISG alleges that its was harmed by this conduct. *Id.* And, obviously, ISG contends that the harm was "a result of" ESCM's conduct.

Thus, under settled law ISG's cause of action for conversion accrued at least by July, 2000, regardless of whether this claim is considered under conventional law of conversion, *Hendrickson v. Sears*, 365 Mass. 83, 89-90, 310 N.E.2d 131 (1974) (cause of action for conversion accrues on the happening of an event likely to put the plaintiff on notice); *MacCleave v. Merchant*, 15 Mass. L. Rep. 315, 2002 Mass. Super. LEXIS 392 (Mass. Super. Ct. 2002) (same), or under a theory of legal malpractice, *Williams v. Ely, supra* (the plaintiff does not need

to know the harm was caused by defendant's negligence for the cause of action to accrue). Because the statute of limitations for conversion is three years and ISG did not file this action until June 24, 2001, almost four years after the cause of action accrued, the conversion claim is time-barred.

And for the reasons discussed above, ISG's "continuing representation" argument does not save this claim. Accepting its allegations as true, ISG had actual knowledge that it suffered appreciable harm are a result of ESCM's conduct at least by July, 2000. The fact that Pappalardo continued to "represent" ISG thereafter is of no consequence because the doctrine of continuing representation as a basis to toll a statute of limitations "has no application" in light of ISG's admitted knowledge, *Lyons*, *supra*, and because the alleged representation by Pappalardo after he left ESCM cannot to toll the statute as to ESCM. *See discussion above*. Nor does the Affidavit of Philip Clark change this conclusion. ISG argues that when Clark "raised this issue" with Pappalardo, Pappalardo responded that "ESCM had done nothing wrong and was adamant his view [*sic*] that that firm was not liable." But ISG has cited no authority for the proposition that a party's denial of having engaged in wrongful conduct tolls the statute of limitations. Indeed, ISG's argument would require an attorney to admit to his client that he acted wrongfully or negligently -- even if he believed otherwise -- before a statute of limitations on any potential claim against the attorney would begin to run. There is no such authority under Massachusetts law or, to our knowledge, in any jurisdiction. The conversion claim in Count Four of the Complaint is time barred.

**Conclusion**

For all of the foregoing reasons herein and in ESCM's opening Brief, the claims against

ESCM asserted in Court One, Four and Six of the Complaint should be dismissed.


Respectfully submitted,

ECKERT SEAMANS CHERIN & MELLOTT, LLC

By: _Devorah Levine_
  Devorah A. Levine (BBO #650813)
  One International Place, 18th Floor
  Boston, Massachusetts 02110-2602
  617-342-6800
  Attorneys for Defendant
  Eckert Seamans Cherin & Mellott, LLC

Of Counsel:
William B. Mallin, General Counsel
Timothy S. Coon
Eckert Seamans Cherin & Mellott, LLC
600 Grant Street, 44th Floor
Pittsburgh, PA 15219
412-566-6000

Dated: January 11, 2005

{K0295237.1}                                    - 13 -

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing **DEFENDANT ECKERT SEAMANS CHERIN & MELLOTT, LLC'S REPLY BRIEF SUPPORT OF ITS MOTION TO DISMISS** was served upon the following counsel of record by United States mail, postage prepaid, or by electronic mail, this 11th day of January, 2005.

Jessica Block
Block & Roos, LLP
60 State Street
Suite 3800
Boston, MA 02109

Counsel for plaintiff

Paul B. Galvani
Ropes & Gray LLP
One International Place
Boston, MA 02110

Counsel for defendants Greenberg
Traurig, LLP and A. John Pappalardo

Devorah Levine
_____
Devorah A. Levine