UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

2005 FEB -4  A 9:07

U.S. DISTRICT COURT
DISTRICT OF MASS.

INTERNATIONAL STRATEGIES GROUP, LTD.

    Plaintiff,

v.

GREENBERG TRAURIG, LLP, A. JOHN
PAPPALARDO, AND ECKERT, SEAMANS,
CHERIN AND MELLOTT, LLC,

    Defendants.

CIVIL ACTION NO.
04-12000 RWZ

**OPPOSITION OF INTERNATIONAL STRATEGIES GROUP, LTD. TO THE MOTION OF GREENBERG TRAURIG, LLP AND A. JOHN PAPPALARDO TO DISMISS AMENDED COMPLAINT**

International Strategies Group, Ltd. ("ISG") submits this opposition to the motion of defendants Greenberg Traurig, LLP ("GT") and A. John Pappalardo ("AJP") to dismiss the Amended Complaint. The motion should be denied for the following reasons.

**I.    The Complaint Adequately Alleges that AJP and GT are Liable for the ISG's Inability to Collect on Its Judgment Against COB**

GT and AJP seem to ignore entirely the allegations in the Amended Complaint that their course of conduct, in addition to causing other damages, prevented ISG from collecting on its judgment against COB, Pomeroy and SBG ("the COB-related defendants") in the amount of $10,468,106. ISG alleges in the Amended Complaint, "On April 26, 2004, ISG obtained judgment in the COB Litigation in the amount of $10,468,106. The court also entered findings of fact regarding defendants' willful and

knowing conduct, and an order assigning to ISG all rights to the bank accounts which Swan Trust had transferred to Pomeroy in April 1999. However, that judgment appears essentially worthless as, upon information and belief, all of the defendants in that case – COB, Pomeroy, Societe Bankhouse and SBG – during the time that the defendants in this case were purporting to represent ISG's interests, dissipated all their assets or otherwise put them out of reach of ISG." (Amended Complaint, ¶52.) ISG further alleges, "Defendants violated their duty of care to ISG in several ways, including, without limitation, purporting to represent ISG's interests in the first place when their interests, and those of COB and Pomeroy, their primary client, were so at odds with ISG and when, without defendants' disclosing the risks of joint representation of the team, they allowed COB, Pomeroy, and SBG to put assets out of reach of ISG during the two year period of joint representation." (Amended Complaint, ¶57). ISG alleges, "Pappalardo violated his fiduciary duty to ISG by, *inter alia* (i) undertaking to represent ISG when his representation was riddled with conflicts of interest (including (a) the simultaneous representation of ISG and individuals and entities who defrauded ISG, at a time when he was also retained to fend off criminal investigation of Pomeroy, (b) the fact that his law firm had received funds COB misappropriated from ISG, and (c) continued simultaneous representation of ISG and Pomeroy and St. Frederikslund after Pomeroy and St. Frederikslund formed SBG to divert funds from COB).. . ." (Amended Complaint, ¶63). ISG alleges, throughout the Amended Complaint, its forbearance from initiating litigation against the COB-related defendants based upon the representations, assurances and promises made to it by AJP, while at Eckert, Seamans, Cherin & Mellott, LLC (ESCM) and GT. (Amended Complaint, ¶¶ 19,20,27,42 and 60.) ISG alleges as part of its

damages against these defendants that, as a result of their conduct, it lost its ability "to collect upon its judgment of $10,468,106 in the COB Litigation or otherwise to recover the full amount of its Investment." (Amended Complaint, ¶58.)

As ISG previously has argued in its opposition to the motion of ESCM to dismiss the original complaint (which ISG incorporated, by reference, into its opposition to the motion by GT and AJP to dismiss the original complaint), defendants could be held liable to ISG if, as alleged here, the delay in ISG's prosecution of any claims, which AJP induced while at ESCM and GT, caused ISG to end up with an uncollectible judgment. See 4 Mallen & Smith, Legal Malpractice, The Plaintiff's Attorney – Delay in Prosecution, The Plaintiff's Attorney – Delay in Prosecution – Error Regarding Collectibility and Bankruptcy, §§30.19 -20, 504-7 (5th Ed. 2000); Khadem v. Fischer & Kagan, 626 N.Y.S.2d 500, 215 A.D. 2d 441 (N.Y. App. Div.1995) (summary judgment for law firm reversed where there was a question of fact as to whether law firm's delay in prosecuting the case between 1983 and 1985 was a proximate cause of plaintiff's inability to collect on its judgment). As ISG also previously argued in its opposition to ESCM's motion to dismiss the original complaint, which applies with equal force to AJP and GT, "[a] law firm may be liable to a client even where the client lost only some but not all of its legal remedies." 4 Mallen & Smith, Legal Malpractice, The Plaintiff's Attorney – Delay in Prosecution, §30.19, 505-6 (5th Ed. 2000).

GT and AJP assert in their motion, "ISG does not explain what AJP or GT could have done during the time either was allegedly representing ISG that would have prevented any alleged dissipation. Nor does ISG even allege that there were any assets

3

damages against these defendants that, as a result of their conduct, it lost its ability "to collect upon its judgment of $10,468,106 in the COB Litigation or otherwise to recover the full amount of its Investment." (Amended Complaint, ¶58.)

As ISG previously has argued in its opposition to the motion of ESCM to dismiss the original complaint (which ISG incorporated, by reference, into its opposition to the motion by GT and AJP to dismiss the original complaint), defendants could be held liable to ISG if, as alleged here, the delay in ISG's prosecution of any claims, which AJP induced while at ESCM and GT, caused ISG to end up with an uncollectible judgment. See 4 Mallen & Smith, Legal Malpractice, The Plaintiff's Attorney – Delay in Prosecution, The Plaintiff's Attorney – Delay in Prosecution – Error Regarding Collectibility and Bankruptcy, §§30.19 -20, 504-7 (5th Ed. 2000); Khadem v. Fischer & Kagan, 215 A D. 2d 441. 626 N.Y.S.2d 500 (1995) (summary judgment for law firm reversed where there was a question of fact as to whether law firm's delay in prosecuting the case between 1983 and 1985 was a proximate cause of plaintiff's inability to collect on its judgment). As ISG also previously argued in its opposition to ESCM's motion to dismiss the original complaint, which applies with equal force to AJP and GT, "[a] law firm may be liable to a client even where the client lost only some but not all of its legal remedies." 4 Mallen & Smith, Legal Malpractice, The Plaintiff's Attorney – Delay in Prosecution, §30.19, 505-6 (5th Ed. 2000).

GT and AJP assert in their motion, "ISG does not explain what AJP or GT could have done during the time either was allegedly representing ISG that would have prevented any alleged dissipation. Nor does ISG even allege that there were any assets

3

available that could have been used to satisfy ISG's claim." (GT and AJP brief, pages 4-5).

It is not ISG's burden, however, at the complaint stage of the proceedings, to allege specifically what GT and AJP could have done to prevent the alleged dissipation or to specify the assets that were available to collect on the judgment against the COB-related defendants were it obtained earlier. The cases are legion that the allegations of a complaint "need only set forth 'a short and plain statement of the claim.'" Frontier Management Co. v. Balboa Insurance Co, 658 F. Supp. 987, 994 (1st Cir. 1986), citing Fed.R.Civ.P.8(a). Accord. Davidson and Abbott Laboratories v. Cao et al, 211 F. Supp. 2d 264, 280 (D. Mass. 2002) and cases cited. ("As long as the facts in the pleading give the defendant sufficient notice to file a responsive pleading, a generalized statement of facts is adequate.")[1] "Evidentiary detail" and "technical precision" are not required are not required at the complaint stage. Davidson and Abbott Laboratories, 211 F. Supp. at 280, citing DM Research, Inc. v. College of American Pathologists, 170 F. 3d, 53, 55 (1st Cir. 1999); Raytheon Company v. Continental Casualty Company, 123 F. Supp. 22, 27 (D. Mass. 2000) (citations omitted) ("The Rules 'do not require a claimant to set out in detail the facts upon which he bases his claims'"). Upon a motion to dismiss, "[t]he issue is not whether the plaintiff will ultimately prevail, but whether that party is entitled to offer evidence to support its claims." Raytheon Company v. Continental Casualty Company, 123 F Supp. at 26. Every reasonable inference must be drawn in favor of the claimant. Berezin v. Regency Savings Bank, 234 F.3d 68, 70 (1st Cir. 2000) (reversing district court's dismissal of a complaint). Accord Frontier Management Co. v. Balboa

4

Co, 658 F. Supp. at 995. A complaint should not be dismissed unless "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id. quoting Conley v. Gibson, 355 U.S. 41, 45-6 (1957).

Using these precepts, ISG's Amended Complaint gives GT and AJP more than sufficient notice of its claim that AJP's conduct, while at ESCM and GT, induced ISG's forbearance from initiating a lawsuit against COB and related entities; that AJP should never have purported to represent ISG in the first place; that the delay of 26 months caused ISG to be unable to collect on the judgment it eventually obtained in 2004 against the COB-related defendants, by then insolvent; and that AJP and his law firm are responsible for the damages that resulted. The Amended Complaint fairly can be read, both directly and inferentially, to allege that had AJP and GT not purported to represent the "team" and induced ISG's forbearance for 26 months, ISG would have taken immediate legal action against COB and related entities and been able to recover its investment. The Amended Complaint must be construed, with all reasonable inferences in ISG's favor, to allege that an independent attorney retained in August 1999 when ISG learned its investment was gone, would have prevented the dissipation by the COB-related defendants of assets through appropriate pre-judgment relief. It must also be construed to allege that AJP and GT, together with ESCM, having taken on the representation of the team, should not have participated in a scheme to divert assets from ISG by incorporating SBG, and then promised, recklessly, that SBG would pay off the investment if that were the only option (thus further inducing forbearance and reliance).

---

[1] Defendants' motion papers indicate that they fully understand the nature of the claims against them; they are instead attempting to obtain a dismissal by importing evidentiary summary judgment standards into a Fed.R.Civ. P. 12 (b)(6) motion.

5

(See Amended Complaint, ¶¶34-7.)[2] Although, again, ISG is not required to allege specifically what assets were available, it has, in fact, alleged assets that passed through the COB-related defendants during the time AJP was inducing forbearance, including, *inter alia* (i) $1,215,000 - $1.8 million Pomeroy received from Henry Pearlberg (Amended Complaint, ¶16), (ii) $1.8 Million transferred into SBG, a defendant in the COB Litigation and the successor corporation to COB (Amended Complaint, ¶ 36), (iii) $350,000 transferred to GT and ESCM (Amended Complaint, ¶36) and (iv) a "management fee" to COB in the amount of $1,000,0000 (Amended Complaint, ¶36.)

As to the damages resulting from the delay induced by ESCM, AJP and GT in the prosecution of claims against the COB-related defendants, it cannot be said, based on a reading of the Amended Complaint, with all reasonable inferences in favor of ISG, that there are no set of facts that would entitle ISG to relief under this theory. Accordingly, the Court should deny the motion to dismiss. Further specificity, prior to the conclusion of discovery, is not required at this juncture. Indeed, the Amended Complaint surpasses the pleading requirements of Fed.R.Civ.P.8 (a).

## II. The Complaint Adequately Alleges that AJP and GT are Liable for the Delay in ISG's Ability to Prosecute Claims Against Abn Amro and FMB and the Resultant Statute of Limitations Issues.

In their motion to dismiss the amended complaint, as in their previous motion to dismiss the original complaint, GT and AJP repeat their argument that they are not the proximate cause of ISG's harm, at least as to the statute of limitations issues raised in

---

[2] In Kirkland Construction Co. v. James et al, 39 Mass. App. Ct. 559 (Mass. App. 1995), the Massachusetts Appeals Court reversed an order of dismissal where an attorney represented to a creditor of his client that the client could pay. The court held under the cognate state rule, Mass.R.Civ.P.12 (b)(6), that dismissal was premature because , "it cannot now be said that no set of provable facts would entitle [the plaintiff] to relief." Id at 564.

ISG's lawsuit against Abn Amro and FMB now pending in New York ("the New York Action") because, GT and AJP assert, there was still time to file that lawsuit after ISG retained independent counsel in October 2001. Using February 1999 as an accrual date, defendants speculate that "ISG would have had over three months with which to pursue litigation after it had hired new counsel." (GT and AJP brief, page 4). Defendants also state in a footnote that ISG did not learn of the transfer to FMB until after February 5, 1999 and thus, they again speculate, "it is likely the statute would not have started to run even later." (GT and AJP brief, page 4, n. 2).

However, as ISG argued in opposition to GT and AJP's motion to dismiss the original complaint (and it has included new allegations to make its point clearer in the Amended Complaint), the claims against Abn Amro and FMB in connection with the transfers from Henry Pearlberg to Joan Patrick and from Joan Patrick to FMB are derivative of COB's. ISG did not receive an assignment of COB's rights until January 11, 2004 after it commenced timely litigation against the COB-related defendants. (Amended Complaint, ¶53). As ISG has alleged in the Amended Complaint, Abn Amro has seized upon the derivative nature of the claims in arguing, in the New York action, that ISG lacks standing to bring the action in the first place, that ISG did not obtain standing, if any, until after the statute of limitations had lapsed and, further, that the date upon when ISG learned of the transfer is irrelevant. (Amended Complaint, ¶54.) ISG alleges in the Amended Complaint:

> Upon obtaining rights to the Deed of Assignment, ISG filed actions against Abn Amro and FMB in New York for negligence, fraud and aiding and abetting fraud. ISG has had to expend significant legal fees defending motions to dismiss, including on statute of limitations and standing grounds. Abn Amro argues in the New York actions that the applicable statute of limitations is three years and, further, that "ISG's claimed ignorance of the alleged negligence is of no legal

7

significance because 'the statutory period of limitations begins to run from the time when liability for the wrong has arisen even through the injured party may be ignorant of the existence of the wrong or injury.'" Abn Amro further argues that "the purported knowledge of ISG is irrelevant to any possible claim of tolling" because it is "an assignee of a tort claim" and "did not obtain [ ] an interest in [the] purported claim until well after the period of limitations ran." Abn Amro asserts, in respect to the aiding and abetting claim, that "Pearlberg (as well as Pomeroy through whom ISG obtained the Deed of Assignment) had knowledge of the alleged wrongdoing at or about the time it is claimed to have occurred." Abn Amro further contends that ISG lacks standing to bring claims against it.

(Amended Complaint, ¶54).

As argued in ISG's previous opposition, the question of whether a "reasonable" time remained within the limitations period for ISG to file complaints against other responsible parties (which defendants incorrectly assert here should be determined as a matter of law under Fed. R. Civ.P 12(b)(6)) "may be one for the jury to decide where the facts are disputed or the matter rests largely on inference[.]" Pagliarini, et al. v. Iannaco, 440 Mass. 1032, 1032-3 (2003) (rescript). It cannot be said at this stage of the proceedings that, as a matter of law, ISG could have secured that assignment of rights by February 2001 or earlier. That is especially so where, as alleged in the complaint, GT and AJP withheld critical information pertinent to claims against Abn Amro and other responsible parties until forced to disclose documents by court order (Amended Complaint, ¶¶24, 51), where AJP, having undertaken to investigate claims in August 1999, apparently did not himself determine a cause of action against Abn Amro until June 2001, almost two years after he began investigating potential claims on behalf of the team (Amended Complaint, ¶ 41) and where it took almost two years from the commencement of the COB Litigation to obtain an attachment and then, only as a sanction (Amended Complaint, ¶53). It will be a topic in this case of conflicting testimony of fact witnesses and experts as to whether, given all the procedural and other

8

hurdles, ISG could have filed the New York action so as to avoid completely any challenges to the lawsuit on statute of limitations grounds. At this stage of the case, the Amended Complaint must be construed to allege that ISG could not have initiated the complaint against Abn Amro or FMB until it received an assignment of COB's rights in the money transferred by Pearlberg, and, further that the assignment could not have been obtained within the limitations period now urged by AJP and GT. In fact, the Amended Complaint contains an allegation that AJP himself believed "the statute of limitations will be an issue but creative thinking should be applied" (Amended Complaint, ¶47.) ISG also alleges in the Amended Complaint that as of June 2001, when AJP still was purporting to be representing ISG's interests while he was at GT, AJP advised COB, but not ISG, that "statutes of limitations were running out in some courts." (Amended Complaint, ¶41) These allegations, which are admissions of AJP, are at odds with the positions now advanced by defendants. The Amended Complaint alleges sufficiently that, as a result of defendants' conduct the statute of limitations had run on some of the claims available to ISG such that "creative thinking" had to be applied to toll the statute and that ISG was damaged as a result. It will be a factual question as to whether independent counsel, in light of the obstacles placed on their path investigating potential claims against responsible parties, had a "reasonable time" within which to obtain the necessary assignment of rights (a condition precedent to filing a lawsuit against the bank) and to identify the claims against Abn Amro and FMB.

It should also be noted that Abn Amro has taken the position in the New York action, as alleged in the Amended Complaint, that the statute of limitations on claims against it runs from the date of injury regardless of plaintiff's ignorance of the

9

wrongdoing. Thus, if the New York court agrees with Abn Amro's interpretation of the law,[3] to the extent ISG has direct claims against Abn Amro arising out of the transfer of its $4 million investment in May 1998, the three year statute would have expired by May 2001, five months before ISG retained new counsel and during a period when AJP and GT were continuing to represent ISG, promising ISG imminent recovery from Pearlberg and other sources and otherwise inducing its forbearance from prosecuting lawsuits against other parties. (Amended Complaint, ¶ 44.) The allegations of the Amended Complaint sufficiently make out a claim that AJP and GT proximately caused ISG's damages in battling statute of limitations defenses raised in the New York action.

Finally, ISG further alleges, as part of its damages, "counsel fees incurred in initiating third party actions, which, if pursued by Pappalardo on behalf of COB-related entities pursuant to their fiduciary duties to ISG, would not have been incurred by ISG." (Amended Complaint, ¶58). Accordingly, the Amended Complaint must be construed to allege that had AJP, while at ESCM and GT, did what he promised to do, having taken on the representation of ISG and the rest of the "team," ISG would have recovered its investment and would not have had to initiate its own direct and derivative actions and incurred its own counsel fees. (Amended Complaint, ¶¶58, 65-68.)

## CONCLUSION.

For all of the foregoing reasons, the Motion of GT and AJP to Dismiss the Amended Complaint should be denied. ISG also incorporates herein its arguments set forth in the opposition to ESCM's motion to dismiss the amended complaint, as well as

---

[3] Even it is does not, ISG still would have incurred damages in the form of attorneys' fees defending the statute of limitations argument advanced by Abn Amro and the risk that even a favorable ruling by the court in the New York action will be overturned on appeal.

10

its previous arguments set forth in its oppositions to the motions of ESCM and of AJP and GT to dismiss the original complaint.

                                          INVESTMENT STRATEGIES
                                          GROUP, LTD

                                          By its attorneys,

                                          Jessica Block
                                          BBO#046110
                                          Block & Roos, LLP
                                          60 State Street, Suite 3800
                                          Boston, Massachusetts 02109
February 4, 2005                            (617) 223-1900

    I, Jessica Block, Esquire, counsel for the plaintiff, do hereby certify that the within pleading was served by causing copies to be mailed, first class, postage prepaid, to counsel for the other parties of record, this 4th day of February, 2005.

                                          Jessica Block

11