UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

2005 FEB -4 A 9:07

U.S. DISTRICT COURT
DISTRICT OF MASS.

INTERNATIONAL STRATEGIES GROUP, LTD.

Plaintiff,

v.

CIVIL ACTION NO.
04-12000 RWZ

GREENBERG TRAURIG, LLP, A. JOHN
PAPPALARDO, AND ECKERT, SEAMANS,
CHERIN AND MELLOTT, LLC,

Defendants.

## OPPOSITION OF INTERNATIONAL STRATEGIES GROUP, LTD. TO ECKERT SEAMANS CHERIN AND MELLOTT, LLC's MOTION TO DISMISS AMENDED COMPLAINT

### Introduction

International Strategies Group, Ltd. ("ISG") submits this opposition to the motion to dismiss the amended complaint of Eckert, Seamans, Cherin and Mellott, LLC ("ESCM").[1] Both parties have extensively briefed the issues, raised by ESCM anew in this motion, in connection with ESCM's motion to dismiss the original complaint and ISG's opposition thereto. ISG responds as follows to the arguments raised in ESCM's new motion.

I. **Counts One, Two and Seven of the Amended Complaint Because The Allegations in the Complaint Adequately Alleges that ESCM, Along with AJP and GT, Was the Proximate Cause of ISG's Harm**

ESCM argues in the motion to dismiss the amended complaint, as it did in its previous motion to dismiss the original complaint, that it cannot be held liable under

---

[1] Defendants Greenberg Traurig, LLP and A. John Pappalardo submitted their own motion to dismiss the amended complaint. To ensure that all arguments raised by each movant are addressed, ISG submits a separate opposition to their motion.

Count One (negligence), Count Two (misrepresentation) and Count Seven (violation of M.G.L. 93A) because it is not the "proximate cause" of ISG's harm. In that regard, ESCM's sole argument is that there was still time left for ISG to file claims against third parties after the cessation of ESCM's representation.

However, as ISG argued in its opposition to the Motion to Dismiss the Amended Complaint filed by GT and AJP, and incorporates such opposition herein, the complaint alleges two ways in which the delay occasioned by ESCM, and then later compounded after AJP transferred to GT, caused harm to ISG. First, the delay in ISG's prosecution of its claim against the COB-related defendants,[2] a delay wholly induced by the defendants through promises, assurances and misrepresentations, including a representation by AJP while he was at ESCM that COB's successor corporation SB Global would satisfy COB's obligation to ISG if that were the only option (Amended Complaint, ¶3), caused ISG, among its other damages, to lose its ability to collect on its judgment against the COB-related defendants in the amount of $10,468,106. (*See* discussion in ISG's Opposition to the Motion of GT and AJP to Dismiss Amended Complaint, pages 1 through 6). A lawyer may be liable in negligence or otherwise for the delay in prosecution of a claim, where such delay affected the collectibility of a judgment. Id., See 4 Mallen & Smith, Legal Malpractice, The Plaintiff's Attorney – Delay in Prosecution, The Plaintiff's Attorney – Delay in Prosecution – Error Regarding Collectibility and Bankruptcy, §§30.19 -20, 504-7 (5th Ed. 2000). See also Kirkland Construction Co. v. James et al, 39 Mass. App. Ct. 559 (Mass. App. 1995) (liability attaches where attorney negligently represented that his client would pay the creditor for work performed). Thus, while there was time left to sue the

2

COB-related defendants after October 2001 (and ISG did sue them) or even in March 2001, when AJP transferred to GT, that does not excuse ESCM from liability where the complaint alleges that its conduct deprived ISG of the ability to secure assets. Much of the conduct of AJP alleged in the Amended Complaint, which induced forbearance on ISG's part, occurred while AJP was a partner at ESCM.

Beyond the delay damages, the Amended Complaint alleges that ESCM's conduct, together with that of AJP and GT, delayed initiation of actions against Abn Amro and FMB, actions that could not be commenced without an assignment of rights from COB (See Amended Complaint, ¶¶19 -54.) Again as ISG argued in opposition to the motion of GT and AJP to dismiss the amended complaint, it is a factual question, and not a determination that this Court can make as a matter of law at the pleading stage, as to whether, given the facts of this case and the derivative nature of the claims against Abn Amro and FMB, there was "reasonable" time for ISG both to identify the claims against those institutions and to secure the necessary assignment of COB's rights after AJP's representation ceased. (*See* discussion in ISG's Opposition to the Motion of GT and AJP to Dismiss Amended Complaint, pages 6 – 10.) Even if ESCM's liability for delays ceased as of March 1, 2001, the Amended Complaint demonstrates that it took twenty-two months from the commencement of the lawsuit against the COB-related defendants to secure the assignment necessary to bring claims against Abn Amro and FMB; thus factual questions, to be answered by lay and expert testimony, remain as to whether ISG could have brought derivative claims against parties, other than the COB-related defendants, responsible for their loss within the time ESCM now argues was available.

---

[2] The "COB-related Defendants" are defined in ISG's opposition to the motion of GT and AJP to dismiss the amended complaint as Corporation of the Bankhouse, its successor S B Global and James F. Pomeroy.

To combat the argument previously raised by ISG that its claims against Abn Amro and FMB filed in New York ("the New York Action") were derivative and ISG needed first to perfect an assignment, ESCM tosses out the argument in its Reply Brief in Support of its Motion to Dismiss the Original Complaint ("ESCM Reply Brief") to which it refers in the instant motion, that ISG could have compelled the COB-related defendants to join in a lawsuit (presumably the New York Action) under Fed.R.Civ.P 19(a) or, alternatively, added Abn Amro and FMB (neither of which appear to have offices in Boston) and other nonresident potential defendants to the COB-litigation in Boston. (ESCM Reply Brief, pages 3-5). These arguments are proof positive as to why this matter cannot be decided upon a motion to dismiss as they purport offer expert testimony, disguised as argument. ESCM's contentions must be reserved for later stage, when percipient witnesses and experts can testify as to whether such options or others were even open to ISG, whether there would have been jurisdiction over Abn Amro and FMB in Massachusetts or whether ISG could have forced COB-related individuals and entities to litigate in New York, whether independent counsel had sufficient time to identify claims against these institutions (AJP having taken almost two years to identify such claims after investigation of witnesses, research and documents, which he then withheld from ISG) and whether Fed.R.Civ.P 19(a) even applies to this set of facts or would have been available in the time periods urged by ESCM. The Amended Complaint, in addition to establishing that ISG suffered damages, caused by ESCM's conduct, in the form of the uncollectibility of the judgment in the COB Litigation, also sets forth facts that establish how the delay caused by ESCM, in turn, delayed the securing of the assignment necessary

to sue Abn Amro and FMB in New York, thus leading to the need to defend statute of limitations arguments in that suit.

Finally, as part of its claim for relief, ISG alleges, as part of its damages, "counsel fees incurred in initiating third party actions, which, if pursued by Pappalardo on behalf of COB-related entities pursuant to their fiduciary duties to ISG, would not have been incurred by ISG." (Amended Complaint, ¶58). The Amended Complaint must be construed to allege that had AJP, while at ESCM and GT, properly prosecuted actions against third parties as promised, ISG would have recovered its funds and would not have had to initiate its own direct action and derivative actions to recover its investment after October 2001.

## II. Counts One, Two, Five, and Six of the Amended Complaint Were Timely Filed Against ESCM

ESCM next argues that Count One (negligence), Count Two (misrepresentation), Count Five (conversion) and Count Six (aiding and abetting fraud) must be dismissed as barred by a three year statute of limitations.[3]

**Count One.** As to Count One, ESCM argues solely that ISG knew as of March 12, 2001, when AJP transferred to GT, that ESCM had not filed litigation. On this basis alone, ESCM contends that the statute of limitations against it began to run when AJP transferred his affiliation to GT. ESCM ignores the allegations in the complaint that (1) AJP told ISG just a few weeks earlier that "positive developments could result in the return of monies" and that COB was "reviewing its options . . . by way of a civil suit against both individuals and institutions" (Amended Complaint, ¶39), and, further, that (2) it was not until August 15, 2001, that ISG was informed no litigation had been

---

[3] A four year statute of limitations applies to Count Seven, for violations of M.G.L. 93A.

5

commenced and COB was only at the "first steps" of initiating litigation (Amended Complaint, ¶42). ESCM also ignores the allegations, not until after its retention of counsel independent from AJP that "was ISG able to appreciate the numerous conflicts of interest of Pappalardo, Eckert Seamans and Greenberg Traurig that precluded appropriate representation of ISG's interests; the substantial missed opportunities to initiate action against responsible parties and freeze assets; the prejudice to ISG of delay, including statute of limitations problems admitted by Pappalardo; and the fact that Pappalardo and the law firms with which he was associated failed to take the very actions they told COB and Pomeroy, on August 23, 1999, were "absolutely essential" to recovering the depleted funds." (Amended Complaint, ¶51.)

A cause of action for negligence accrues "when there occurs a 'necessary coalescence of discovery and appreciable harm.'" Murphy v. Smith, 411 Mass. 133, 136 (1991) (citation omitted). It is not enough simply to know that an attorney has failed to take some action; the plaintiff must also know he has suffered some harm as a result. Even though a plaintiff need not appreciate the full extent of his injury for the statute to being to run, "the suffering of damages is an element of the tort of legal malpractice." Pelletier v. Chouinard, 27 Mass. App. 92, 95 (1989). An action for attorney malpractice "does not accrue, and therefore, the statute of limitations does not begin to run, until the plaintiff knew or reasonably should have known that he may have suffered injury because of the attorney's conduct." Lombardi v. Virostek et al, 4 Mass. L. Rep. 686, 1996 Mass. Super LEXIS * 7 (February 6, 1996), citing Riley v. Presnell, 409 Mass. 239, 240 (1991). The question of when a plaintiff knew or should have known of his cause of action is one of fact for the trier of fact to decide. Lombardi v. Virostek et al, 4 Mass. L. Rep. 686,

1996 Mass. Super LEXIS * 8 (although two sisters knew the attorney represented multiple parties, it was a question of fact as to whether they knew or reasonably should have known the multiple representation caused them harm). "The point at which appreciable harm occurs will vary with the facts of the case." Kennedy v. Goffstein, 62 Mass. App. Ct. 230 (2004) (cause of action against accountant was timely when filed within three years of plaintiff's retention of a new accountant and notice of deficiency by the IRS); Eck v. Kellem, 51 Mass. App. Ct. 850, 855 (2001)(cause of action in legal malpractice case did not begin to run until judgment entered against the plaintiff in underlying case); Levin v. Berley, 728 F. 2d 551, 554 (1st Cir. 1984) (cause of action for malpractice accrued when plaintiff retained another attorney). ISG, having been kept in the dark regarding AJP's methods of recovering its investment and having been promised that it was forthcoming, was not on notice, as of March 12, 2001, of any malpractice or of harm, simply as a result of AJP's transfer to another firm.[4]

In this instance, even if ISG could have divined as of March 12, 2001 that ESCM had not filed or did not intend to file timely litigation notwithstanding AJP's representation two weeks prior that COB was "reviewing its legal options through outside counsel by way of a civil suit against both individuals and institutions" ISG did not understand that it suffered appreciable harm at that time, especially given AJP's recent and continued assurances of positive developments and of recovery (Amended Complaint, ¶¶39, 43, 444). Although ISG is not taking this position, an argument could be made that it did not appreciate the harm wrought by ESCM's conflicts of interest and delay that

---

[4] In this regard, it would have been AJP's obligation, as a fiduciary, to disclose to ISG that it ought to retain a second opinion upon his transfer of affiliation to see whether an action against ESCM would lie. See Demoulas v. Demoulas, 424 Mass. 501, 507-8 (1997) (acknowledging that fraudulent concealment, tolling the statute of limitations, can occur where there is a duty to act).

7

allowed COB-related entities to dissipate assets until after April, 2004, when it learned that the judgment obtained in the COB-related litigation was uncollectible.

The necessary coalescence of discovery and harm on ISG's claim for negligence occurred, at the earliest, in October 2001 when ISG lost faith in AJP, retained independent counsel and started paying counsel fees. See, e.g., Levin v. Berley, 728 F. 2d 551, 554 (1st Cir. 1984). It is a fiction for ESCM to argue that ISG knew it was harmed by ESCM as early as March, 2001, where AJP continued the representation in the same matter until October 2001. As ISG previously argued, "[i]t is not realistic to say that the client's right of action accrued before he terminated the relationship with the attorney." Murphy v. Smith, 411 Mass. 133, 137 (1991). "[A] person cannot realistically be expected to second-guess the attorney's performance so long as the attorney-client relationship continues." Hodas v. Sherburne, Powers & Needham, 938 F. Supp. 58, 59 (D. Mass. 1996).

**Count Two**. This same reasoning applies to Count Two, for misrepresentation. It is at least a question of fact, that cannot be decided upon a motion to dismiss, as to when ISG learned (as AJP already knew but did not share with ISG) that Pearlberg, from whom AJP promised restitution "was wishful, gullible or just remote from the reality of the world where he may once have operated successfully" and that any restitution from him

---

[4] ESCM does not state when, it believes, ISG's claim for misrepresentation accrued. It cites to this Court's ruling in ISG v. Heffernan but does not explain how that ruling applies to this case. While ISG knew in 1999 that its funds were gone, it relied on ESCM to recover them and any action against ESCM for misrepresentation accrued only after ISG knew the representations made by AJP were false.

8

unlikely." (Amended Complaint, ¶43.) It is also a question of fact as to when ISG knew or should have known that the defendants, including ESCM, were not capable of representing so many conflicting interests (see Lombardi v. Virostek et al, 1996 Mass. Super LEXIS * 7 supra)), that Pearlberg was incapable of providing restitution and that defendants had not prepared a civil fraud case as promised. [8]

Surely AJP's transfer to a new law firm did not put ISG on notice that it had to consult independent counsel to conduct a wholesale review his actions while at ESCM. "The attorney, like the doctor, is an expert, and much of his work is done out of the client's view. The client is not an expert; he cannot be expected to recognize professional negligence if he sees it, and he should not be expected to watch over the professional or to retain a second professional to do so. The relation of attorney and client is highly fiduciary in nature." Hendrickson v. Sears, 365 Mass. 83, 90 (1974) (applying the discovery rule and holding that under M.G.L. c. 260, §§2 and 2A, the client's cause of action against his attorney did not accrue until the date that the client discovered or should reasonably have discovered the attorney's misrepresentation.") It is at least a question of fact as to whether ISG discovered or reasonably could have discovered AJP's misrepresentations, made while at ESCM, prior to June 30, 2001. The Amended Complaint includes allegations that such a discovery did not occur until after ISG obtained independent counsel.

**Count Five and Six**: As to Count Five and Count Six for, respectively, conversion and aiding and abetting fraud arising out of ESCM disposition of $821,500 of ISG's funds, ESCM argues that the statute of limitations began to run in July 2000, when ISG learned that some of its funds had been transferred to ESCM by COB and later

9

dissipated. But here ESCM ignores the allegation of the Amended Complaint that, "At the time of discovery [of the transfer to ESCM] Pappalardo was purporting to represent ISG. When ISG raised the issue with Pappalardo, Pappalardo advised ISG that Eckert Seamans had done nothing wrong and was adamant his view that the firm was not liable. Pappalardo, a fiduciary, never advised ISG to seek separate counsel with regard to any potential liability of his firm in connection with the disposition of ISG's funds, either at the time ISG and Pappalardo first discussed the matter or after Pappalardo transitioned to Greenberg Traurig." (Amended Complaint, ¶71.) Thus after ISG learned that the funds had been transferred by ESCM, it immediately thereafter was advised, by AJP, the person with whom it was in a fiduciary relationship, that ESCM was not liable. The allegations of the Amended Complaint establish that the earliest ISG could have obtained contrary advice was when it consulted independent counsel in October 2001. It is at least a factual issue, which cannot be decided upon a motion to dismiss, as to when ISG should have been aware of facts that put AJP's advice regarding ESCM's liability in doubt. Certainly, ISG would argue that it cannot have been expected to retain a second opinion regarding AJP's advice in March 2001 upon his transfer to GT.

ESCM argued in the ESCM Reply Brief, which it incorporates by reference in the instant motion to dismiss the Amended Complaint, that the continuous representation doctrine is unavailing to ISG and, therefore, ISG cannot use AJP's actions while at GT to toll the statute of limitations on any of its claims. It relies on Crouse v. Brobeck, Phleger & Harrison, 67 Cal. App. 4th 1509, 80 Cal. Rptr. 2d 94 (Cal App. 4th Dist. 1998) for the proposition that the statute of limitations on ISG's claims against ESCM for the tort of malpractice began to run after AJP left ESCM   ESCM seems to conflate, erroneously,

10

the concepts of the dividing line of liability between GT and ESCM and the commencement of the statute of limitation.

A closer reading of Crouse actually supports ISG's argument that the statute of limitations on claims against ESCM did not begin to run until it retained independent counsel. In Crouse, the California Appeals Court determined that the plaintiff knew by October 1990, when she retained independent attorneys, that the loss by Brobeck, Phleger & Harrison (BPH) of her promissory note was negligent and that her claim accrued by that date (not April 1990 when the lead attorney left BH). Id., 67 Cal App. 4th at 1522. Under a tolling agreement, Crouse's claims against BPH, Attorney Boatwright and Page, Polin, Busch & Boatwright ("Page") were deemed filed as of December 1993. BPH moved for summary judgment, arguing that the statute of limitations began to run in October 1990 and her claim was barred by California Code Civ. Proc., §340.6, which requires malpractice actions to be filed within one year of the date of discovery, i.e. by October 1991.

Unlike California, Massachusetts does not have a one-year statute of repose within which to bring the claim after its discovery by the plaintiff. The three-year statute of limitations on ISG's tort and malpractice claims against ESCM began to run after October, 2001, when ISG could have discovered the wrong. Whether or not the continuous representation doctrine applies, ISG then had three years from the date it retained independent counsel to initiate all of its claims against ESCM.

ISG also notes that in Crouse, the court contrasted the facts with those set forth in another case decided by the same court, Beane v. Paulsen, 21 Cal. App. 4th 89, 26 Cal Rptr 486 (1993). In Beane, the California Court of Appeals did apply the continuous

11

representation doctrine after the lead lawyer switched firms. The court applied the doctrine in part because, as AJP did in this case, the lawyer, a fiduciary, made misleading statements regarding the success of plaintiff's claim, and the Court found that the attorney's assurances lulled the plaintiff into inaction. Id., 21 Cal. App. 4th at 99. See also discussion in Crouse, 67 Cal App. 4th at 1538. ISG similarly was lulled against taking any action against ESCM as a result of AJP's advice, after ISG's discovery of the transferred funds, that ESCM did nothing wrong, and, further, by AJP's promises, continuing until October 2001, that ISG would recoup its funds by other means. ISG should be entitled at least three years from the date it retained independent counsel to bring its claims. ISG also notes that a New York court applied the "continuous representation doctrine" to toll the statute of limitations of claims against the first firm until after the cessation of the attorney's representation of the client at the second. See Khadem v. Fischer & Kagan, 215 A. D. 2d 441, 442, 626 N.Y S 2d 500 (1995).

Whether or not the continuous representation doctrine applies in this case, ISG still had, under the discovery rule, three years from October 2001 (or later) within which to initiate its claims against ESCM.

## CONCLUSION

For all of the foregoing reasons, the Motion of ESCM to Dismiss the Amended Complaint should be denied. ISG also incorporates herein its arguments set forth in the opposition to motion of GT and AJP to dismiss the amended complaint, as well as its previous arguments set forth in its oppositions to the motions of ESCM and of AJP and GT to dismiss the original complaint.

INVESTMENT STRATEGIES
GROUP, LTD

By its attorneys,

_____
Jessica Block
BBO#046110
Block & Roos, LLP
60 State Street, Suite 3800
Boston, Massachusetts 02109
(617) 223-1900

February 4, 2005

    I, Jessica Block, Esquire, counsel for the plaintiff, do hereby certify that the within pleading was served by causing copies to be mailed, first class, postage prepaid, to counsel for the other parties of record, this 4th day of February, 2005.

_____
Jessica Block