UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| INTERNATIONAL STRATEGIES GROUP, LTD., | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | |
| GREENBERG TRAURIG, LLP., A. JOHN PAPPALARDO, AND ECKERT, SEAMANS, CHERIN AND MELLOTT, LLC, | ) ) ) ) ) | CIVIL ACTION No.: 04-12000 RWZ |
| Defendants | ) ) | |

## AMENDED ANSWER TO AMENDED COMPLAINT OF DEFENDANTS GREENBERG TRAURIG, LLP AND A. JOHN PAPPALARDO

The Defendants Greenberg Traurig, LLP ("GT") and A. John Pappalardo ("AJP") for their Amended Answer to the Amended Complaint ("Complaint") filed against them by International Strategies Group, Ltd. ("ISG") hereby aver as follows:

### Nature of the Action

1.  GT and AJP admit that this is an action as described in Paragraph 1 of the Complaint. ISG's Complaint, though, is baseless—all counts fail because, among other things, neither AJP nor GT ever represented ISG as attorneys or owed a fiduciary duty to ISG.

### Jurisdiction and Venue

2.  Paragraph 2 of the Complaint contains legal conclusions to which no answer is required.

3.  Paragraph 3 of the Complaint contains legal conclusions to which no answer is required.

## The Parties

4. GT and AJP lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 4 of the Complaint.

5. GT and AJP deny that AJP was ever a shareholder in Eckert, Seamans, Cherin and Mellott, LLC ("ESCM"). AJP was a member of ESCM, and withdrew from ESCM on March 9, 2001. GT and AJP otherwise admit the allegations of Paragraph 5 of the Complaint.

6. GT and AJP admit the allegations of Paragraph 6 of the Complaint.

7. GT and AJP lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 7 of the Complaint.

## General Allegations Applicable to All Counts

*Unlawful Transfers of ISG Funds Made by Clients of Eckert Seamans and Greenberg Traurig*

8. GT and AJP lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 8 of the Complaint.

9. GT and AJP lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 9 of the Complaint.

10. GT and AJP lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 10 of the Complaint.

11. GT and AJP lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 11 of the Complaint.

12. GT and AJP lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 12 of the Complaint.

13.    GT and AJP lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 13 of the Complaint.

14.    GT and AJP lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 14 of the Complaint.

15.    GT and AJP lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 15 of the Complaint.

16.    GT and AJP lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 16 of the Complaint.

17.    GT and AJP lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 17 of the Complaint.

### *Pappalardo's Representation of ISG*

18.    GT and AJP lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 18 as they concern ESCM specifically. GT and AJP otherwise deny the allegations in Paragraph 18 of the Complaint. Neither Stephen Burr (who, after being a member of ESCM, joined GT on August 1, 1999,) AJP, nor GT were ever "corporate counsel" to Corporation of the BankHouse ("COB"), nor did either of them ever represent Pomeroy. Burr and others worked on certain specific corporate transactions for COB while at ESCM and GT, but Burr did not work on the matter concerning the depleted $19 million until August 1999, when he recommended that COB contact AJP, who was at ESCM. AJP began representing COB in its effort to identify and perhaps recover depleted funds in August 1999.

19.    GT and AJP admit that on August 12, 1999, Burr sent a letter on GT stationary to Swan Trust and to May Davis, the text of which speaks for itself. GT and AJP otherwise deny the allegations in Paragraph 19 of the Complaint. GT did not take any actions on behalf of ISG; its

client in the matter was COB.  Neither GT nor AJP sent a copy of the August 12, 1999 letter to ISG, nor do either know who, if anyone, may have sent they letter, or what their motivations would have been.

20.   GT and AJP admit that AJP, James Pomeroy, Peter Ness (a consultant to COB) and Phillip Clark met in August 1999, and that AJP stated at this meeting that, to his knowledge, COB had been the victim of a fraudulent conveyance by Henry Pearlberg.  GT and AJP otherwise deny the allegations contains in Paragraph 20 of the Complaint.

21.   GT and AJP admit that AJP wrote a letter to Clark on August 20, 1999, the text of which speaks for itself.

22.   The allegations of Paragraph 22 of the Complaint contain vague, ambiguous or legal terms such as "emphatically" and "advised" that render the allegations incapable of accurate response.  To the extent a response may be required, GT and AJP admit that Burr wrote a letter to Pomeroy on August 23, 1999, a copy of which was sent to AJP, the text of which speaks for itself.

23.   GT and AJP deny the allegations in Paragraph 23 of the Complaint.

24.   Neither Burr, GT nor AJP have ever represented ISG.  The letter of August 23 was sent by Burr to his client, COB.  Neither GT nor AJP ever had a duty to share with ISG any advice related to the representation of their client COB.  GT and AJP lack knowledge or information sufficient to form a belief as to the truth of the allegations in the remaining allegations in Paragraph 24 of the Complaint, which refer to ISG's knowledge and receipt of the communication, which is irrelevant in any event.

25.   GT and AJP deny that AJP knew, approved and directed the representations by COB and Pomeroy alleged in Paragraph 25 of the Complaint.  AJP did tell Clark directly that, based upon

the information he knew, including statements by an assistant United States Attorney, he believed COB was a victim of fraud. GT and AJP lack knowledge or information sufficient to form a belief as to the truth of the allegations in the remaining allegations in Paragraph 25 of the Complaint.

26. Paragraph 26 of the Complaint contains legal conclusions to which no answer is required, as well as vague, ambiguous or legal terms such as "assuring" and "all necessary actions" that render the allegations incapable of accurate response. To the extent a response may be required, GT and AJP admit that AJP wrote a letter to Chris Barber of ISG on October 22, 1999, the text of which speaks for itself, but otherwise deny the allegations in Paragraph 26 of the Complaint. In fact, contrary to ISG's purported belief that AJP would be representing its interests, AJP's letter to Barber explicitly stated that AJP was writing on behalf of his client COB. Further, AJP never stated that he had retained recovery specialists.

27. Paragraph 27 of the Complaint contains legal conclusions to which no answer is required, allegations concerning ISG's state of mind about which GT and AJP lack knowledge or information sufficient to form a belief as to the truth, and vague, ambiguous or legal terms such as "assuring" and "minimal" that render the allegations incapable of accurate response. To the extent a response may be required, GT and AJP admit that AJP, on behalf of COB, had some direct communications with ISG subsequent to October 22, 1999, but otherwise deny the allegations in Paragraph 27 of the Complaint. Far from "assuring ISG that he was representing its interests," AJP repeatedly made it clear that he was representing COB in the matter, not ISG.

28. GT and AJP admit that, at COB's direction, AJP wrote a letter to Clark on May 9, 2000, the text of which speaks for itself.

29.     GT and AJP admit that, at COB's request, on June 1, 2000, AJP sent ISG, for ISG's comments, a draft "action plan" that had been prepared by Vladimir, the text of which speaks for itself.  GT and AJP deny that AJP ever ratified that draft or any subsequent "action plan," made any recommendation to ISG with regard to the action plan, or agreed to represent "the team."  GT and AJP otherwise lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 29 of the Complaint, which concern ISG's motivations.

30.     GT and AJP admit that AJP wrote a letter to ISG on June 22, 2000, the text of which speaks for itself.  GT and AJP deny that AJP knew of or agreed to the agreement between Pomeroy and Moshe Dayani alleged in Paragraph 30 of the Complaint.  GT and AJP lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 30 of the Complaint.

31.     GT and AJP admit that on July 10, 2000, AJP sought Powers of Attorney from ISG and others, the words of which speak for themselves, and that a Power of Attorney was signed by ISG's Clark and dated July 11, 2000.  GT and AJP lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 31 of the Complaint that concern ISG's understandings and how ESCM reacted to the Power of Attorney or Side Letter.  GT and AJP deny the remaining allegations in Paragraph 31 of the Complaint.  The Power of Attorney with ISG was limited by its terms, was not in furtherance of any "action plan," and AJP never agreed to extend the power any further.

32.     GT and AJP admit that St. Frederikslund ("SF") signed a Power of Attorney concerning AJP, the text of which speaks for itself.

33.     GT and AJP lack knowledge or information sufficient to form a belief as to the truth of the allegation that no conflict of interest waivers ever were secured by ESCM, and to the

allegations concerning alleged actions by COB and Pomeroy. GT and AJP admit that they never secured conflict of interest waivers from ISG, because they never undertook to represent ISG; accordingly, AJP never undertook common or joint representation of ISG, and GT and AJP admit that AJP never discussed the details of any such representation with ISG. GT and AJP deny the remaining allegations in Paragraph 33 of the Complaint.

34.    GT and AJP admit that Burr helped incorporate S B Global Inc. ("SBG") in August 2000, that Burr was clerk of SBG temporarily at SBG's formation, that Pomeroy was director of SBG, and that SBG was a client of GT. GT and AJP deny that Pomeroy and SF were ever clients of GT, and deny that SF was a partner in and that Jens Kristiansen was a director of SBG. The remaining allegations in Paragraph 34 of the Complaint contain legal conclusions to which no answer is required, as well as vague, ambiguous or legal terms such as "in effect" and "increasingly adverse" that render the allegations incapable of accurate response. To the extent an answer is required, GT and AJP lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 34 of the Complaint.

35.    GT and AJP lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 35 of the Complaint that concern the solvency of COB. Paragraph 35 of the Complaint contains legal conclusions to which no answer is required, as well as vague, ambiguous or legal terms such as "effectively," "shifted their loyalties" and "viable successor" that render the allegations incapable of accurate response. To the extent an answer is required, GT and AJP deny the remaining allegations in Paragraph 35 of the Complaint.

36.    GT and AJP admit that COB made a payment of $250,000 for legal fees to GT on December 15, 2000. GT and AJP deny that SF ever paid any legal bills of GT or AJP directly.

GT and AJP lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 36 of the Complaint.

37.     GT and AJP deny the allegations in Paragraph 37 of the Complaint.

38.     GT and AJP admit that in December 2000 AJP met with FMB's chairman and that he also had contact with lawyers for FMB. GT and AJP lack knowledge or information sufficient to form a belief as to the truth of the allegations that Hakki Taman Namli has been indicted or that FMB or Abn Amro violated banking regulations in connection with the transfer of ISG's funds and could have been sued in the United States. GT and AJP deny the remaining allegations in Paragraph 38 of the Complaint.

39.     GT and AJP admit that AJP wrote a letter to ISG on February 22, 2001, the text of which speaks for itself.

40.     GT and AJP deny the allegations in Paragraph 40 of the Complaint. AJP joined GT effective March 12, 2001.

41.     GT and AJP admit that by late June 2001 they were considering COB's potential litigation against FMB, Abn Amro, May Davis, Pearlberg, Patrick, and Lipalsac, and that AJP did not share any opinions or concerns about such litigation with ISG. Neither GT nor AJP represented ISG; they represented COB. GT and AJP otherwise deny the allegations in Paragraph 41 of the Complaint.

42.     Paragraph 42 contains legal conclusions, to which no answer is required. GT and AJP lack knowledge or information sufficient to form a belief as to ISG's motivations and reactions or COB's communications to ISG. GT and AJP admit that AJP did not initiate any litigation on behalf of their client COB. To the extent Paragraph 42 recites allegations made in Paragraph 26, GT and AJP admit that AJP wrote a letter to Chris Barber of ISG on October 22, 1999, the text

of which speaks for itself. GT and AJP otherwise deny the allegations in Paragraph 42 of the Complaint.

43.    GT and AJP lack knowledge or information sufficient to form a belief as to ISG's beliefs. GT and AJP deny the remaining allegations in Paragraph 43 of the Complaint.

44.    GT and AJP lack knowledge or information sufficient to form a belief as to ISG's beliefs. GT and AJP admit that AJP had some direct contact with ISG, pursuant to COB's instructions, including mobile phone communications, and that AJP wrote letters to ISG on May 29, 2001, August 27, 2001, and October 2, 2001, the text of which speaks for itself.

### *Efforts of Independent Counsel to Obtain Documents from Pappalardo*

45.    GT and AJP lack knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 45 of the Complaint. They repeat that neither AJP nor GT ever represented ISG.

46.    Paragraph 46 of the Complaint contains vague, ambiguous or legal terms such as "critical" and "valuable" that render the allegations incapable of accurate response. To the extent an answer is required, GT and AJP admit that ISG's U.S. counsel and ISG representatives sought to obtain documents from AJP, which AJP considered privileged and confidential materials, including attorney work product, created in connection with his representation of COB, and which he thus refused to provide to ISG. AJP and GT deny that AJP ever told ISG he had collected, prepared or reviewed draft pleadings. AJP and GT also deny that AJP ever represented a "team" in connection with the recovery of COB's assets; he represented COB alone.

47.     GT and AJP admit that AJP did not give ISG any of the documents it had requested by March 8, 2002 and that AJP sent Clark an email on March 7, 2002, the text of which speaks for itself.  GT and AJP lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 47 of the Complaint concerning the needs and beliefs of ISG and the representations made by Pomeroy.  GT and AJP deny the remaining allegations contained in Paragraph 47 of the Complaint.

48.     GT and AJP deny the allegations in Paragraph 48 of the Complaint; neither ever represented Pomeroy, and AJP told ISG that neither he nor GT currently represented COB prior to March 13, 2002.

49.     GT and AJP lack knowledge or information sufficient to form a belief as to the allegations in Paragraph 49 of the Complaint.

50.     GT and AJP admit the allegations in Paragraph 50 of the Complaint, but add that Pappalardo also objected to the subpoena on the grounds that the requested materials included attorney work product and that enforcement of ISG's motion to compel would be oppressive, unduly burdensome, and annoying, and that the court's comments in its August 11, 2003 ruling do not represent a finding that AJP or GT had an attorney-client relationship with ISG.

51.     GT and AJP lack knowledge or information sufficient to form a belief as to what ISG was able to appreciate upon reviewing documents produced by AJP. GT and AJP deny that they ever represented ISG.

52. GT and AJP lack knowledge or information sufficient to form a belief as to the worth of the judgment in the COB Litigation, but otherwise admit the allegations in Paragraph 52 of the Complaint.

53. GT and AJP lack knowledge or information sufficient to form a belief as to the allegations in Paragraph 53 of the Complaint.

54. GT and AJP lack knowledge or information sufficient to form a belief as to the allegations in Paragraph 54 of the Complaint.

## Count One

### Negligence – Against All Defendants

55. GT and AJP repeat and incorporate herein their responses to Paragraphs 1 through 54.

56. Paragraph 56 of the Complaint contains legal conclusions to which no answer is required. To the extent an answer may be required, GT and AJP deny the allegations in Paragraph 56 of the Complaint.

57. Paragraph 57 of the Complaint contains legal conclusions to which no answer is required. To the extent an answer may be required, GT and AJP deny the allegations in Paragraph 57 of the Complaint.

58. Paragraph 58 of the Complaint contains legal conclusions to which no answer is required. To the extent an answer may be required, GT and AJP deny the allegations in Paragraph 58 of the Complaint.

## Count Two

### Misrepresentation – Against All Defendants

58. GT and AJP repeat and incorporate herein their responses to Paragraphs 1 through 58.[1]

59. Paragraph 59 of the Complaint contains legal conclusions to which no answer is required. To the extent an answer may be required, GT and AJP deny the allegations in Paragraph 59 of the Complaint.

60. Paragraph 60 of the Complaint contains legal conclusions to which no answer is required. To the extent an answer may be required, GT and AJP deny the allegations in Paragraph 60 of the Complaint.

## Count Three

### Breach of Fiduciary Duty – Against Pappalardo

61. GT and AJP repeat and incorporate herein their responses to Paragraphs 1 through 60.

62. Paragraph 62 of the Complaint contains legal conclusions to which no answer is required. To the extent an answer may be required, GT and AJP deny the allegations in Paragraph 62 of the Complaint.

63. Paragraph 63 of the Complaint contains legal conclusions to which no answer is required. To the extent an answer may be required, GT and AJP deny the allegations in Paragraph 63 of the Complaint.

---

[1] Due to mislabeling in the Complaint, there are two separate paragraphs 58.

64. Paragraph 64 of the Complaint contains legal conclusions to which no answer is required. To the extent an answer may be required, GT and AJP deny the allegations in Paragraph 64 of the Complaint.

## Count Four

### Breach of Express and Implied Contract -- Against Pappalardo

65. GT and AJP repeat and incorporate herein their responses to Paragraphs 1 through 64.

66. Paragraph 66 of the Complaint contains legal conclusions to which no answer is required. To the extent an answer may be required, GT and AJP deny the allegations in Paragraph 66 of the Complaint.

67. Paragraph 67 of the Complaint contains legal conclusions to which no answer is required. To the extent an answer may be required, GT and AJP deny the allegations in Paragraph 67 of the Complaint.

68. Paragraph 68 of the Complaint contains legal conclusions to which no answer is required. To the extent an answer may be required, GT and AJP deny the allegations in Paragraph 68 of the Complaint.

## Count Five

### Conversion -- Against Eckert Seamans

69. GT and AJP repeat and incorporate herein their responses to Paragraphs 1 through 68.

70. The allegations in Paragraph 70 of the Complaint are not applicable to GT and AJP.

71. The allegations in Paragraph 63 of the Complaint are not applicable to GT and AJP.

72. The allegations in Paragraph 64 of the Complaint are not applicable to GT and AJP.

73. The allegations in Paragraph 73 of the Complaint are not applicable to GT and AJP.

## Count Six

## Aiding and Abetting Fraud and Breach of Fiduciary Duty --

## Against Eckert Seamans

74. GT and AJP repeat and incorporate herein their responses to Paragraphs 1 through 73.

75. The allegations in Paragraph 75 of the Complaint are not applicable to GT and AJP.

76. The allegations in Paragraph 63 of the Complaint are not applicable to GT and AJP.

## Count Seven

### Violation of M.G.L. 93A -- Against All Defendants

77. GT and AJP repeat and incorporate herein their responses to Paragraphs 1 through 76.

78. Paragraph 78 of the Complaint contains legal conclusions to which no answer is required. To the extent an answer may be required, GT and AJP deny the allegations in Paragraph 78 of the Complaint.

79. Paragraph 79 of the Complaint contains legal conclusions to which no answer is required. To the extent an answer may be required, GT and AJP deny the allegations in Paragraph 79 of the Complaint.

80. Paragraph 80 of the Complaint contains legal conclusions to which no answer is required. To the extent an answer may be required, GT and AJP deny the allegations in Paragraph 80 of the Complaint.

81. Paragraph 81 of the Complaint contains legal conclusions to which no answer is required. To the extent an answer may be required, GT and AJP deny the allegations in Paragraph 81 of the Complaint.

### FIRST AFFIRMATIVE DEFENSE

The Complaint, and each count thereof, fails to state a claim upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

Neither GT nor AJP ever owed a fiduciary duty to ISG.

### THIRD AFFIRMATIVE DEFENSE

No attorney-client relationship existed between ISG and either AJP or GT.

### FOURTH AFFIRMATIVE DEFENSE

ISG did not suffer any damages as a result of acts or omissions of GT or AJP. If ISG did suffer any harm or damages, as alleged in the Complaint, such harm or damages were caused in whole or in part by ISG's own acts or omissions.

### FIFTH AFFIRMATIVE DEFENSE

ISG is barred from recovery, in whole or in part, by the principles of comparative and contributory negligence.

### SIXTH AFFIRMATIVE DEFENSE

ISG is barred from recovery by the statute of limitations.

### SEVENTH AFFIRMATIVE DEFENSE

ISG is barred from recovery by the equitable doctrines of unclean hands, waiver, estoppel and laches.

### EIGHTH AFFIRMATIVE DEFENSE

ISG is barred from recovery by virtue of statutory and agreement limits on vicarious, partnership and corporate liability.

### NINTH AFFIRMATIVE DEFENSE

ISG is barred from recovery by its failure to mitigate any or all of its alleged damages.

### TENTH AFFIRMATIVE DEFENSE

ISG is barred from recovery by the doctrine of election of remedies.

### ELEVENTH AFFIRMATIVE DEFENSE

ISG is barred from recovery by the doctrine of accord and satisfaction.

-17-

## TWELTH AFFIRMATIVE DEFENSE

ISG fails to meet the requirements for a claim under M.G.L. 93A.

                                                GREENBERG TRAURIG, LLP AND
                                                A. JOHN PAPPALARDO,

                                                By their attorneys,

                                                */s/ Paul B. Galvani*
                                                Paul B. Galvani (BBO # 183800)
                                                Matthew P. Garvey (BBO # 655419)
                                                Ropes & Gray LLP
                                                One International Place
                                                Boston, MA 02110
                                                Tel.: (617) 951-7000

Dated: May 2, 2005

## CERTIFICATE OF SERVICE

    I, Matthew P. Garvey, a member of the Bar of this Court, hereby certify that on this day, May 2, 2005, the above Amended Answer To Amended Complaint was served on the plaintiff by causing a copy of the same to be hand delivered to its counsel, Jessica Block, Esq., Block & Roos, LLP, 60 State Street, Suite 3800, Boston, MA 02109, and was served on defendant Eckert, Seamans, Cherin and Mellott, LLC by causing a copy of the same to be hand delivered to its counsel, Devorah Levine, Esq., Eckert, Seamans, Cherin and Mellott, LLC, One International Place, 18th Fl., Boston, MA 02110.

                                            */s/ Matthew P. Garvey*
                                            Matthew P. Garvey