UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

INTERNATIONAL STRATEGIES GROUP, LTD.,

    Plaintiff,

v.

GREENBERG TRAURIG, LLP, A. JOHN
PAPPALARDO, AND ECKERT, SEAMANS,
CHERIN AND MELLOTT, LLC,

    Defendants.

Civil Action No. 04-12000 RWZ

## BRIEF IN SUPPORT OF DEFENDANT ECKERT SEAMANS CHERIN & MELLOTT'S MOTION FOR SUMMARY JUDGMENT

There are three independent grounds showing that defendant Eckert Seamans Cherin & Mellott, LLC ("ESCM") is entitled to judgment as a matter of law on the claims asserted by International Strategies Group ("ISG"):

1. The claims for negligence, misrepresentation, and violation of M.G.L. ch. 93A must be dismissed because there was no attorney-client relationship between ISG and defendant John Pappalardo ("Pappalardo"), a former ESCM attorney. To the contrary, ISG knew at all times that Pappalardo represented a party against whom ISG had potential claims.

2. No alleged conduct of Pappalardo while at ESCM was the proximate cause of any loss to ISG. It is undisputed that Pappalardo withdrew from his association with ESCM in early March, 2001. It is undisputed that ISG had other legal counsel thereafter. It is undisputed that, at any time in nearly a year following Pappalardo's withdrawal from ESCM, ISG could have commenced a timely legal action through its own legal counsel against the parties who were involved in the theft of ISG's investment funds. Under settled law, no conduct of Pappalardo (before or after he left ESCM) can be the legal cause of the alleged damages sought by ISG here.

1

3. Whether or not Pappalardo provided legal representation to ISG at any time (which he did not), ISG's claims against ESCM for negligence, misrepresentation, conversion, and "aiding and abetting" are barred by the statute of limitations.

## Summary of the claims against ESCM.

ISG's Amended Complaint ("Complaint") outlines the following alleged events with respect to ESCM. During certain times relevant to this dispute, Pappalardo as an ESCM attorney provided legal services to Corporation of the Bankhouse ("COB"), an investment management company located in Boston. *Complaint ¶ 8.* In April, 1998, ISG provided funds to COB in the amount of $4,000,000 for investment purposes (the "Investment"). *Complaint ¶ 9.* Other investors, who are not parties to this action, provided additional funds to COB for investment management such that by early November, 1998, COB had a fund amount of $19,000,000. *Complaint ¶ 12.* In November, 1998, COB placed these funds with an entity called the Swan Trust, of which a Henry Pearlberg was a trustee. *Id.* ISG alleges here that it was not aware of the transfer of the Investment to the Swan Trust at the time it was made.[1] *Id.*

In February, 1999, Pearlberg caused the funds placed in the Swan Trust to be transferred to First Merchants Bank in the Turkish Republic of Cyprus ("FMB"), for the benefit of a broker, Joan Patrick, working with another investment company, May Davis Group. *Complaint ¶ 14.* The funds placed in FMB were then illegally dissipated, apparently by FMB and/or Patrick. Later in 1999, and at least by July 20, 1999, COB learned that the funds placed by COB with the Swan Trust had been improperly transferred by Pearlberg and then depleted by FMB or others. A criminal investigation was commenced by the FBI and Department of Justice. COB contacted attorney Steven Burr at Greenberg Traurig, who recommended that COB retain Pappalardo.

---

[1] As will be seen, ISG alters its allegations whenever it appears to suit its particular purpose. In a complaint filed by ISG against Peter Ness, a former officer of COB, ISG admitted that it <u>did know</u> of and <u>agreed to</u> the transfer of the Investment to the Swan Trust. *Affidavit of Matthew Garvey Exhibit 1 ¶¶ 16, 27.*

2

Pappalardo began representing COB to determine the persons responsible for the depletion of the funds, to investigate potential measures to recover the funds, and with respect to the government investigations into the apparent theft of the funds. *Complaint ¶¶ 18-19.*

In July, 1999, COB informed ISG of the depletion of the investment funds. *Affidavit of Matthew Garvey Exhibit 3.* The Complaint alleges meetings and other communications in August, 1999 between Pappalardo and ISG, and between COB and ISG, wherein ISG was informed of the loss of its Investment, that COB had been the victim of fraud by Pearlberg and others, that COB was working with government authorities investigating these events, that COB was taking steps to try to recover the funds, and that COB requested "ISG's forbearance and cooperation in a joint recovery effort." *Complaint ¶ 20-21.* The Complaint outlines a few of the activities taken by Pappalardo, while was at ESCM, and by Burr at Greenberg Traurig, in representing COB to recover the funds including communications with ISG concerning these efforts. *Complaint ¶ 22-23, 25-31, 38-39.* The Complaint also provides a few details of ISG's active involvement in that process. *Id.*

On March 8, 2001, Pappalardo left ESCM and joined Greenberg Traurig, and ISG was so notified. *Complaint ¶ 40; Declaration of A. John Pappardo ¶ 2.* The Complaint makes further allegations about Pappalardo's activities and communications with ISG following his departure from ESCM. *Complaint ¶¶ 42, 44-45.* None of these allegations relate to activities of an ESCM attorney. By October, 2001, ISG had "lost confidence in Pappalardo and retained independent counsel in the United States to recover its Investment." *Complaint ¶ 43.* Ultimately, ISG decided to cease its cooperative efforts with COB to recover the Investment and in March, 2002 brought suit against COB, SB Global and some of their officers in this Court, pursuant to which ISG received a default judgment. *Complaint ¶ 47.* ISG filed the present action in September,

2004 against Greenberg Traurig, Pappalardo, and ESCM for the alleged reason that the "judgment [against COB *et al*] appears essentially worthless as, upon information and belief, all of the defendants in that case . . . have dissipated all their assets or otherwise put them out of reach of ISG."[2] *Complaint ¶ 48.*

ISG's purported claims against ESCM are for negligence (Count One), misrepresentation (Count Two), conversion (Count Five), "aiding and abetting" (Count Six) and violation of M.G.L. ch. 93A (Count Seven). The thrust of ISG's legal malpractice (negligence, misrepresentation and 93A) claim against ESCM is that Pappalardo allegedly became ISG's attorney, that Pappalardo failed to file suit against the persons and entities involved in the depletion of the Investment, that Pappalardo did not keep ISG adequately or completely informed and advised, and that Pappalardo supposedly undertook a "joint representation" of ISG and COB "riddled with conflicts" with respect to his efforts to recover the Investment. Importantly, it is clear from the Complaint and undisputed facts that ESCM's alleged representation of ISG and, any vicarious responsibility for the conduct of Pappalardo, ended in March, 2001, as ISG knew.

ISG's claim for conversion against ESCM asserts that on May 29, 1998, the sum of $821,500 was transferred by COB to a Mellon Bank account held by ESCM. ISG claims that this amount came from its original $4,000,000 Investment placed with COB in April, 1998. *Complaint ¶¶ 10-11.*

Defendants have filed a joint Statement of Material Facts As To Which There Is No Genuine Issue To Be Tried ("Statement of Facts"), which is supported by the Declarations of A.

---

[2] ISG's Complaint does not mention that the action against Greenberg Traurig, Pappalardo, and ESCM is the latest is a seemingly endless string of suits on this matter. After receiving the default judgment against COB, ISG sued Steven Heffernan in this Court. That suit was dismissed on statute of limitations grounds. ISG has also filed at least three other actions, against Peter Ness, a former COB officer, and against Abn Amro, and FMB.

4

John Pappalardo ("AJP Decl."), Affidavit of Matthew Garvey, Esq. ("Garvey Aff."), and numerous documents, most of which were prepared by ISG. ESCM will not recount all pertinent and undisputed facts here and respectfully incorporates the Statement, Declarations and their exhibits, in their entirety. Individual facts relevant to the grounds for summary judgment raised in ESCM's Motion are discussed below where appropriate.

## ARGUMENT

### I. There was no attorney-client relationship between Pappalrdo and ISG.

Pappalardo was never ISG's attorney, either during his association with ESCM that ended as of March 8, 2001, or afterward when he joined Greenberg Traurig. No files were opened with ISG as a client, no retention letter was sent or accepted, and no invoices for legal services were sent or paid. *Statement of Facts ¶ 10; AJP Decl. ¶ 5.* In fact, at all times ISG was aware that Pappalardo represented COB, not ISG, and acknowledged that fact in numerous ISG documents. Moreover, ISG was aware by at least August, 1999 that its Investment had been lost and that ISG had potential claims against COB to recover the Investment. At all times, ISG knew and understood that Pappalardo represented a potential adverse party. *Statement of Facts ¶¶ 11, 13, 27, 29, 30, 38; AJP Decl. ¶¶ 5-7, 13-14, 16.*

The undisputed facts showing that, as a matter of law, there was no attorney-client relationship between Pappalardo and ISG are detailed more fully in the motion for summary judgment of co-defendants Greenberg Traurig and Pappalardo, and are equally applicable to ESCM. ESCM incorporates those facts and legal arguments in their entirety.

### II. Any alleged legal malpractice of Pappalardo while at ESCM was not, as a matter of law, the proximate cause of ISG's alleged damages.

To recover for legal malpractice, a plaintiff must prove that: (1) the attorney failed to exercise reasonable care and skill in handling the matter for which he was retained; (2) that the

5

plaintiff incurred a loss; and (3) that the attorney's negligence was the proximate cause of the loss. *McLellan v. Fuller*, 226 Mass. 374, 378, 115 N.E.2d 481 (1917); *Cholfin v. Gordon*, 1995 Mass. Super. LEXIS 100 (Mass. App. 1995). A plaintiff bears the burden of proving each of these elements. *McLellan*, 226 Mass. at 378. An attorney is not liable for every mistake that may occur in practice. To prevail on a legal malpractice claim, the plaintiff must show that the attorney's negligence was the proximate cause of the loss he sustained. *Colucci v. Rosen, Goldberg, Slavet, Levenson & Wekstein, P.C.*, 25 Mass.App.Ct. 107, 111, 515 N.E.2d 891 (1987). See *McCann v. Davis, Malm & D'Agostine*, 423 Mass. 558, 669 N.E.2d 1077 (1996).

The gravamen of ISG's "legal malpractice" claim against ESCM is that Pappalardo, while at ESCM, should have taken legal action on ISG's behalf against the persons or entities involved with the depletion of the Investment, or should have informed ISG of the need to take such action. However, as a matter of law those alleged failures to act (and all other instances of Pappalardo's alleged malpractice while he was associated with ESCM) are not the legal cause of ISG's loss because it is undisputed that (1) Pappalardo left ESCM long before the statute of limitations expired on ISG's potential legal claims against others to recover the Investment; (2) at the time Pappalardo left ESCM, ISG knew its Investment had been depleted and that no suit had yet been commenced against anyone; and (3) following Pappalardo's departure from ESCM, there was ample time to commence such an action, including a substantial period after ISG had consulted and hired "its own independent counsel".

Courts that have addressed this issue have consistently held that, as a matter of law, an attorney cannot be held liable for failing to file a suit on his client's behalf if he ceased to represent the client and was replaced by other counsel before the statute of limitations ran on the client's action.

6

For example, in *Steketee v. Lintz, Williams & Rothberg*, 38 Cal.3d 46, 694 P.2d 1153, 210 Cal. Rptr. 781 (1985), the California Supreme Court upheld summary judgment for defendant attorneys who had been retained to pursue a medical malpractice action based on a medical treatment plaintiff had undergone in September, 1976. The plaintiff hired defendant attorneys in January 1978. In January, 1979, without having commenced a suit on plaintiff's behalf, defendant attorneys terminated their relationship with plaintiff, who then retained new counsel. New counsel, believing that the statute of limitations had expired in September 1978, filed a malpractice action against the original attorneys. Even though the issue of the running of the limitations period was complex and arguably unsettled in California law (as plaintiff was a minor when injured but an adult when he retained defendants), the Court concluded that the statute had not in fact run on plaintiff's medical malpractice claim and that defendants therefore could not be liable for legal malpractice in failing to file the action.

> "Accordingly, the statute of limitations did not run on plaintiff's cause of action until September of 1979. The attorney client relationship between defendants and plaintiff was terminated several months earlier in January of 1979. . . *An attorney cannot be held liable for failure to file an action prior to the expiration of the statute of limitations if he ceased to represent the client and was replaced by other counsel before the statute ran on the client's action.*"

38 Cal.3d at 57, 694 P.2d at 1159 (emphasis added).

This principle has been consistently followed in numerous decisions in many jurisdictions.[3] It is unassailably logical and sound, because a plaintiff has suffered no damage

---

[3] *Ritam Int'l Ltd. v. Pattishall, McAuliffe, Newbury, Hilliard & Geraldson*, 2000 U.S. Dist. LEXIS 21636 (S.D. Iowa 2000) (where defendant withdrew from representing plaintiff and new counsel was retained, defendant would be awarded summary judgment because alleged negligence in providing erroneous advice on a statute of limitations issue was not, as a matter of law, a substantial factor in harming plaintiff because new counsel could have identified the error and filed the claim); *Viehweg v. Mello*, 5 F.Supp.2d 752 (E.D. Mo. 1998), *aff'd* 198 F.3d 252 (8th Cir. 1999) (summary judgment awarded to defendant attorney where plaintiff had at least six months from attorney's withdrawal to retain new counsel and file suit) (Missouri law); *Faulkner v. Ensz*, 109 F.3d 474 (8th Cir. 1997) (affirming summary judgment for defendant attorney because plaintiff could not establish causation element of legal malpractice claim; transfer of plaintiff's file to new attorney ended causal relationship between defendant's actions and plaintiff's alleged injuries) (Missouri law); *Ruden v. Jenk*, 543 N.W.2d 605 (Iowa 1996) (attorney's negligence

by the "negligence" of his original attorney if his successor counsel would have been able to pursue the claim that the former attorney failed to file. And this principle applies not only to a failure to file an action, but also applies to other alleged errors, such as providing erroneous or incomplete legal advice or other instances of alleged legal malpractice.

Massachusetts follows this principle. In *Poly v. Moylan*, 423 Mass. 141, 667 N.E.2d (1996) plaintiff filed an action against his former attorney for negligence, breach of contract, misrepresentation and deceit, and violation of M.G.L. ch. 93A. The attorney was retained by plaintiff to commence an action for damages against plaintiff's former spouse and her new husband, a member of United State Air Force ("USAF"), who had taken plaintiff's children to

---

in failing to advise client of a potential claim is not a proximate cause of damage if a successor attorney is employed and advises client of potential claim before statute of limitations has expired); *Wall Street Associates v. Brodsky*, 257 A.D.2d 526, 527, 684 N.Y.S.2d 244 (N.Y. App. 1999) ("In order to establish proximate cause and actual damages elements, plaintiff must show that the Statute of Limitations on the underlying claim had run by the time it discharged defendants as its attorneys."); *Fraser v. Bovino*, 317 N.J.Super. 23, 721 A.2d 20 (N.J. App. 1998) (summary judgment on legal malpractice claim affirmed where attorney declined to further handle matter and returned files to client with several weeks left before last applicable statute of limitations expired on claim); *Seltrecht v. Bremer*, 214 Wis.2d 110, 571 N.W.2d 686 (Wis. 1997) (alleged negligent advice of first attorney was not a legal cause of plaintiff's damages where successor attorney recognized but failed to correct the mistake); *C&F Pollution Control v. Fidelity & Casualty Co.*, 222 A.D.2d 828, 830, 653 N.Y.S.2d 704 (N.Y. App. 1995) (denying legal malpractice claim because "plaintiff's second attorney could have timely commenced a lawsuit"); *Kaminsky v. Condell Memorial Hospital*, 816 F.Supp 484 (N.D. Ill. 1993) (Illinois law required dismissal of legal malpractice action where plaintiff's underlying claim could have been asserted by successor counsel); *Stuart v. Superior Court*, 14 Cal.App.4th 124, 18 Cal.Rptr.2d 142 (Cal. App. 1992) (directing entry of summary judgment for defendant attorney who was not attorney of record at the time the former client's case was dismissed); *Boyle v. Odette*, 168 Mich.App. 737, 745, 425 N.W.2d 472 (Mich. App. 1988) ("We agree with defendant [attorney] that he cannot be held liable for failing to file an . . . action prior to expiration of the period of limitations where he ceased to represent plaintiff and was replaced by other counsel before the statutory period ran on her underlying action."); *Knight v. Myers*, 12 Kan.App.2d 469, 748 P.2d 896 (Kan. App. 1988) (attorney who withdrew from representing defendants in an action could not be held liable for failing to file a counterclaim where successor counsel had several months to do so before statute of limitations expired); *Frazier v. Effman*, 501 So.2d 114, 115 (Fla. App. 1987) (affirming dismissal of legal malpractice claim against defendant attorney who was discharged by plaintiff, where new counsel was retained and statute of limitations on plaintiff's claim did not expire "for several months thereafter"); *Land v. Greenwood*, 133 Ill.App.3d 537, 540, 478 N.E.2d 1203 (Ill. App. 1985) ("Defendant's duty to plaintiff ceased upon his discharge. The cause of action was viable at the time of discharge. It therefore follows that plaintiff can prove no set of facts which connect defendant's conduct with any damage sustained by plaintiff." "[S]uccessor counsel had the duty to preserve his client's cause of action. It was viable when he received it; it was not when he got through with it."); *Harvey v. Mackay*, 109 Ill.App.3d 582, 440 N.E.2d 1022 (Ill. App. 1982) (an attorney's failure to file a lawsuit before statute of limitations expired is not malpractice where attorney withdrew from the representation before the statute expired). *See also Brown v. Silvern*, 45 P.3d 749, 752 (Colo. App. 2001) ("[W]e agree with the California Supreme Court that an attorney cannot be held liable for failing to file an action prior to the expiration of the statute of limitations if he ceased to represent the client and was replaced by other counsel before the statute ran on the client's action").

Germany when the husband was reassigned by the USAF. The removal of the children was in violation of a custody order entered in favor of plaintiff and an injunction prohibiting their removal from their home in New Hampshire. The evidence at trial showed that the attorney commenced an action in federal court against the USAF and the former spouse and her husband, and that the federal action was dismissed as a result of negligent acts on the attorney's part. A second suit was filed in a Massachusetts state court, where the USAF was dismissed on statute of limitations grounds. The attorney failed to tell plaintiffs about the dismissals, refused to communicate with plaintiffs, conducted no discovery, and committed other acts of alleged negligence and failure to inform. While the state court action was pending, plaintiffs filed the legal malpractice action against the attorney, who was granted permission to withdraw. The claims against the former spouse and her husband were later dismissed by the state court.

After a verdict was returned for plaintiffs in the malpractice action, the trial court entered judgment notwithstanding the verdict in favor of the former attorney. The Massachusetts Supreme Judicial Court affirmed. On the issue of the attorney's negligent handling of the actions against the former spouse and husband, the Court observed:

> [Attorney] withdrew with court approval from the action pending in the Superior Court on March 25, 1992. The claim was not dismissed against [the former spouse] until August, 1992, and was not dismissed against her husband until November 2, 1993. Therefore, when [attorney] withdrew from the case with court permission after notice to the plaintiff, there was still a viable case pending against [former spouse and husband] and it was still possible to proceed with discovery and investigation. There was no evidence of damage occurring to the plaintiff as a result of [attorney's] conduct in that action up to the time of his withdrawal.

423 Mass at 148, 667 N.E.2d at 256.

Applying this settled law to the undisputed facts as admitted in ISG's Complaint and as established by the record, it is clear as a matter of law that ESCM is not liable for any purported legal malpractice or other alleged wrongdoing of Pappalardo.

ISG has admitted that at least by October, 2001, it had "retained independent counsel in the United States to recover its Investment." *Complaint ¶ 43*. However, the undisputed evidence shows that ISG had consulted other legal counsel much earlier, at least by July 18, 2001. *Statement of Facts ¶¶ 17, 18; AJP Decl. ¶ 13*. Claims by ISG against the parties actually responsible for the depletion of the Investment were <u>still</u> available to ISG at least until February, 2002, when the fund transfers took place at FMB and Abn Amro leading to the depletion of the funds. *Statement of Facts ¶ 35; AJP Decl. ¶ 15*. Therefore, the undisputed evidence shows that ISG's "successor counsel", who had been consulted at least by July, 2001, had over six months to commence an action against Abn Amro, FMB, Pearlberg, Patrick or others involved in the loss or theft of the funds. As such, any failure by Pappalardo to file such an action on ISG's behalf is not the proximate cause of any loss to ISG under the well-settled law discussed above.

ISG's response to these manifest and controlling facts has been to argue that (1) ISG did not have sufficient information to independently file suit against the banks or other third parties, and (2) although ISG did ultimately file suit against COB, the judgment it received is not collectible from COB and, therefore, defendants here should somehow be held liable for payment of that judgment, even though there is not a single allegation (and there never will be one) that Pappalardo, ESCM or Greenberg Traurig participated in any way, however remote, in the events that lead to the depletion of the Investment in February, 1999.[4] Each argument is

---

[4] In fact, Pappalardo's first involvement in this matter was in July, 1999 when he was retained as COB's counsel to assist in trying to recover the funds, which were already depleted. *Statement of Facts ¶ 5; AJP Decl. ¶¶ 6, 10..*

10

ineffective to avoid the conclusion that Pappalardo's alleged malpractice is not the proximate cause of any loss to ISG.

### A. ISG had substantial information and could have filed an action against third parties within the statute of limitations period.

ISG was at all times fully aware of its ability to independently commence suit against the various third parties. Not only did ISG have its own "outside" counsel after Pappalardo withdrew from ESCM, one of its directors, Philip Clark ("Clark"), is an attorney and was actively and intimately involved in the entire affair from August, 1999, when COB initially informed ISG of the loss of the Investment. *Statement of Facts ¶ 14; AJP Decl. ¶¶ 6-7.* He knew of possible actions ISG could take independently against persons and entities involved in the depletion of the Investment. *Statement of Facts ¶ 15.* For example, as early as March, 2000, Clark stated that ISG was considering an "action against May Davis" and "direct dealings with Amro Bank immediately". *Statement of Facts ¶ 19; AJP Decl. ¶ 7.* In an April 7, 2000 letter to Pappalardo, Clark provided a detailed description of the investigation ISG had undertaken and the information it had learned concerning transfers of the funds from Abn Amro bank in Belgium. Clark stated that he was being granted "unfettered access" to the investigation file of a Belgium investigating judge, who was looking into the improper transfers of ISG's Investment from Abn Amro. *AJP Decl. ¶ 7, Exhibit F.* Indeed, the Belgium investigation was initiated at the request of ISG. *Statement of Facts ¶ 16; AJP Decl. ¶ 7.* Similarly, in a June 10, 2000 email, ISG indicated it was contemplating taking action against Abn Amro and FMB on its own. *Statement of Facts ¶ 19; AJP Decl. ¶ 12, Exhibit M.*

Moreover, the undisputed record shows that one of the other investors, St. Fredrickslund, sued COB and related entities on November 14, 2001 in this Court. *Statement of Facts ¶ 34; AJP Decl. ¶ 14.* Attached to the St. Fredrickslund complaint was a memorandum prepared by

Pappalardo on November 9, 2001 that identified the various persons, entities and events leading to the depletion or loss of the investment funds placed with COB by ISG, St. Fredrickslund and others. *AJP Decl. ¶ 15, Exhibit Q.* Significantly, ISG's own documents establish that at least by December 11, 2001, ISG, its "in-house counsel" Clark, and its outside "independent counsel" Kathleen Stone, were aware of the St. Fredrickslund suit and had information available to them such that ISG could have brought suit against COB, Pearlberg, Patrick, May Davis Group, or the banks. *Statement of Facts ¶ 34; ALP Decl. Exhibit R.* Indeed, ISG's own documents, including correspondence from ISG attorney Clark, show as a matter of law that by at least 2000, ISG was well aware of the various "players" and their involvement in the depletion of the Investment. This knowledge came from information supplied to Clark and ISG by COB and Pappalardo[5], as well as ISG's own activities including its contacts with United States and Belgium government authorities and collection of documents relating to the dissipation of the Investment. *Statement of Facts ¶¶ 15-22, 32-34, 37-38; AJP Decl. ¶¶ 7, 12, 15-16.* As such, the undisputed record negates any attempt by ISG to argue that it was not able to file a timely action against Abn Amro, FMB, May Davis or other potential defendants with respect to the loss of the Investment.[6]

### B. ESCM and Pappalardo have no liability to ISG with regard to the alleged "uncollectible" judgment ISG obtained against COB and some of its officers.

ISG's second argument -- that defendants here are responsible for payment of the judgment ISG obtained against COB – flies in the face of the undisputed record and is unsupported in law.

---

[5] For example, at a June 2000, meeting in London, Pappalardo handed Clark a "comprehensive analysis of what had occurred . . . complete with exhibits" with regard to persons, entities and events involved in the loss of the investment funds. *Statement of Facts ¶ 37; AJP Decl. ¶ 15.*

[6] Apart from the fact that no statute of limitations ran until nearly a year after Pappalardo left ESCM, ISG's in-house attorney Clark was cognizant of future potential statute of limitations issues, as he noted to Pappalardo in an August, 2001 email. *Statement of Facts ¶ 33; AJP Decl. Exhibit P.*

12

First, as discussed above, there is no evidence, not even an allegation, that any of the defendants here participated in the events that lead to the depletion of the Investment. It is therefore odd for ISG to claim that its judgment against COB – which was based on COB's alleged fraud and mishandling of the Investment – is now the responsibility of Pappalardo, Greenberg Traurig or ESCM. Second, at no time prior to October, 2001 was Pappalardo aware of the financial condition of COB. *AJP Decl. ¶ 16*. Thus, even if Pappalardo was legally permitted to tell ISG about COB's financial affairs (which he could not for the reasons discussed below), he had no information about COB's financial condition to share. Finally, the icing on this cake is ISG's judicial admission that by 1998 COB was insolvent. In pleadings filed in an action currently pending in the United States District Court for the District of Connecticut, COB specifically averred that "**[u]nbeknownst to ISG, COB was insolvent, or nearly insolvent, beginning in 1998**" and attached COB financial information to support that fact. *Garvey Aff. Exhibit 1 ¶ 30*. ISG attempts to distort the law by arguing that Pappalardo and his present and former firms are liable for ISG's delay in filing suit against COB resulting in an allegedly uncollectible judgment. This argument is undercut by the undisputed facts. In fact, since COB was insolvent as far back as 1998, which ISG has judicially admitted, nothing Pappalardo did or did not do affected the ability of ISG to collect on its subsequent judgment against COB. Moreover, there was nothing to prevent ISG, who knew in 1999 of its claims or potential claims against COB, from investigating COB's financial condition or from instituting suit against COB whenever ISG saw fit.

ISG knew from the beginning and acknowledged in numerous communications that COB was the client of Pappalardo. ISG was informed that Pappalardo represented COB in Pappalardo's very first communication to ISG, and this never changed up through October, 2001.

13

*Statement of Facts ¶ 11, 13; AJP Decl. ¶ 7.* ISG also acknowledged that it understood the "conflict or potential conflict" between ISG and COB. *Statement of Facts ¶ 30; AJP Decl. ¶ 13, Exhibit O.* The record, in fact, is replete with communications from ISG threatening to pursue legal action against COB and its officers, including threats made before Pappalardo even came to represent COB. *Statement of Facts ¶¶ 15-16, 22, 32-33, 38.* As COB's attorney, Pappalardo could not share information about COB's financial condition without COB's express consent, even if he knew such information (which he did not) and even if sharing the information would have made a difference on the "collectibility" of ISG's later judgment (which it would not). Whatever relationship is argued to have developed between ISG and Pappalardo in connection with the cooperative effort by ISG and COB to recover the depleted Investment, it is bizarre to suggest that Pappalardo was required to betray his express client COB by bringing suit on behalf of ISG against COB, or advising ISG to do so.

Accordingly, ISG's legal malpractice claim against ESCM, whether couched in terms of negligence, misrepresentation or violation of M.G.L. ch. 93A, fails as a matter of law because no conduct of ESCM or for which ESCM is responsible was a proximate cause of a loss of ISG. *See Cholfin v. Gordon*, 1995 Mass. Super. LEXIS 100, 111 (Mass. App. 1996) (awarding summary judgment on 93A claim after finding defendant attorney entitled to summary judgment on legal malpractice claim, since "[p]rofessional malpractice, breach of contract and 93A claims are so 'inextricably intertwined that the failure of the one necessitates the failure of all.'"); *Massachusetts Farm Bureau Federation, Inc. v. Blue Cross of Massachusetts, Inc.*, 403 Mass. 722, 532 N.E.2d 660 (1989) (the unfair or deceptive act must be shown to have caused the loss). Therefore, ISG's claims against ESCM for malpractice, misrepresentation or violation of M.G.L. 93A (Counts One, Two and Seven) must be dismissed.

## II. ISG's conversion and "aiding and abetting" claims (Counts Five and Six) are barred by the statute of limitations.

ISG's conversion claim against ESCM is unfounded. The undisputed facts show that on May 29, 1998 ESCM received a wire transfer to its Mellow Bank escrow account from COB in the amount of $821,500 and that, pursuant to express directions of COB, the transferred funds was distributed to various persons and entities. No part of the transferred funds was retained by ESCM. *Statement of Facts* ¶ *40*. Although in this suit ISG claims that this money came from its Investment made with COB, there is no evidence of record establishing that fact, and no evidence that ESCM was aware of that fact, if true. Nevertheless, for purposes of this motion only we will assume that the May 29, 1998 transfer of funds from COB to an ESCM escrow account and from there to various third parties according to COB's directions constitutes grounds for a claim of conversion against ESCM. That claim is barred by the statute of limitations.

All that is required for a cause of action for conversion to accrue is the wrongful exercise of ownership or control over the plaintiff's property. *MacCleave v. Merchant*, 15 Mass. L. Rep. 315, 2002 Mass. Super. LEXIS 392 (Mass. Super. Ct. 2002). A cause of action for conversion accrues on the happening of an event likely to put the plaintiff on notice. *Id.*, citing *Hendrickson v. Sears*, 365 Mass. 83, 89-90, 310 N.E.2d 131 (1974). A conversion action must be brought within three years after the cause of action accrues. M.G.L. ch. 260, 2A.

Although ISG's Complaint here was actually filed on September 15, 2004, ISG and ESCM have agreed that the Complaint should be deemed filed as of June 24, 2004 for statute of limitations purposes. The alleged event that gives rise to the conversion claim took place on May 29, 1998, more than six years before the deemed filing date of the Complaint. Moreover, ISG's Complaint and other admissions of ISG show that ISG had actual knowledge of the alleged conversion of its funds more than three years before the deemed filing of its Complaint.

15

ISG's original complaint states that "ISG did not discover [the May 29, 1998 transfer] until during the period that Pappalardo, **while at Eckert Seamans**, convinced ISG to give him a Power of Attorney and had presented ISG with the action plan." *Original Complaint ¶ 62* (emphasis added). Pappalardo left ESCM in March 2001, so the last possible date that ISG learned of the transfer while Pappalardo was at ESCM was in March 2001, more than three years before the deemed date of filing of its Complaint here. To be more accurate, the period in which Pappalardo "convinced ISG to give him a Power of Attorney" was in July, 2000, nearly four years before the Complaint here is deemed filed. *Complaint ¶ 31*. Further, we also know from the Court's findings in a prior matter, *ISG v. Hefferman, CA 04-10863-RWZ*, that it was admitted by ISG "that ISG knew in 1999 that its funds were no longer with COB". *July 30, 2004, Memorandum Decision at 3*. Thus ISG knew almost five years before filing its Complaint that its Investment given to COB had been transferred by COB to others.

Indeed, ISG admitted in its opposition to ESCM's motion to dismiss that by July, 2000, ISG was actually aware of and questioned the transfer of the $821,500 by COB to an ESCM account, which is the transaction that forms the basis of the conversion claim. *See ISG's Opposition to ESCM's Motion To Dismiss, p. 8*. Under Massachusetts law, the conversion claim accrued at least by July, 2000, nearly four years before the deemed filing date of the conversion claim against ESCM. The conversion claim in Count Five is barred by the stature of limitations. And for the same reason, the "aiding and abetting" claim in Count Six is barred since the statute of limitations for an aiding and abetting claim is the same as the underlying claim, *ie*. conversion. *See, e,g, Meridien Int'l Bank Ltd. V. Republic of Liberia*, 23 F.Supp.2d 439, 453 (S.D.N.Y. 1998) ("Where the primary violation is barred by the applicable statute of limitations,

16

a claim for aiding and abetting the primary violation fails to state a claim."); *Geren v. Quantum Chemical Corp.*, 832 F.Supp. 728, 737-38 (S.D.N.Y. 1993) (same).

**III. ISG's negligence and misrepresentation claims are barred by the statute of limitations.**

ESCM respectfully submits that the lack of proximate cause, as discussed above, ends this matter entirely as to ESCM with respect to any alleged errors, omissions, negligence or other purported misconduct of Pappalardo. But to reinforce that such claims against ESCM should be dismissed as a matter of law, we further show that the legal malpractice claim is barred by the statute of limitations.

"Actions of contract or tort for malpractice, errors or mistake against attorneys shall be commenced only within three years next after the cause of action accrues." M.G.L ch. 260, § 4. Causes of action for attorney malpractice accrue when the injured party knows or should know that it has been injured. *Moriarity v. Kohlstrom*, 2002 Mass. Super. LEXIS 198 (2002), citing *Williams v. Ely*, 423 Mass. 467, 473, 668 N.E.2d 799 (1996). "The plaintiff need not know the full extent of the injury or know that the defendant was negligent for the cause of action to accrue." *Id.*

It is hypothetical, of course, to even contemplate that ISG was injured by conduct of Pappalardo while he was at ESCM, since there was plenty of time for Pappalardo, or ISG's own "independent counsel", to subsequently correct any alleged omissions in Pappalardo's handling of the matter to that point. But assuming *arguendo* that ISG could show an actual loss somehow connected to Pappalardo's failure to commence litigation to recover the Investment during ESCM's watch, it is clear as a matter of law that ISG had actual knowledge of the relevant facts when Pappalardo departed ESCM.

17

ISG knew by 1999 that the Investment had been depleted. *Complaint ¶ 18-21.* ISG expressly states that in October, 1999, it was advised by Pappalardo that "he was taking steps 'to protect your [i.e., ISG's] interest, including preparing a civil fraud case on behalf of COB against US based parties involved in the alleged fraud." *Complaint ¶ 26.* According to ISG, a similar communication occurred in February, 2001, wherein Pappalardo told ISG that COB was "reviewing its legal options through outside counsel by way of civil suit against both individuals and institutions." *Complaint ¶ 39.* But ISG also knew as of March, 2001 when Pappalardo left ESCM that no civil litigation had yet been filed. Indeed, ISG does not allege in its Complaint that Pappalardo ever represented that he had in fact commenced a lawsuit when he did not and, as ISG knows, any such allegation would be patently false.

So, assuming the truth of ISG's allegation that the Pappalardo's failure to commence litigation on its behalf damaged ISG (although as a matter of law it did not, for the reasons discussed above), ISG's claim for legal malpractice against ESCM accrued in or before March, 2001. Its malpractice action, deemed filed June 24, 2004, is too late and is barred by the statute of limitations.

Thus, ISG's purported claim against ESCM for malpractice should be dismissed not only because, as a matter of law, the alleged malpractice or other alleged wrongdoing is not the proximate cause of any alleged ISG losses, but also because the claim of legal malpractice against ESCM is barred by the statute of limitations as appears on the face of ISG's Complaint.

### IV. CONCLUSION

Pappalardo never represented ISG nor had any other duty to protect ISG with respect to the alleged wrongful depletion of its investment funds by others. Moreover, even assuming that Pappalardo owed a duty to ISG while he was with ESCM, the Complaint fails to state a claim

against ESCM. All claims by ISG against ESCM, other than the conversion claim, should be dismissed because there was ample time after Pappalardo left ESCM in March, 2001, for ISG, through Pappalardo or its independent legal counsel, to pursue claims against those who allegedly depleted the investment fund. Accordingly, the alleged conduct of Pappalardo while at ESCM could not be a proximate cause of ISG's alleged losses, as a matter of law.

ISG's conversion and aiding and abetting claims against ESCM should be dismissed because as a matter of law the conversion claim is barred by the applicable statute of limitations.

Finally, and alternatively, ISG's claim against ESCM for negligence and malpractice is barred by the statute of limitations. As noted above, that claim should also be dismissed because of lack of proximate cause.

                Respectfully submitted,

                ECKERT SEAMANS CHERIN & MELLOTT, LLC

                By: *Devorah Levine*
                Devorah A. Levine (BBO #650813)
                One International Place, 18th Floor
                Boston, MA 02110-2602
                617-342-6800

                William B. Mallin, General Counsel
                Timothy S. Coon
                Eckert Seamans Cherin & Mellott, LLC
                600 Grant Street, 44th Floor
                Pittsburgh, PA 15219
                412-566-6000

                Attorneys for Defendant
                Eckert Seamans Cherin & Mellott, LLC

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing **BRIEF IN SUPPORT OF DEFENDANT ECKERT SEAMANS CHERIN & MELLOTT, LLC'S MOTION FOR SUMMARY JUDGMENT** was served upon the following counsel of record by United States mail, postage prepaid, this 31st day of May, 2005.

Jessica Block
Block & Roos, LLP
60 State Street
Suite 3800
Boston, MA 02109

Counsel for plaintiff

Paul B. Galvani
Ropes & Gray LLP
One International Place
Boston, MA 02110

Counsel for defendants Greenberg
Traurig, LLP and A. John Pappalardo

*Devorah Levine*
Devorah Levine