UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

INTERNATIONAL STRATEGIES GROUP, LTD.,

    Plaintiff,                                           Civil Action No. 04-12000 RWZ

v.

GREENBERG TRAURIG, LLP, et al.

    Defendants.

**DEFENDANT ECKERT SEAMANS' SUMMARY JUDGMENT REPLY BRIEF**

ISG does not dispute the settled law that an attorney is not liable to a former client for failing to file suit on the client's behalf if the attorney's representation ceased prior to the expiration of the statute of limitations on the client's claim and the client had successor counsel. The alleged negligence of the first attorney is not a proximate cause of damages, as a matter of law. Nonetheless, ISG mistakenly argues that there is an alleged fact question on proximate cause because "defendants withheld the information" from ISG's independent counsel that ISG now implausibly says was needed to commence suit against the banks. ESCM did no such thing. There is no evidence that ISG asked ESCM for any documents or information after Pappalardo left ESCM in March, 2001, or that ESCM allegedly refused to provide them. Pappalardo, not ESCM, had possession of the files and documents after his withdrawal from ESCM. Whatever "documents and information" were allegedly "withheld . . . from ISG's new lawyer, [Kathleen] Stone" it was not conduct by ESCM, nor a valid excuse for ISG's inaction.

ISG's own argument disproves that any conduct of ESCM prevented ISG from timely suing Abn Amro or FMB. ISG argues that Pappalardo and Greenberg Traurig were ISG's attorneys, or owed it some form of attorney-client duty, after Pappalardo left ESCM in March, 2001 and until October, 2001. ISG also argues that, during that time, Pappalardo possessed the information necessary to file suit against the banks and others. ESCM does not agree with those allegations, but for purposes here they are binding on ISG. Under ISG's own theory, after ESCM's involvement in this matter ended in March, 2001, ISG had legal counsel with sufficient

1

knowledge and information to file suit against the banks or others nearly a year before any statute of limitations expired.

Moreover, ISG's Barber and in-house attorney Clark were well aware of the events and "players" involved in the loss of the investment funds as early as 1999, nor does ISG dispute that in November, 2001 ISG and its outside attorney Stone had available to them Pappalardo's six page "Working Factual Outline and Chronology" that identified "Potential Defendants" and "Other Players" and provided a detailed description of the various transactions that led to the loss of ISG's investment. In fact, other than complaining that Stone asked Pappalardo for some documents, ISG has not submitted any evidence that ISG made any effort to do anything else to prepare a suit in the several months between ISG's retention of Stone and February, 2002, the earliest the statute of limitations could have expired. It is telling that attorney Stone's affidavit submitted by ISG does <u>not</u> claim that ISG had insufficient information to file suit against Abn Amro, FMB, Pearlberg, or others by February, 2002.

ISG also ignores the controlling facts in its argument about its alleged "uncollectible judgment" against COB. There is no evidence that Pappalardo ever told ISG that he would or could file suit against COB on ISG's behalf, or that he could even suggest that ISG consider doing so. While ISG denies here that Pappalardo "discussed" conflicts of interest between ISG and COB, ISG's own documents show that it was well aware of those conflicts, that ISG was at all times aware that ISG had claims against COB, and that ISG continuously threatened to pursue such claims. Although ISG relies on theories of an implied attorney-client relationship or a duty of care to a non-client -- based on Pappalardo's representation of COB potentially benefiting all investors -- an attorney cannot breach his duty to his primary client by advising an "implied client" or "non-client beneficiary" to file suit against the client. ISG has not cited a single case holding to the contrary.

Finally, ISG mistakenly relies on the "continuous representation doctrine" to rebut the unmistakable conclusion that the claims against ESCM subject to a three year statute of limitations are also time barred. ISG's reliance on *Murphy v. Smith*, 411 Mass. 133, 579 N.E.2d 165 (1991), is misplaced because the malpractice suit was brought against a sole practitioner who continued to represent the client on the same matter after the

2

negligent act took place. The few other cases cited by ISG are similar. On the facts here, the continuous representation doctrine simply does not apply. There is no evidence that ESCM continued to "represent" ISG after March 8, 2001. ISG has not submitted evidence of even a single contact between ISG and ESCM after Pappalardo's withdrawal in March, 2001. The alleged relationship between ESCM and ISG terminated in March, 2001 and ISG had three years thereafter to file its malpractice and conversion claims but failed to take timely action. *See Crouse v. Brobeck, Phleger & Harrison*, 67 Cal.App.4th 1509, 80 Cal. Rptr. 2d 94 (1998) (continuous representation doctrine did not apply to malpractice claim against law firm; attorney who handled the case for the plaintiff had left to join another firm and thereafter represented the plaintiff on the same matter).

At least by July, 2000, ISG knew about the May, 1998 wire transfer from COB to an ESCM bank account which is the basis for ISG's conversion and "aiding and abetting" claims. ISG also knew in March, 2001, when ESCM's involvement ceased, that no legal action had been commenced on COB's or ISG's behalf against the banks or others. ISG had actual knowledge of the alleged events giving rise to the malpractice and conversion claims long before the statute of limitations expired, and the continuous representation doctrine cannot apply as a matter of law. *Lyons v. Nutt*, 436 Mass. 244, 763 N.E.2d 1065 (2002) (continuous representation doctrine does not apply where client has knowledge that attorney's conduct has caused him harm); *Cantu v. St. Paul Cos.*, 401 Mass. 53, 514 N.E.2d 666 (1987) (legal malpractice action accrued when doctor learned his attorneys failed to notify his insurance carrier of a potential claim, not at later date when he hired new counsel).

Respectfully submitted,

ECKERT SEAMANS CHERIN & MELLOTT, LLC

By: *Devorah Levine*

Devorah A. Levine (BBO #650813)
One International Place, 18th Floor
Boston, MA 02110-2602
617-342-6800

Attorneys for Eckert Seamans Cherin & Mellott, LLC

**CERTIFICATE OF SERVICE**
I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail thereon, 7/7/05
*Devorah Levine*

William B. Mallin, General Counsel
Timothy S. Coon
600 Grant Street, 44th Floor
Pittsburgh, PA 15219
412-566-6000

3