UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| INTERNATIONAL STRATEGIES GROUP, LTD., <br><br> Plaintiff, <br><br> v. <br><br> GREENBERG TRAURIG, LLP., A. JOHN PAPPALARDO, AND ECKERT, SEAMANS, CHERIN AND MELLOTT, LLC., <br><br> Defendants. | CIVIL ACTION NO. 04-12000 RWZ |

**PRELIMINARY RESPONSE OF INTERNATIONAL STRATEGIES GROUP, LTD. TO DEFENDANTS' MOTION TO STRIKE AFFIDAVITS**

Alarmed that the submissions of International Strategies Group, Ltd. ("ISG") defeat their premature motions for summary judgment before any discovery (other than automatic disclosure) in the case has commenced, defendants Greenberg Traurig LLP ("GT"), A. John Pappalardo ("AJP") and Eckert, Seamans, Cherin and Mellott, LLC ("ESCM") move to strike all of ISG's affidavits. Defendants' motion is ironic on many levels. The motion also is poorly conceived as the defendants make broad assertions of hearsay or lack of personal knowledge for striking affidavits in whole or in part without thinking thoroughly about the evidentiary basis for each of the averments and exhibits. The motion only serves to highlight that the pending summary judgment motions are wholly inappropriate and discovery is required  For these reasons and as explained more

fully below, ISG seeks from defendants its attorneys' fees and costs incurred opposing the motion.[1]

**The Ironies of Defendants' Motion**

One of the ironies of defendants' motion is that their own affidavits, proffered in support of their motion for summary judgment, would fail the very tests they now urge the Court to apply to ISG's. For instance, defendants assert that certain of ISG's affidavits refer to alleged "undefined conversations" or "unspecified conversations" or "conversations . . . without sufficient detail to be admissible." ISG disputes that this is so, but notes that in the self-styled "declaration" of AJP, on which defendants rely almost exclusively, AJP is guilty of such lack of specificity, referring, without dates or time periods, to statements he made to Philip Clark on "numerous occasions" (AJP Decl., ¶7) or to alleged "numerous conversations" he had with Mr. Clark (AJP Decl., ¶ 13) or to statements allegedly made "repeatedly" by Clark (while only citing a single document) (Id).

Defendants also make vague, brush stroke complaints about alleged lack of personal knowledge and specificity in ISG's affidavits, yet submit the affidavit of Timothy Coon ("Coon"), who purports to testify about instructions given to Eckert, Seamans, Cherin & Mellott (ESCM) in 1998 by its then client Corporation of the Bankhouse (COB).

---

[1] ISG notes that Mr. Garvey has signed a "certificate of consultation" with counsel for ISG purportedly under Local Rule 7.1. That alleged consultation took place, like others in this case, just hours before the motion was about to be filed (Garvey having left a message for the first time the previous afternoon when counsel for ISG was traveling). When counsel for ISG asked the basis of the motion, Mr. Garvey was vague and declined to state with any specificity the particular averments or exhibits with which defendants had any issues, commented upon about the futility and awkwardness of the conference and indicated that the only choice for ISG was to withdraw all of its affidavits. Counsel for ISG explained to Mr. Garvey that she could not respond without the specifics, or without, perhaps, the courtesy of a draft of the motion (in sufficient time to obviate the need for it or narrow the issues), and in light of the eleventh hour nature of the conference. Thus there was never any opportunity to have a meaningful conference. The conference was thus a triumph of form over substance and, in ISG's view, not a legitimate attempt to avoid the abuses the local rule was designed to prevent.

Coon, an in-house ESCM litigator who has entered an appearance for ESCM in this action, does not state how he has personal knowledge of such instructions (his name appears nowhere in the transactional documents attached to his affidavit) nor does he give specific details about what the instructions and circumstances were that caused ESCM to accept ISG's funds and then transfer its money out of ESCM's bank account to COB's off-shore and out-of-state investors. Coon seeks to overcome hearsay problems with the attached documents by purporting to authenticate them as "business records" of ESCM; however, clearly most of the documents are not ESCM's business records under FRE 803 (6), but rather correspondence from third parties about which Coon has no personal knowledge and which are hearsay in any event. AJP also makes statements about which he has no personal knowledge, including, for instance, assumptions about ISG's state of mind (see, e.g., AJP Decl. ¶16) and conclusory, opinion-type statements as to what ISG could have done upon retaining new counsel (id, ¶15).

Further, Matthew Garvey, Esquire, an associate at Ropes & Gray, submits a "transmittal affidavit" for the purpose of attaching various exhibits about which he has no first hand knowledge (and as to which he did not set forth a foundation for admissibility in the affidavit itself) but to which defendants refer in their memorandum in support of summary judgment. A number of the factual assertions in defendants' motion and in their joint statement of material facts are based upon averments in the complaints attached to Garvey's affidavits rather than upon any specific underlying documentation and, in one instance, upon a letter from one independent investigator to another (also attached to the Garvey affidavit), which is, of course, hearsay as it is offered for the truth of the matter asserted. However, defendants here would deprive ISG's attorney, Jessica Block, of the

same opportunity to transmit documents referred to in the opposition papers and which raise genuine issues of material facts on their face. Defendants move to strike from her affidavit all the attached exhibits, even though many of these were authored by the defendants in this case (thus constituting admissions) or found in the files of Mr. Pappalardo (thus constituting evidence of his knowledge of certain facts and contradicting assertions in his declaration -- for instance, that none of the other investors considered him to be their counsel or that he knew of no funds available to distribute to investors) or found in the files of, or authored by, representatives of COB and appear on their face to be as they are described in ISG's opposition to the motions for summary judgment or in ISG's response to defendants' joint statement of facts.

The chief irony of defendants' joint motion to strike is that it only underscores the need for both parties to engage in discovery to discover further documentation in support of their claims and defenses, to take depositions of the parties and third parties and to authenticate documents, particularly those not authored by any of the parties to this action, which bear upon the issues in this action and in the pending motions for summary judgment. To file a motion for summary judgment before discovery has concluded (indeed before discovery has even formally commenced) and then move to strike affidavits and exhibits while engaging in the very practices they urge the Court to reject only as it pertains to ISG, is the height of chutzpah. The purpose of this preliminary opposition[2] is not, however, to engage in goose and gander colloquy, but rather to

---

[2] The response is preliminary because the motion was filed just before the close of business on July 7, 2005, there is no hearing date on the motion to strike, a hearing on the motions for summary judgment is set for July 12, 2005, at 2:30 PM for which ISG's counsel requires time to prepare, and counsel for ISG seeks guidance from the Court as to whether there is a need for evidentiary argument on each and every exhibit and averment challenged by defendants, whether the court seeks additional information from the affiants or whether the court requires ISG to put into evidence voluminous documentation which is summarized in relevant part in the affidavits.

highlight the fact that, at this stage in the proceeding, with only an exchange of automatic disclosure documents, both parties have to rely primarily on documentary evidence, including documents produced or authored by third parties, that cannot be yet be authenticated precisely but which appear to be as represented in the parties' papers and which raise genuine issues of material fact.

**ISG's Affidavits and Exhibits**

ISG submits this preliminary response to defendants' purported challenges to the affidavits it submitted in opposition to summary judgment. Again, if necessary and if the court deems it appropriate to schedule a separate hearing on the motion to strike, ISG will provide further authority for the evidence presented and go through each exhibit and averment to argue its evidentiary basis. ISG notes that the defendants' motion is hard to follow, because it jumps all over the place and does not track the affidavits by averments and exhibits.

*The Affidavit of Christopher Barber*

Defendants seek to strike this affidavit and others because, they assert, "it is impossible to tell which statements by Messrs. Clark, Barber and Hansen are based upon personal knowledge." ISG questions whether defendants read beyond the first paragraph. Barber describes in detail his personal meetings with representatives of COB, his personal communications with AJP and facts that he learned through documents he reviewed, which are annexed to his affidavit and prove Barber's points. ISG suspects that most of the facts averred upon review of documents (for instance the representations made by COB in 1998 and 1999 and the dates of the transfers of ISG's funds) are not legitimately disputed by defendants, could be resolved among the parties in some instances to avoid

unnecessary deposition discovery and, in any event, have been judicially admitted as facts in the COB litigation through Requests for Admissions, which are a matter of public record and within the knowledge of both Barber and Clark. As to defendants' complaints of hearsay, the statements annexed to the affidavit of Barber of COB representatives, for instance, are not proffered for the truth of the matter asserted (indeed the statements were false when made), but to demonstrate the fraud perpetrated on ISG through COB while ESCM was representing COB on a transactional basis. As to the Abn Amro bank records[3] and summaries thereof, these documents were produced in the COB Litigation pursuant to subpoena (see attached transmittal letter), were produced to defendants in this case through automatic disclosure and are business records of the bank, which defendants cannot seriously dispute. The summaries attached to Barber's affidavit reference the particular business record of Abn Amro that backs up the entry on the chart. For the sake of economy, ISG did not submit those records but would be happy to do so if the Court so requires. Under FRE 1006, summaries of voluminous records may be presented as evidence without the records. The court may but is not required to order that the underlying documents be introduced and the documents must to be made available for examination, which they were in this case, in advance of producing the summaries.

    The letter from James Pomeroy to Barber on August 11, 1999, regarding the role of AJP, GT and ESCM -- which defendants also move to strike on hearsay grounds -- is proffered not for truth of the matter, but rather to demonstrate a representation from COB, on the very day Clark of ISG met with AJP, as to role that would be played by defendants – one of the many representations in this case that caused ISG's forbearance from suing

---

[3] ISG has not yet had the opportunity to take the deposition of Abn Amro or other third parties (such as COB representatives) in this case, but received all records pursuant to subpoena in the COB Litigation.

COB and induced its belief that defendants were representing their interests in the Swan Trust recovery as well as COB's. Depending on facts developed through further discovery, the letter may also be admissible under one of the subsections of FRE 801 (d)(2). The billing narratives will be informative of collusion between COB representatives and defendants.

Defendants also move to strike as "inadmissible opinions" the understandings of Barber and Clark as to the statements made by AJP and as to the effect of the July 11, 2000, Power of Attorney and as to their expectations of AJP as expressed through a side letter. These are not, as defendants well know, "inadmissible opinion" evidence of lay witnesses, but rather admissible and highly relevant evidence of what ISG representatives understood *and expressed to AJP to be their understanding of* the relationship between him and ISG. *See* FRE 803 (1) and (3). *See also* FRE 701 (permitting lay witnesses to give opinions under the circumstances for which evidence of the understandings of Barber and Clark is proffered here.)

In this Court's opinion of March 29, 2005, denying defendants' motions to dismiss the complaint, this Court ruled that the determination of the nature of ISG's relationship with defendants "appears to be a mixed question of law and fact governed by the scope of the Power of Attorney *and the parties' understanding*." (emphasis added). Thus testimony and documentary evidence of the perceptions of Barber and Clark of the roles of each of the defendants, including statements made at the time these witnesses were perceiving those roles (*see* FRE 803(1)), is admissible. Similarly the statements of these witnesses to AJP as to their forbearance and reliance is also notice evidence (and not hearsay) of the parties' relationship and relevant to the legal issues presented in ISG's

opposition papers, including, without limitation, AJP's knowledge of the forbearance and reliance. ISG observes that defendants have not submitted any documentary evidence of any effort on their part to dissuade ISG from reliance or forbearance.

Finally defendants move to strike as irrelevant those portions of Barber's affidavits that deal with ISG's placement of funds with COB and dealings with Albert Pans and Pomeroy. But these averments are clearly relevant to rebut contentions made by defendants in their joint statement of material facts. For instance, defendants assert that ISG's commencement of a criminal inquiry in Belgium against Pans was a form of action against COB and argue, based on such activity, that ISG did not forbear. As explained in ISG's opposition, ISG was led to believe by AJP and COB that Pans was acting alone; thus the criminal inquiry initiated against Pans cannot be construed as an independent action against COB during the period that AJP was inducing forbearance and reliance on his firms to represent ISG's interests in the Swan Trust recovery in the United States. Defendants also assert that ISG "ratified" COB's investment in Swan Trust; the averments in the Barber affidavit dispute that fact as well.

*The Affidavit of Philip Clark*

Clark's affidavit, like Barber's, makes clear in each and every instance, what information in based upon his own personal knowledge and what information is based upon review of the business records of third parties. Such records were produced pursuant to subpoena in the COB Litigation, all of which have been made available to defendants through automatic disclosure. Facts regarding the transfers of ISG's funds are not seriously in dispute by defendants. In fact, in their joint statement of material facts, defendants make statements regarding the transfers of the Swan Trust funds based upon

documents defendants received from third parties such as First Merchant's Bank, Henry Pearlberg, Abn Amro and Joan Patrick. That defendants deem their document review, but not ISG's, "first hand knowledge" is troubling.

Defendants seek to strike any testimony of Clark regarding his own statements to AJP, regarding statements made by COB representatives to him about AJP or the other defendants or regarding his contemporaneous memoranda of conversations he had with AJP or third parties regarding the Swan Trust recovery. Again, the defendants claim hearsay when none of these statements are offered for hearsay purposes, but instead for the purposes of showing (i) the state of mind of ISG's principals in respect to their relationship to defendants, (ii) notice to defendants of ISG's forbearance with the knowledge and encouragement of defendants in this case and of COB representatives with whom the defendants were in privity, and (iii) notice to AJP of ISG's reliance on him as counsel and as fiduciary. Any statement by James Pomeroy, Peter Ness and Christopher Jones of COB regarding statements or actions by AJP are admissible under FRE 801 (d)(2)(C) and (D), as the evidence thus far establishes that AJP knew these COB representatives were reporting on his activities and acting as liaisons. Any statements by AJP described in Clark's notes are admissions of a party opponent.

Further, the quotes in Mr. Clark's affidavit from Abn Amro's motion to dismiss are relevant (and not hearsay) to the arguments advanced by the bank regarding the statute of limitations, which ISG has had to oppose, and relevant, in turn, to the damages incurred by ISG proximately caused by defendants. Mr. Clark is competent to testify as to the need for an assignment of COB's rights as a condition precedent to bringing the New York action based on his intimate involvement in that case and review of the motions to

9

dismiss. As described previously in opposition to defendants' motion to dismiss, Abn Amro, among other issues, challenged ISG's standing. Defendants' questioning of Mr. Clark's testimony that an assignment was a condition of filing actions against Abn Amo and FMB is disingenuous: they also understood the need for an assignment, and were involved as early as April 1999, if not earlier, in obtaining for COB a deed of assignment of Henry Pearlberg's rights in the Swan Trust accounts in order to obtain standing for COB to pursue recovery on behalf of Swan Trust.

*The Affidavit of Frank Hansen*

Defendants want Mr. Hansen's affidavit to be stricken (aside from the fact that it harms them) allegedly because they cannot track what information is within his personal knowledge and because his statement that St. Frederikslund would have bought out ISG's interest is speculative. As to the first complaint, Mr. Hansen makes clear that he is the CEO of St. Frederikslund and has been with the company since 1997, when St. Frederikslund did business with COB. ISG notes that were it to call Mr. Hansen as a witness, as intended by both parties under their Automatic Disclosure statements, pursuant to Fed.R.Civ. P. 30 (b)(6), he could testify not only to his own knowledge but that of the corporation. *McLellan Highway Corporation v United States*, 95 F. Supp. 2d 1, 23-4 (D. Mass. 2000).

Mr. Hansen attaches to his affidavit representations made by COB as to the amount of St. Frederikslund's investments through COB, which demonstrate why St. Frederikslund would have been willing to buy out ISG were ISG separately represented. Mr. Hansen's statement about St. Frederikslund's interest in buying out ISG is supported by statements made by Peter Ness to AJP during the period that AJP was representing the

Swan Trust investors (Block Aff., Exh., 36, page P06142) and by AJP in notes regarding the partnership of St. Frederikslund and COB and their "take-out strategy." (Block Aff., Exh. 20). Thus Hansen's statement is not, as defendants would have it, "contrary-to-fact speculation" as it is backed up by statements made during the period of AJP's representation of all investors. Hansen's affidavit and attached exhibits also are admissible to rebut defendants' assertion that no other investors believed AJP and his firms to be their counsel. Hansen attaches documents, including statements sent to AJP, that, to the contrary, St. Frederikslund (like ISG) regarded AJP, GT and ESCM as its U.S. attorneys.

*The Affidavit of Kathleen Stone*

Defendants argue that Ms. Stone's affidavit is irrelevant. But in their motion papers they asserted ISG retained counsel in July 2001. Ms. Stone's affidavit rebuts that fact. They also argued AJP "facilitated" Stone's representation of ISG; Ms. Stone's affidavit, and the attached exhibits, demonstrates that, to the contrary, defendants frustrated her efforts to represent ISG. They argued in the motion for summary judgment (and in their reply brief) that Ms. Stone had plenty of time to file claims against FMB, Abn Amro and others, and could have obtained documents withheld by AJP from third parties. Exhibit B to Ms. Stone's affidavit refutes that testimony, identifying the roadblocks imposed by third parties, including AJP, Abn Amro, and FMB's counsel David Bosse, to ISG's ability to assess whether it had claims against third parties. Ms. Stone argued in the motion to compel "although ISG had been told about the transfers to Pearlberg, May Davis, FMB and others, it did not have [on March 22, 2002 when it filed a complaint against COB, Pomeroy and SBG] a documentary trail that would enable ISG to

11

assert claims against the transferees." (Stone Aff., Exh. B, page 10). Stone's affidavit further is relevant in that this Court, in granting ISG's motion to compel, determined, *sua sponte*, that the power of attorney (attached to Ms. Stone's motion to compel) "clouded" the attorney-client privilege asserted by AJP in refusing to produce his files to Ms. Stone.

Defendants next assert that ISG successfully survived challenges to statute of limitations arguments in the New York actions against Abn Amro and FMB. ISG has, as to FMB only, survived a statute of limitations challenge in connection with a motion to dismiss, but the attorneys' fees it incurred opposing the statute of limitations arguments thus far and perhaps later in the New York actions are damages that may be assessed against the defendants in this case as are the legal fees incurred in bringing the motion to compel. *See, e.g,* The Mutual Fire, Marine and Inland Insurance Co. v. Costa et al, 789 F. 2d 83, 88-9 (1st Cir 1986)

*Affidavit of Christopher Jones*

Defendants seek to strike the averment of Christopher Jones that he understood AJP to be representing all investors as "rank speculation" or "irrelevant opinion." That averment is neither. Jones was the COB liaison between ISG and AJP. His understanding of AJP's role is highly relevant. While ISG can understand why defendants might not like Mr. Jones' testimony, it is relevant and admissible. His affidavit is also relevant to demonstrate why ISG believed draft pleadings were prepared and forbore from their own independent action. As to how defendants' assertion that they do not know how Jones came to learn that ESCM transferred ISG's money to other investors, while ISG is not sure that is a basis for a motion to strike, suffice it to say that ESCM first admitted such transfers in its memorandum in support of the motion to dismiss the complaint. Mr. Jones

set forth his considerable expertise and experience in the private investment industry sufficient for him to testify that such transfers were "astonishing" and highly irregular.

*Affidavit of Jessica Block*

Although defendants also submitted a transmittal affidavit with exhibits, they seek to strike all the exhibits to the comparable affidavit of Jessica Block, allegedly because they lack foundation. The foundation for each of these exhibits is set forth in the opposition to the motion for summary judgment. Ms. Block states in her affidavit that she had not had the opportunity to cross examine defendants on these documents, but that the documents are relevant to ISG's opposition to summary judgment.

Exhibit 1 is a letter authored by Laurence Harrington, an attorney with ESCM in 1999, indicating that COB was apparently in an adverse relationship with investors at the time it was asking ESCM to transfer ISG's funds to other investors and at the time COB was continuing to make misrepresentations to ISG and otherwise defrauding investors. The letter, an admission, is relevant to the level of complicity of ESCM in COB's fraud. Exhibits 2 and 3 are documents related to the deed of assignment obtained by COB from Pearlberg. Surely the defendants do not challenge the authenticity of these documents and, as the Bates numbers indicate, they came directly from AJP's files. Exhibit 4 is a letter to COB from an Attorney Maoirino regarding COB's obligations to its investors; this document also comes from AJP's files and is relevant to his knowledge of COB's fiduciary obligations (and thus his own as he assured investors he was representing their interests). Exhibits 5 and 6, also from AJP's files, demonstrate that ESCM was representing COB in connection with the Swan Trust deed of assignment as early as April 1999. Exhibit 5 is a letter sent by Pomeroy to FMB, copied to Stephen Burr ("Burr") at

13

ESCM, urging the transfer to COB of $1.2 million and demonstrates defendants' knowledge of the transfer of funds belonging in part to ISG, and Pomeroy's characterization of ISG, St. Frederikslund and PRCS as his "partners." Exhibit 9 demonstrates ESCM's knowledge of the transfer of investors' funds to COB while COB and its firms purported to be representing the investors. Exhibit 9 shows the close relationship of ESCM and GT (lawyers from ESCM founded the Boston office of GT). Exhibit 10, written by Burr and thus an admission, demonstrates defendants' views that litigation should have been filed and funds should have been frozen immediately. Exhibits 11 through 16 are from the files of AJP or St. Frederikslund and demonstrate, as described in the opposition, St. Frederikslund's view (expressed to AJP) that defendants were its U.S. Attorneys for the Swan Trust recovery. Exhibits 16 through 23 appear to be notes of AJP (and thus admissions by him) with entries relevant to the issues raised by summary judgment. Exhibit 24 is the cash disbursement journal of COB, a business record, showing monies available to ISG had it been separately represented and had not AJP represented that he, ESCM and GT were protecting ISG as well as COB. This document is relevant to damages and refutes defendants' argument that they were not the proximate cause of any damages to ISG. Exhibit 25 is a memorandum from AJP's files showing the perception that Pearlberg was removed from reality and recovery from him was unlikely, while AJP was representing to ISG that money from Pearlberg would be forthcoming. Exhibits 26 and 27 are communications from Pomeroy to AJP (Exhibit 27 being originally a communication to Pomeroy from the Russian recovery specialist) showing efforts to undermine ISG and keep it at bay, all while defendants were purporting to represent its interests equally with COB's. Exhibit 28, a filing found on the website of

the Secretary of State of the Commonwealth of Massachusetts confirms the incorporation of SBG entities just after AJP procured a power of attorney from ISG. Exhibit 29 shows the infrastructure of SBG, and its interrelationship with COB, leading to the inference that it was a successor corporation structured to avoid claims of COB creditors such as ISG. Exhibit 30 appears to be AJP's notes of his conversation with ISG's investors showing, *inter alia*, their request for information from him regarding the statute of limitations. Exhibit 31 is a fax from Peter Ness, demonstrating, as described in the opposition, the basis of ISG's belief (and forbearance as a result) that litigation was in process. Exhibit 32 is a communication from COB to AJP showing attempts to marginalize ISG. Exhibits 33 through 35 show assets that would have been available to ISG prior to the October 26, 2001 (Exhibit 35 is corroborated by the Hansen affidavit, and by the St. Frederikslund complaint attached to the affidavit of Matthew Garvey). Exhibit 37 is a letter written by AJP to Pomeroy, constitutes an admission by him as to what steps were necessary in June 2001 and appears to be an attempt to protect himself against malpractice claims that might have been contemplated at that point by COB. Exhibit 38 is a letter from substitute counsel for COB demonstrating that as of February, 2002, when defendants say the statute of limitations on some claims may have expired, even COB was looking for information regarding the statute of limitations. Exhibit 39 is the TTT & Omnia contract and is submitted to rebut defendants' contention that COB engaged that firm before the date of their representation. Exhibit 40 is a communication from Pomeroy to AJP demonstrating, as argued in the opposition, COB's hostility to ISG, all while it and AJP developed a general attack plan to keep the three investors in line by inducing them to believe defendants were looking after their interests. Exhibit 40 is an e-mail from AJP's secretary

15

(and an admission under FRE 801 (d)(2)(D). Its relevance is discussed in ISG's opposition.

## CONCLUSION

Defendants' motion is entirely without merit and should be denied summarily. Further ISG should be reimbursed its attorneys fees and costs of opposing the motion, particularly where defendants failed to honor in any meaningful way their obligations under Local Rule 7.1, where their own affidavits would be stricken in whole or in part under their arguments and where they are moving for summary judgment yet simultaneously moving to strike relevant testimony and documents before discovery has begun.

INVESTMENT STRATEGIES
GROUP, LTD

By its attorneys,

*[signature]*
Jessica Block
BBO#046110
Block & Roos, LLP
60 State Street, Suite 3800
Boston, Massachusetts 02109
(617) 223-1900

July 12, 2005

I, Jessica Block, Esquire, counsel for the plaintiff, do hereby certify that the within pleading was served by causing copies to be delivered, by hand, to counsel for the other parties of record, this 12th day of July, 2005.

*[signature]*
Jessica Block

 **ABN·AMRO**

ABN AMRO Bank N.V.
Park Avenue Plaza, 55 East 52nd Street
New York, NY 10055
(212) 409-1601
Facsimile (212) 409-1663
patricia.mcelveen@abnamro.com

Ref:   Legal 089

Date:  August 13, 2002

**Patricia McElveen**
Paralegal Assistant
Legal

**VIA OVERNIGHT MAIL**

Ms. Kathleen C. Stone, Esq.
Looney, Cohen, Reagan & Aisenberg LLP
109 State Street
Boston, Massachusetts 02109

Re:   **SUBPOENA IN A CIVIL CASE**
      International Strategies Group, Ltd. *v.* Corporation of the Bankhouse, Inc., Societe
      Bankhouse, and James F. Pomeroy

Dear Ms. Stone:

We acknowledge receipt of the above mentioned Subpoena, dated June 27, 2002 (the "Subpoena"), as well as your letter to the right undersigned dated July 9, 2002.

Please be advised that pursuant to the Subpoena we have caused a search of our records for documents as they relate to the entities named in the Subpoena, as well as the specific accounts mentioned in your letter, for the time period of January 1998 through December 1999. Enclosed you will find copies of all documents in our possession which relate to the following entities as mentioned in the Subpoena for the time period indicated:

1. Wire transfers involving the following entities: *International Strategies Group, Ltd.*; *Corporation of the BankHouse, Inc.*; *James F. Pomeroy, II*; and *May Davis, Inc. and/or May Davis Group*; and

2. Account information and wire transfers relating to *First Merchant Bank OSH Limited*

We further advise you that a search of our records here in the United States revealed no account relationships or other documents referring or relating to the following entities as named in the Subpoena:

| Swan Trust | A. John Pappalardo | International Strategies |
| Henry Pearlberg | Corporation of the BankHouse, Inc. | Group, Ltd. |
| Joan Patrick or C. Joan Patrick | Societe Bankhouse | COB syndicate account no. 165 |
| Lipalsac | James F. Pomeroy, II | COB-ISG syndicate |

and that the following account numbers as listed in your letter, are invalid account numbers that are inconsistent with this bank's account numbering system:

| #720-5404021-66 | #44-310-720 | #1-2-10-612 |

We understand that once you have reviewed the enclosed documents you may request further documentation. Please feel free to contact the right undersigned at (212) 409-1601 with any further requests.

**ABN·AMRO Bank**

Kathleen C. Stone, Esq.
August 13, 2002
Page 2

For the sake of good order, we note that the information set forth above is based on a review of the Bank's records (located in our New York Branch only) performed by the Bank's employees upon our instructions. It is inevitably subject to unintentional errors and omissions.

Very truly yours,

ABN AMRO BANK N.V.

D.J. Deegan
Vice President
&
General Counsel

P. McElveen
Paralegal Assistant

Enclosures