.UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-12000-RWZ

INTERNATIONAL STRATEGIES GROUP, LTD.

v.

GREENBERG TRAURIG, LLP, A. JOHN PAPPALARDO, and
ECKERT, SEAMANS, CHERIN AND MELLOTT, LLC

MEMORANDUM OF DECISION

January 30, 2006

ZOBEL, D.J.

Plaintiff International Strategies Group, Ltd. invested four million dollars with a firm called Corporation of the BankHouse, Inc. ("COB") that, in spite of the non-depletion guarantee it extended to plaintiff, subsequently lost the entire balance in a series of transfers and transactions. Plaintiff has attempted to recoup its loss through a number of lawsuits against various parties and, in the instant suit, proceeds against A. John Pappalardo ("Pappalardo"), the attorney who represented COB in its efforts to locate the missing funds. Plaintiff's representatives initially met Pappalardo on August 11, 1999, and the instant lawsuit derives from the assertion that Pappalardo provided legal services to plaintiff, as well. The Complaint also names as defendants the two law firms with which Pappalardo was associated while allegedly handling matters for plaintiff, initially the firm of Eckert, Seamans, Cherin and Mellot, LLC ("ESCM") and, later, the firm of Greenberg Traurig, LLP ("GT"). Against all defendants, plaintiff alleges three counts: (1) negligence, in the form of legal malpractice, (2)

misrepresentation and (7) violation of Chapter 93A of the Massachusetts General Laws.  Against Pappalardo only, plaintiff alleges two additional counts: (3) breach of fiduciary duty and (4) breach of express and implied contract.  Against only ESCM, plaintiff further claims: (5) conversion and (6) aiding and abetting fraud and breach of fiduciary duty by COB and its principals.  Defendants previously moved, unsuccessfully, for dismissal on the ground that plaintiff's complaint did not properly allege a connection between defendants' conduct and plaintiff's harm.  They now move for summary judgment on all claims, and plaintiff opposes.

GT and Pappalardo ground their motion for summary judgment on all claims against them on arguments that (1) no attorney-client relationship existed between plaintiff and Pappalardo or GT, (2) no conduct by Pappalardo or GT harmed plaintiff, and (3) in any case, the instant claims are barred by the statute of limitations for legal malpractice actions.  Under Massachusetts law, an attorney-client relationship may be demonstrated

> when (1) a person seeks advice or assistance from an attorney, (2) the advice or assistance sought pertains to matters within the attorney's professional competence, and (3) the attorney expressly or impliedly agrees to give or actually gives the desired advice or assistance. . . . In appropriate cases, the third element may be established by proof of detrimental reliance, when the person seeking legal services reasonably relies on the attorney to provide them, and the attorney, aware of such reliance, does nothing to negate it.

DeVaux v. Amer. Home Assurance Co. et al, 387 Mass. 814, 818 (1983), quoting Kurtenback v. TeKippe, 260 N.W.2d 53, 56 (Iowa 1977).  GT and Pappalardo argue that they never established an attorney-client relationship, because Pappalardo

expressly informed plaintiff that he represented COB. (See Mem. of Law of Defs. in Support of Summ. J. 9). Additionally, neither GT nor Pappalardo ever signed a retainer agreement with plaintiff or presented it with any bills for legal services rendered. (See id.). Plaintiff, on the other hand, cites evidence that Pappalardo repeatedly discouraged it from hiring a separate attorney and insisted that he was pursuing the fraud matter on behalf of all COB investors on this matter. (See Opp. of Pl. to Defs.' Mots. for Summ. J. 24-26). Plaintiff noted that other investors labored under the similar impression that Pappalardo represented their collective interests. (See id.). Because deciding whether an attorney-client relationship existed requires evaluation of these and other disputed facts, summary judgment on this basis is not appropriate.

GT and Pappalardo next argue that, even assuming *arguendo* that an attorney-client relationship existed, plaintiff has not shown their conduct to be a proximate cause of any harm suffered by plaintiff. According to plaintiff, GT and Pappalardo failed to initiate legal proceedings by COB on behalf of its swindled investors, including plaintiff, against third parties allegedly involved in the swindle. It suggests specifically that defendants should have brought suits against financial institutions that held and transferred invested funds, and that their failure to do so foreclosed several opportunities for plaintiff to recoup its lost investment. First, plaintiff asserts that COB and COB-related entities received $19m between 1998 and 2001, plus funds allegedly disbursed to COB's attorneys and employees, without ever returning any portion of this money to plaintiff in satisfaction of its investment. Second, plaintiff alleges that defendants' conduct caused it to miss a window of time in which funds were potentially

held by third-party financial institutions in New York and vulnerable to attachment before being secreted overseas in May of 2000.  Third, plaintiff claims that the delay in filing suit compromised an opportunity for it to sell its interest to a co-investor, St. Frederikslund's Holding A/S ("SFH"), that earlier expressed interest in expanding its investment portfolio with COB, because as time passed, SFH recognized the tenuousness of its own investment and assumed a position adverse to, rather than cooperative with, COB.  Last, plaintiff attributes further economic loss to the late prosecution in the form of increased legal fees to defend against statute of limitations challenges in a subsequent separate suit by plaintiff with independent counsel, Kathleen C. Stone, against certain of the third-party financial institutions allegedly involved in the swindle.  Plaintiff claims that GT and Pappalardo declined to provide Ms. Stone with files necessary to document the alleged fraud and state plaintiff's claims with particularity sufficient to file an indisputably timely complaint.

"In general, Massachusetts law requires a client in a legal malpractice case to show that the attorney had a duty to the client, that he breached the duty, and that his breach proximately caused the plaintiff's harm."  Sierra Fria Corp. v. Donald J. Evans, P.C., 127 F.3d 175, 179 (1st Cir. 1997).  Regarding causation, "the plaintiff 'must demonstrate that the attorney failed to exercise reasonable care and skill in handling the matter for which the attorney was retained.'"  Id., quoting Colucci v. Rosen, Goldberg, Slavet, Leveson & Wekstein, 25 Mass. App. Ct. 107, 111 (1987).  Although evaluation of counsel's conduct typically requires expert testimony regarding the applicable standard of care, plaintiff has failed to demonstrate how the conduct and

4

events as alleged are, even in theory, causally linked.  In other words, even if Pappalardo and GT's conduct fell below the standard of care, plaintiff has not offered any compelling theory of causation between such conduct and any harm suffered by plaintiff.  For example, plaintiff explains that the $19m received by COB represents funds placed with COB by three investors, one of which was plaintiff, and through a series of account transfers, depleted by February 2, 1999.  (See Opp. of Pl. to Defs.' Mot. for Summ. J. 6).  Because such depletion occurred months before plaintiff first met Pappalardo on August 11, 1999, however, Pappalardo and GT owed no duty and caused no harm to plaintiff at the time that COB held and lost this initial sum.  With respect to funds available in New York, plaintiff asserts that "funds appear to have been available for attachment in [certain] concentration and sweep accounts at [a third party financial institution]; by May 2000, these funds were transferred out of New York, where they could have been frozen, to Cyprus."  (See id. at 28).  Although plaintiff's description implies that funds were available for attachment over a period of time, in fact the bank records clarify that the accounts were literally swept daily, often multiple times per day, immediately upon deposit of any substantial amount of money.  (See Barber Aff., ¶ 11, Exs. I and J).  Plaintiff never explains how Pappalardo and GT could have successfully isolated any funds for attachment, when no substantial funds ever remained in the accounts for more than a day.

    Additionally, plaintiff offers no persuasive argument for a cause and effect relationship between delayed prosecution and the missed opportunity to sell its investment interest to SFH, a COB co-investor.  Even if plaintiff assumes correctly that

SFH would have purchased plaintiff's interest but for COB's eventual adverse position, plaintiff has not offered any evidence to support a finding that SFH became adverse to COB simply because COB did not timely file suit against third-party financial institutions. Rather, as explained by the Chief Executive Officer of SFH, "had [plaintiff] been separately represented and sought a 'buyout' of its position . . . , it is not unlikely that [SFH] would have been motivated to 'purchase' [plaintiff]'s position." This statement neither asserts nor implies, in spite of plaintiff's characterization, that SFH declined to purchase as a result of defendants' delayed prosecution.

Plaintiff's final argument for causation of harm involves its need for certain files before filing a separate lawsuit. GT and Pappalardo assert that plaintiff and its attorney, Ms. Stone, had ample time and information to file suit against the financial institutions before expiration of the statute of limitations of those claims. In fact, Ms. Stone's affidavit attaches a letter dated January 4, 2002, from her to Pappalardo regarding the files, that states "[a]lthough [plaintiff] has not yet filed, it certainly has grounds to do so and I expect I will be instructed to do so shortly." (Stone Aff. Ex. A, p.2). This statement indicates that Ms. Stone believed, at least as early as January 4, 2002, that plaintiff had adequate grounds to initiate suit against the financial institutions before obtaining the requested files from GT and Pappalardo. Additionally, as ESCM notes, Ms. Stone's affidavit itself never affirmatively states that plaintiff was unable to file suit without these files. (See Def. ESCM's Summ. J. Reply Brief 2). Moreover, plaintiff offers no other evidence that failure to obtain the files constituted a proximate cause of injury.

Accordingly, GT and Pappalardo's Motion for Summary Judgment is allowed as to Count 1. Because plaintiff's allegation of legal malpractice involves conduct that underlies the claims advanced against both GT and Pappalardo in Counts 2 and 7 and against Pappalardo, alone, in Counts 3 and 4, summary judgment is also allowed as to these defendants on these counts. This grant of summary judgment for failure to adequately allege and provide any evidence of proximate cause renders unnecessary a determination of the parties' statute of limitations arguments.

Remaining are plaintiff's claims against ESCM, namely, Counts 1, 2, 5, 6 and 7. Counts 1, 2 and 7 each rely upon a finding of legal malpractice. Other than claiming failure to file suit and improper withholding of files, as alleged against GT and Pappalardo, plaintiff offers no arguments specific to ESCM on these counts regarding proximate cause. Accordingly, ESCM's motion for summary judgment is allowed on Counts 1, 2 and 7, for the same reasons heretofore discussed. As to Counts 5 and 6, these state a claim of conversion regarding the transfer of certain COB funds by ESCM. Assuming *arguendo* that it in fact committed conversion, ESCM argues that plaintiff knew of this wrong, at the latest, by March of 2001 when Pappalardo left ESCM to join GT, and thus the three-year statute of limitations on conversion bars the present claims. Plaintiff responds by relying upon the doctrine of continuing representation as a tolling mechanism, arguing that Pappalardo's "transition to a new firm was not a break in the continuum of representation sufficient to put [plaintiff] on notice that it had to file claims against ESCM three years from March 2001." (Opp. of Pl. to Defs.' Mots. for Summ. J. 37).

7

"The continuing representation doctrine 'recognizes that a person seeking professional assistance has a right to repose confidence in the professional's ability and good faith, and realistically cannot be expected to question and assess the techniques employed or the manner in which the services are rendered." <u>Rosen Construction Ventures, Inc. v. Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.</u>, 364 F.3d 399, 406 (1st Cir. 2004), <u>quoting</u> <u>Murphy v. Smith</u>, 411 Mass. 133, 137 (1991). This doctrine recognizes "innocent reliance" on the law firm's "assurances" that its representation meets professional standards.  <u>Id.</u>  Plaintiff offers no evidence of "innocent reliance" on ESCM for continued legal advice and no evidence of any assurances or communication at all between plaintiff and ESCM regarding the matters at issue.  While it is true that a law firm may continue to represent clients of an attorney who has since left that firm, the record is devoid of any evidence supporting an inference that plaintiff operated under the impression that ESCM continued to serve its interests after Pappalardo moved to GT.  ESCM's motion for summary judgment on Counts 5 and 6 on the basis that the statute of limitations bars these claims is, thus, allowed.

Accordingly, defendants' motions for summary judgment on all counts (#33 and #37 on the docket) are allowed.  Defendants' joint motion to strike certain of plaintiff's affidavits (#58 on the docket) is denied.   Judgment may be entered for defendants.

|  |  |
|---|---|
| _____<br>DATE | /s/ Rya W. Zobel_____<br>RYA W. ZOBEL<br>UNITED STATES DISTRICT JUDGE |