UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| INTERNATIONAL STRATEGIES GROUP, LTD., <br><br> Plaintiff, <br><br> v. <br><br> GREENBERG TAURIG, LLP., A. JOHN PAPPALARDO, AND ECKERT, SEAMANS, CHERIN AND MELLOTT, LLC., <br><br> Defendants. | CIVIL ACTION NO. 04-12000 RWZ |

**REPLY MEMORANDUM OF INTERNATIONAL STRATEGIES GROUP, LTD. IN RESPONSE TO DEFENDANTS' OPPOSITIONS TO THE MOTION FOR RECONSIDERATION OR FOR RELIEF FROM JUDGMENT**

International Strategies Group, Ltd. ("ISG") submits this reply memorandum briefly to address points raised by defendants Eckert, Seamans, Cherin and Mellott, LLC ("ESCM"), Greenberg Traurig LLP ("GT") and A. John Pappalardo ("AJP") in opposition to ISG's motion for reconsideration or relief from judgment. Defendants also have filed a joint motion to strike affidavits. ISG intends to file a separate opposition to that motion within the fourteen days permitted under Local Rule 7.1.

**Argument**

As readily determined from the motion for reconsideration and the supporting memorandum, the motion is not, as defendants would have it, a rehashing of old arguments. The motion's sole purpose is to correct errors in interpretation of evidence

made by the Court, *sua sponte*, without notice to ISG, and to bring to the Court's attention a recent case that contradicts authority upon which ESCM relied in its motion for summary judgment and that bears upon the circumstances of this case. It is not fair to argue that the motion for reconsideration should be denied because evidence was "available" to ISG at the time of the motion for summary judgment: neither of the defendants, either in their original motion papers or reply memoranda, raised the issues to which the clarifying evidence and the motion for reconsideration respond.

Further, contrary to defendants' contention, ISG is not "quibbling" with "three insignificant aspects" of the Court's opinion. ISG is addressing, head-on, the three <u>most</u> significant aspects of the opinion. Having found that there were sufficient disputed facts as to the existence of an attorney-client relationship, the Court then analyzed the evidence of damages presented by ISG. ISG presented the evidence known to it at the time of summary judgment, the Court misconstrued that evidence and now it is entirely appropriate to set the record straight.

ISG's response to specific arguments raised in the opposition papers follows.

**Specific Response to ESCM's Opposition**

A.    **The funds at Abn Amro**: ESCM advances several arguments in response to ISG's presentation of evidence that assets were available to be frozen at ABN Amro Bank ("Abn Amro") and the consequent harm to it of defendants' failure to freeze these assets.

ESCM argues, for the first time, that Corporation of the Bankhouse (COB) allegedly never authorized the filing of a lawsuit, which is why ESCM did not attempt to freeze assets. To further bolster an argument that freezing of assets was not required, in a

2

footnote, ESCM attempts to discredit the August 23, 1999 letter to COB (Block Aff, Exh. 10[1]) from Stephen Burr ("Burr"), a former ESCM senior corporate partner who had left the firm just two weeks prior to establish the Boston office of GT.  In the letter, Burr advises COB to freeze assets immediately.

ESCM misses the point.  ISG never was given the same advice that "taking the necessary legal steps should happen concurrently" and "immediate legal action against those persons and organizations" including "pleadings and any appropriate motions for immediate freezing of assets" was required.  As for ESCM's attempt to diminish the significance of Burr's strenuous message to COB to take immediate action to freeze assets on the grounds that Burr was "a corporate lawyer, not a litigator," notably the August 23, 1999 letter was copied to Roderick ("Eric") MacLeish, Jr., a former ESCM partner and newly minted GT partner, and to AJP, then an ESCM partner.  The letter also refers to "extensive discussions" among "Eric," Burr and representatives of COB.  Both MacLeish and AJP are litigators.

Next ESCM suggests that funds in the First Merchant Bank (FMB) concentration account could not be segregated for attachment.  But the bank record summaries[2] (Barber Aff., Exh. H)[3] show that as of February 5, 1999, just after Henry Pearlberg transferred $16.7 million to FMB (*see* Barber Aff.,¶ 10 and infra, pages 7-8), the bulk of the money in the concentration account was attributable to the Swan Trust/Pearlberg deposit, and,

---

[1] Reference is to the affidavit of Jessica Block earlier filed on June 30, 2005.
[2] ESCM states that the underlying bank records were not made available.  That is not true,  In the New York action, at considerable expense to it, ISG created an electronic database, which included all of the bank records it collected in discovery in the COB litigation and otherwise, and made all of this information available to the defendants.  Counsel for ISG arranged for defense counsel or their paralegals to obtain the documents directly from the New York law firm handling the New York action , spoke directly with the paralegals to make arrangements and understands that counsel for the defendants in this case ordered such documents as they desired.

consequently, to the investors' funds, including ISG's. ESCM declines to put in any evidence to negate the proposition that the funds could have been attached, instead citing a New York case for the general proposition that the attachment statute must be construed against the moving party.[4]

Finally ESCM[5] argues that ISG has not been harmed by the failure to freeze assets because it has a case pending against Abn Amro, who is solvent. The harm, however, is that ISG (and all the other investors) lost their ability to collect on any claims against Henry Pearlberg, a party against whom they had a direct action but who was without assets except for the money in the FMB account; who, at least as of April 1999, was willing to make restitution; and whose funds were available at Abn Amro in the FMB concentration account – all during the period that ESCM and AJP were representing COB and the investors. Instead, ISG now has to fight a much more expensive battle against FMB and Abn Amro where recovery is by no means guaranteed. As ISG previously noted, a law firm may be liable where the client lost some, even if not all, of its remedies. 4 Mallen & Smith, Legal Malpractice, The Plaintiff's Attorney – Delay in Prosecution, §30.19, 505-6 (5th Ed. 2000).

B.   **Missed Opportunity to Sell Its Investment to St. Frederickslund Holdings (SFH)**: ESCM's argument as to ISG's missed opportunity to sell its investment to a larger investor only serves to prove ISG's point. ISG was never even told by AJP of the potential for a buyout even though AJP was informed that SFH was contemplating one

---

[3] Reference is to the affidavit of Christopher Barber earlier filed on June 30, 2005.
[4] Indeed the contrary argument could be made that a New York court would have been very likely to freeze the funds, especially in light of the FBI investigation into the Swan Trust transaction. (*see*, e.g. Block Aff., Exh. 10)
[5] ESCM makes much of the fact that ISG is suing Abn Amro for $16.7million. But as ESCM does or should know, ISG is suing as assignee of Henry Pearlberg and must share its recovery, if any, with other investors.

if the recovery process moved forward (Block Aff., Exh. 36).  The loss of the opportunity to negotiate the sale of its interest to SFH constitutes damages incurred by ISG, under Count Two of the Amended Complaint, in reliance on defendants' representations (inducing ISG's forbearance) that they were capable of representing ISG's interests, that they were preparing a case of civil fraud against US based parties and that Pearlberg was capable of making restitution, when, in fact, none of these representations was true.

    **C.**    **Delay in the Prosecution of a lawsuit against FMB and Abn Amro:**  To contradict ISG's evidence that its claims in the New York action were largely derivative and it required a Deed of Assignment to perfect its rights to sue FMB and Abn Amro in New York, ESCM does not offer any contrary evidence, but resuscitates an argument it made over a year ago when it moved, unsuccessfully, to dismiss the amended complaint. ESCM argues anew that that ISG could have compelled the COB-related defendants to join in a lawsuit against the banks under Fed.R.Civ..P.19(a).  This argument, advanced in opposition to a motion for reconsideration of a grant of summary judgment, without any evidence to support it, cannot be entertained, especially where (1) there would have been no jurisdiction over the banks in Boston and (2) there would have been no jurisdiction over the COB-related entities in New York, at least according to the current state of the record.  As to the alleged independent efforts of ISG to investigate the disappearance of its funds at Abn Amro, as ISG previously demonstrated, with AJP's knowledge and advice, ISG forbore from pursuing any independent action so as not to jeopardize such actions as defendants led it to believe they were taking to recover the funds.

    **D.**    **Statute of limitations**: ESCM argues that the continuous representation doctrine rationale advanced in the new case, <u>Beal Bank SSB v. Arter & Hadden LLP</u>,

2006 Ca. App. LEXIS 12 (January 10, 2006), should not apply to toll the statute of limitations on ISG's conversion claim against it because ISG knew ESCM was the recipient of some of its funds in April, 2000, and therefore did not "innocently rely" on ESCM. But ESCM ignores the evidence, previously presented by ISG, that ISG was advised repeatedly by AJP that AJP had done nothing wrong and was only paying creditors and that the firms were taking other actions on ISG's behalf to recover funds. (Clark Aff., ¶13.). This was the lesson of Murphy v. Smith, 411 Mass. 133, 137 (1991), where the attorney promised the client that "he would take care" of a title problem when the client first received a demand letter from its neighbor putting it on notice that the attorney may have made a mistake. Therefore the rationale of Beal Bank very much applies where, as here, the client not only is led to believe by the attorney that the firm has done nothing wrong but also that the attorney is assiduously pursuing recovery from other sources. In such circumstances, the statute of limitations does not begin to run until after the termination of the relationship. Moreover, ISG's 93A claim is based not only on the conversion, but, *inter alia*, the attempt to excuse it and the continued misrepresentations of AJP while at ESCM. As AJP did not leave ESCM until March 2001, a complaint filed on the effective date of June 24, 2004, is within the four year statute of limitations period under 93A.

### Specific Responses to GT and AJP's Opposition

The opposition of GT and AJP largely concerns itself with whether or not ISG may file affidavits for the purpose of correcting misapprehensions about sweep accounts and other matters. ISG will address this issue in its opposition to the motion to strike.

ISG must reply here, however, to GT/AJP defendants' erroneous contention that ISG has never shown that the money in the concentration accounts belonged to ISG or anyone in the Swan Trust investment, that AJP knew of these accounts or that the funds could have been attached. All of the defendants were aware of the existence of, <u>and</u> the account number of, the concentration account. That is because the account number appears on the April 1999 Deed of Assignment found in AJP's files (Block Aff., Exh. 2).[6] ESCM was advising COB on the Swan Trust settlement in early 1999. (Block Aff., Exh. 5).[7] It is undisputed that Pearlberg transferred approximately $16.7 Million to the concentration account on or about February 2, 1999. (Pappalardo Declar., Exh. Q 9, pages 4-5). The bank records indicate that the same sum, less approximately $350,000 was deposited in the concentration account banking three days later. (Barber Aff., Exh. H page 4).

As to the remaining arguments about the missed opportunity and the delay in prosecution, ISG refers to its arguments <u>supra</u>, pages 4- 5.   ISG notes further, to address the argument of the GT/AJP defendants that the lost buyout opportunity is "unsupported speculation," that Peter Ness's correspondence with AJP in particular (Block Aff., Exh.36, p. 1642) is a contemporaneous statement of intent and indicates SFH's interest in buying out ISG "if the process appears to be going forward." Thus there was evidence, in addition to the Frank Hansen affidavit, sufficient to go to the jury on the missed opportunity theory of damages.

---

[6] The document is stamped with the Bates Number "P 03979," indicating it was produced in the COB litigation by A. John Pappalardo.
[7] This is a letter form a Pasquale Maiorino to James Pomeroy of COB regarding the Swan Trust settlement. He writes, "Since Eckert Seamans Cherin & Mellott has been advising you on this matter, they should review the agreement before you take any action thereon."   This document is also Bates stamped "P 02088" indicating its existence in AJP's files.

INTERNATIONAL STRATEGIES
GROUP, LTD

By its attorneys,

*/s/ Jessica Block*
Jessica Block
BBO#046110
Block & Roos, LLP
60 State Street, Suite 3800
Boston, Massachusetts 02109
(617) 223-1900

March 1, 2006

### CERTIFICATE OF SERVICE

I, Jessica Block, Esquire, counsel for the plaintiff, do hereby certify that the within pleading was served by causing copies to be mailed, first class, postage prepaid, to counsel for the other parties of record, this 1st day of March, 2006 and through the electronic filing process.

*/s/ Jessica Block*
Jessica Block

8