UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

INTERNATIONAL STRATEGIES GROUP, LTD.

    Plaintiff,

    v.

GREENBERG TAURIG, LLP., A. JOHN PAPPALARDO, AND ECKERT, SEAMANS, CHERIN AND MELLOTT, LLC.,

    Defendants.

CIVIL ACTION NO. 04-12000 RWZ

**OPPOSITION OF INTERNATIONAL STRATEGIES GROUP, LTD. TO DEFENDANTS' JOINT MOTION TO STRIKE EXHIBIT AND AFFIDAVITS**
**Request for Oral Argument**

    International Strategies Group, Ltd. ("ISG") submits this opposition to what is now the third motion filed by defendants Greenberg Traurig, LLP ("GT"), A. John Pappalardo ("AJP") and Eckert, Seamans, Cherin and Mellott, LLC ("ESCM") to strike affidavits.[1] Defendants are seeking to strike the affidavits of Blaine Bortnick, Esquire and Christopher Barber as well as the exhibit attached to the memorandum in support of ISG's motion for reconsideration, all of which ISG proffered to address the Court's perception, in its January 30, 2006, decision granting summary judgment ("the Decision") of transactions

---

[1] Defendants GT and AJP previously filed a motion to strike an affidavit submitted by Philip G. Clark in opposition to the motion to dismiss the complaint. That motion was rendered moot as a result of the filing of an Amended Complaint. Defendants GT, AJP and ESCM previously filed a motion to strike the affidavits submitted by ISG in opposition to their motions for summary judgment. The Court denied their motion on January 30, 2006.

between the overnight "sweep" and concentration accounts of First Merchant Bank ("FMB") at Abn Amro Bank ("Abn Amro"). Defendants also seek to strike the affidavit of Kathleen Stone, Esquire, submitted by ISG to correct the Court's mistaken interpretation of a letter she wrote to defendant AJP on January 4, 2002 and other evidence. For the reasons set forth below, the Court should deny defendants' joint motion.

## ARGUMENT

### I. It Would Be Unfair Not to Accept Evidence, in the Form of Affidavits and an Exhibit, That Corrects the Court's Misperception, Raised *Sua Sponte*, of Evidence Presented by ISG in Opposition to Summary Judgment

Defendants' first line of attack on ISG's affidavits is to claim that the affidavits constitute new evidence or arguments that could have been made before summary judgment entered. However, ISG could not have known that the Court would have made, *sua sponte*, the inferences that it did in respect to the FMB accounts. ISG presented the Court with summaries[2] of bank documents showing that funds were available for attachment during the period that defendants were representing the Swan Trust investors. The Court itself acknowledged, "plaintiff's description implies that funds were available for attachment over a period of time." However, the Court then interpreted the bank summaries as "clarify[ing] that the accounts were literally swept daily, often multiple times per day, immediately upon deposit of any substantial amount of money." (Decision, page 5.) The Court drew this conclusion on its own, without any argument to that effect advanced by defendants in support of their motion for summary judgment, and six months

---

[2] As ISG previously argued in opposition to defendants' earlier, unsuccessful motion to strike, ISG, for the sake of economy and consistent with FRE 1006, did not submit the voluminous bank records of Abn Amro, but offered to so if the Court so required. Under FRE 1006, summaries of voluminous records may be

after oral argument, where the Court did not express any reservations or confusion over the bank summaries. There was absolutely no notice to ISG that the Court was going to draw such an inference from the evidence demonstrating the availability of bank funds.

Accordingly, ISG promptly moved for reconsideration and, to clarify any entry on the summaries that may have confused the Court, submitted: 1) the affidavit of Christopher Barber attesting to his knowledge of sweep accounts and his particularized knowledge of the FMB accounts at Abn Amro based upon a review the bank's business records produced in the COB Litigation; 2) an affidavit of Blaine Bortnick similarly attesting to his knowledge and to remedies available to ISG and the other investors in 1999, and 3) evidence publicly available from Bank of America explaining that sweep accounts are overnight, after-hours accounts whereby the money in question is transferred back to the main account before the bank opens in the following morning. Simultaneously, ISG submitted a second affidavit of Kathleen Stone to demonstrate how the Court, again on its own, drew an erroneous conclusion that Ms. Stone was aware of a claim against Abn Amro in 2002 – a conclusion by the Court based entirely upon Ms. Stone's letter to John Pappalardo on January 4, 2002 attached to her affidavit of June 30, 2005. In fact, as Ms. Stone responds in the supplemental affidavit in support of the motion for reconsideration, she was referring in the letter to claims against Corporation of the Bankhouse and related entities.

Douglas v. York County et al, 360 F. 3d 286 (1st Cir. 2004) ("Douglas") is particularly instructive as to why this Court should accept the supplemental evidence proffered by ISG. In that case, the district court had granted summary judgment to

---

presented as evidence without the records. The court may, but is not required to, order that the underlying

3

defendants after changing the focus of the inquiry without notice to the parties and after interpreting, against the plaintiff, an ambiguity in an affidavit submitted in opposition to summary judgment. Plaintiff then timely moved for reconsideration and submitted a supplemental affidavit to address the district court's erroneous conclusion. The district court denied the motion for reconsideration and granted defendants' motion to strike the supplemental affidavit on the grounds, as defendants urge in this case, that the information could have been provided earlier.

     On appeal, the First Circuit reversed. It took exception to the district court's entry of judgment for defendants, identifying problems analogous to those presented in this case. First, the First Circuit noted, the district court, finding an ambiguity in plaintiff's expert affidavit, ruled against the plaintiff. This, the First Circuit confirmed, was legal error, because all reasonable inferences must be drawn in favor of the non-moving party, regardless of who has the burden of proof. Douglas, 360 F. 3d at 290, *citing* Rosenberg v. City of Everett, 328 F. 3d 12, 17 (1st Cir. 2003); Rodriguez v. SmithKline Beecham, 224 F. 3d 1, 15 (1st Cir. 2000). "To the extent there was an ambiguity in the affidavit, it had to be construed in [plaintiff's] favor. In construing the inferences from the affidavit against [plaintiff], the non-moving party, the district court committed legal error." Douglas, 360 F. 3d at 290. So, too, in the instant case, this Court apparently found ambiguities in the bank record summaries and in the letter Ms. Stone sent to AJP in 2002. To the extent it perceived ambiguities in the evidence submitted in opposition to summary judgment, this Court should have construed those ambiguities in favor of, and not against, ISG.

---

documents be introduced.

The First Circuit in Douglas also ruled that the district court's denial of the motion for reconsideration and the refusal of the district court to accept the supplemental affidavit was an abuse of discretion.  According to the First Circuit, the court incorrectly applied the summary judgment standard to plaintiff's evidence in the first place, the court changed the inquiry and thereby raised a new issue without sufficient notice to the plaintiff, and the court should have accepted the supplemental affidavit because it was a "prompt proffer" of relevant material to address the perceived ambiguity in the earlier affidavit and the new issue raised *sua sponte* by the district court.  Id. at 290-1.  The First Circuit held that the district court was required to apply an "interest-of-justice' test to the motion to reconsider but failed to do so. Id. at 290.    The First Circuit relied on several of its previous cases where "a party was not given a fair opportunity to present its position." Id. at 290-1.  So, too, in this case, ISG timely moved for reconsideration and made a prompt proffer of relevant evidence to clear up any ambiguities that the Court may have perceived in the evidence presented.  Fairness requires that its affidavits be accepted and the motion to strike denied.

The authorities upon which defendants here rely -- a footnote in Dimarco-Zappa v. Cabinallas, 238 F. 3d 25, 34 n. 12 (1st Cir. 2001) and Aybar v. Crispin-Reyes, 118 F. 3d 10 (1st Cir. 1997) -- are not applicable.  The footnote in Dimarco-Zappa simply stands for the general proposition that parties must incorporate all relevant arguments in the papers that directly address a pending motion.  ISG does not quarrel with that proposition and previously did incorporate responses to all arguments raised by defendants in their motion

5

papers and by the Court during oral argument.[3] Its motion for reconsideration and supplemental affidavits are addressed to issues that were not previously raised, specifically 1) the error of law that the Court made by interpreting evidence on summary judgment against the non-moving party, and 2) manifest errors of fact regarding the sweep accounts and the meaning of the statement in Ms. Stone's letter of January 4, 2002, upon which the Court relied in concluding, erroneously, that she knew of claims against Abn Amro as of that date.

In <u>Aybar et al v. Crispin-Reyes, et al</u>, 118 F. 3d 10, 13 (1st Cir. 1997), also cited by defendants, the plaintiff had represented to the court that he was married during the relevant statute of limitations tolling period by referring to his co-plaintiff as his wife and by claiming injury to their conjugal relationship. For that reason, the district court judge refused to allow the plaintiff to correct the record upon reconsideration to show, <u>inconsistent</u> with his previous proffer, that he was <u>not</u> married during the relevant time period. That situation presents more of a judicial estoppel scenario and is thereby distinguishable from the procedural posture of this case. ISG earlier argued that funds were available to be attached and that its new counsel was not given sufficient information by AJP to determine the existence of claims, if any, against Abn Amro. The Court misinterpreted its evidence without notice. Under <u>Douglas</u>, ISG ought to be given the opportunity to submit supplemental evidence, <u>consistent</u> with its previous proffers, to correct errors of fact.

---

[3] Indeed, the Court at oral argument raised, *sua sponte*, the question as to whether payment of legal fees was a requirement of the formation of an attorney-client relationship. After oral argument on the summary judgment motions, ISG promptly submitted a letter citing case law that payment of legal fees is not required for the creation of an attorney-client relationship. Had the Court raised with ISG at oral argument any concerns that the bank records did not seem to reflect what ISG said they did or that the January 4, 2002

### II.    ISG's Supplemental Evidence Otherwise Meets the Requirements of Fed.R.Civ.P. 56 (e)

Blaine Bortnick, Esquire, the first affiant as to the manner in which the sweep accounts operate generally and as to the transactions between the FMB accounts at Abn Amro, is a partner at a New York law firm specializing in commercial litigation, an adjunct professor of law and, since 2004, counsel of record for ISG in the New York action against Abn Amro.  Christopher Barber, the second affiant as to the sweep and concentration accounts, is a former director of ISG who prepared the summary charts from bank records of Abn Amro produced in connection with the COB litigation.   He is also an experienced businessman in both Asia and Europe who has engaged in numerous electronic banking transactions and therefore, as he avers, is familiar with sweep accounts. The exhibit attached to the memorandum in support of the motion for reconsideration, is, as indicated on its face, a description of overnight sweep accounts published by Bank of America.

In their second line of attack on ISG's affidavits, defendants complain first that ISG (which had only ten days from the Court's Decision to file its motion for reconsideration and supplementary evidence to correct misassumptions about sweep accounts) did not disclose experts pursuant to Fed.R.Civ. P. 26(a).  That assertion is at odds with the procedural posture of this case.  ISG filed its complaint on September 15, 2004 (with an effective June 24, 2004 filing date under a tolling agreement).  Defendants moved to dismiss, ISG opposed the motions, and on March 29, 2005, the Court denied them, setting a case management conference for April 26, 2005.  At the April 26, 2005

---

letter attached to Ms. Stone's affidavit seemed to indicate her awareness of claims against Abn Amro, ISG

case management conference, this Court set January 31, 2006 as the date to complete fact discovery only; defendants then immediately filed for summary judgment on May 15, 2005 before any discovery had taken place; ISG timely defended the motions; the parties tacitly agreed, after oral argument, to stay discovery pending the outcome of the summary judgment motions; and the parties jointly moved, with the Court's approval , to extend fact discovery to six months after the decision on motions.  No date had been set to identify experts.   Defendants' argument only serves to demonstrate how premature it was to grant summary judgment.

Next defendants argue that neither Mr. Bortnick nor Mr. Barber is a "banking expert" and assert therefore that neither can testify either that sweep accounts are overnight accounts where the money appears in the main account before the banks open the following day or that funds were available in the FMB concentration account for attachment.  ISG responds as follows to that argument.  First, it is plain from the testimony provided by ISG, including the information publicly available to any banking customer, that one does not have to be a "banking expert" to describe how sweep accounts are overnight accounts whereby the money transferred overnight to the sweeps appears in the main account on the morning of the next banking day.  But even if one must meet an expert witness standard, both Mr. Bortnick, a commercial litigator and counsel of record in the New York action against Abn Amro in 2004, who had reviewed the actual bank records before filing the action[4] and Mr. Barber, a businessman and ISG representative

---

immediately would have corrected any misperceptions of evidence.
[4] See May 31, 2005 Transmittal Affidavit of Matthew P. Garvey, Exhibit 2.

who also reviewed the actual Abn Amro bank records[5] for the purpose of creating the summaries in the New York action, possess the requisite knowledge for describing sweep accounts generally and the FMB transactions in particular.  *See* Bryant v. Farmers Insurance Exchange, 432 F.3d 1114, 1123 (10th Cir. 2005) (plaintiff who reviewed business records and prepared a spreadsheet of audit results had "personal knowledge" of the reports sufficient to testify about them as a lay witness); Wactor v. Spartan Transportation Corp., 27 F. 3d 347, 350  (8th Cir. 1994) (personal knowledge based upon industry experience is a sufficient basis for lay opinion testimony); Lauria v. National Railroad Passenger Corporation, 145 F. 3d 593, 598-9 (3d Cir. 1998) (and cases cited) (witness's practical experience qualified him as an expert in safety procedures and, therefore, it was error to exclude testimony simply because he did not possess a degree in the particular specialty).   The amendments to FRE 701 do not preclude witnesses, such as a commercial lawyer and experienced businessman, from testifying as to their particularized knowledge based upon experience in their respective fields.  *Cf.*  Tampa Bay Shipbuilding & Repair Co. v. Cedar Shipping Co., 320 F. 3d 1213, 1221-3 (11th Cir. 2003) (analyzing legislative history behind the 2000 FRE 701 amendment, upholding the admission of lay testimony from businessmen as to fairness in pricing and comparison with competitors' pricing and determining that witnesses who testify "based upon specialized knowledge, whether through experience or professional learning" do not necessarily become subject to the expert disclosure rules).  Under these precepts, both Mr. Bortnick and Mr. Barber can testify as to their experience with sweep accounts generally

---

[5] As Ms. Stone established, the underlying records were subpoenaed and produced by Abn Amro as business records in the COB litigation.

and their knowledge of the particular FMB transactions based upon their review of the Abn Amro bank records.

Mr. Bortnick, a commercial litigator and partner in a New York law firm, an adjunct professor of law teaching, *inter alia*, provisional remedies, and ISG's counsel in the New York action, also may testify, under FRE 701 and 602, as to New York's pre-judgment remedies that would have been available to ISG (and the other investors) had an action immediately been filed in New York to freeze assets.  For the purposes of summary judgment, any inferences must be resolved in favor of ISG that these remedies were available and further that funds were available to be attached.

Similarly, Ms. Stone, whose affidavit defendants also attack under Fed.R.Civ.P.56(e), is qualified, based upon her personal knowledge of the timing of subpoena to Abn Amro for its bank records in relationship to the date of her retention by ISG, to opine that these documents would have been subpoenaed two years earlier if ISG been advised to obtain independent counsel earlier.[6]  She may also testify under the FRE 701, having acted as ISG's counsel from 2001 forward in the COB Litigation, as to whether there was jurisdiction over Abn Amro and FMB in Massachusetts and as to the necessity of a Deed of Assignment as a condition precedent to filing a case against FMB and Abn Amro.  Notably, defendants in their opposition to the motion for reconsideration have conjectured and urged upon this Court their own conclusions about what remedies

---

[6] To the extent that either counsel's testimony also could be construed as expert testimony under FRE 702, the time for making Fed.R.Civ.P. 26(a)(2)(A) did not occur nor is ISG aware of any requirement that a party identify an expert before any fact discovery has commenced and within the 10 days required to file a motion for reconsideration to correct a judicial error of fact. In any event, if the motion for reconsideration is granted and summary judgment vacated, defendants will have the opportunity to depose these witnesses and the  parties will have the opportunity to sort out the extent to which their testimony straddles FRE 701 and FRE 702.  See Indemnity Insurance Co. of North America v. American Eurocopter LLC, 227 F.R.D. 421 (M.D.N.C. 2005) (later proceeding 2005 U.S. Dist. LEXIS 34011 (July 8, 2005)

were available without providing any supporting testimony.  *See, e.g.,* ESCM's Response in Opposition to Plaintiff's Motion for Reconsideration or Relief from Judgment, page 6.  As to defendants' assertion that Ms. Stone's affidavit is irrelevant, it certainly is not.  The affidavit directly addresses the Court's misperception that Ms. Stone was aware of a claim against Abn Amro in 2002, had sufficient information to file such a claim and did file such a claim in New York.  None of those assumptions is true.  As the Court based its decision in part of these misperceptions of evidence, it was entirely appropriate for Ms. Stone to correct the record.

Defendants next object to the exhibit attached to ISG's memorandum of law.  That exhibit is a publication from the Bank of America disseminated to the public and describing automatic sweep accounts.  Without citing any rule of evidence, defendants assert the need for a sworn statement.  The document meets the authentication standard of FRE 901 (a) in that it appears on its face to be exactly what ISG, its proponent, says it is -- a publication describing sweeps by the Bank of America and containing the Bank of America's copyright insignia.  The document, contained within the bank's "Investment Solutions" publication, also appears to fall within under FRE 902 (6) as a self-authenticating periodic publication of Bank of America.  There is no danger that this publication is a fraud or forged document, hence the lack of necessity for a declaration as to its authenticity.  *See* FRE 902 (6) and Advisory Committee Notes to the 1972 Proposed Rules.  "Hypertechnical" objections to authentication under FRE 901 "are seldom meritorious, unless of course there is real cause for concern as to the bona fides of the documents involved."  United Asset Coverage, Ind., v. Avaya, Inc., 409 F. Supp. 2d 1008

11

(N.D. Ill. 2006), 2006 U.S. Dist. LEXIS 18651\* 128-9 (N.D. Ill. January 16, 2006).

Defendants here have raised no bona fide objection here.

## CONCLUSION

For the foregoing reasons, the Court should deny the motion to strike, accept the affidavits in support of ISG's motion for reconsideration, draw all inferences from the facts set forth therein in favor of ISG, and reconsider and vacate the order granting summary judgment.

                                   INTERNATIONAL STRATEGIES
                                   GROUP, LTD

                                   By its attorneys,

                                   __/s/ Jessica Block___

                                   Jessica Block
                                   BBO#046110
                                   Block & Roos, LLP
                                   60 State Street, Suite 3800
                                   Boston, Massachusetts  02109
March 8, 2006                       (617) 223-1900

## CERTIFICATE OF SERVICE

I, Jessica Block, Esquire, counsel for the plaintiff, do hereby certify that the within pleading filed through the ECF system will be sent electronically to counsel of record, both registered participants of the ECF system identified on the NEF.

                                   */s/Jessica Block*

.

Case 1:04-cv-12000-RWZ  Document 78  Filed 03/08/2006  Page 13 of 13